UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS, INC., | Case No. C08-0049 JLR |
| Plaintiff, | **DEFENDANT GAMBER-JOHNSON'S MOTION FOR SUMMARY JUDGMENT** |
| v. | NOTE ON MOTION CALENDAR: FRIDAY, JANUARY 8, 2010 |
| GAMBER-JOHNSON LLC, | |
| Defendant. | ORAL ARGUMENT REQUESTED |

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

- 1 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

# I.    INTRODUCTION

Plaintiff National Products, Inc. ("NPI") has brought this lawsuit against defendant Gamber-Johnson LLC ("Gamber-Johnson" or "Gamber") alleging claims for: (1) False Advertising under section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1051 et seq.); (2) Unjust Enrichment; and (3) Unfair or Deceptive Acts under RCW 19.86.020. NPI's claims against Gamber-Johnson are based upon statements made in "The Mounting Evidence" video, discussed below.

NPI has no evidence to support its Lanham Act claim. The Lanham Act requires either a literally false statement or a misleading statement with the capacity to deceive. It also requires a plaintiff to show that its claimed injury was caused by the defendant's false advertising. Throughout discovery, NPI has constantly changed its position on which statements in The Mounting Evidence video were allegedly literally false or misleading, and which customers NPI lost sales to because of the video. But NPI has not developed any evidence showing that any statement in the video is literally false or misleading. It has not developed any evidence that the video had a capacity to influence purchasing decisions. And it has not developed any evidence that any customer declined to purchase from NPI because of Gamber-Johnson's video. NPI's other claims for unjust enrichment and alleged unfair or deceptive acts are similarly flawed and should be dismissed for the reasons explained below.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### THE PARTIES

Gamber-Johnson was founded in 1954 and is located in Stevens Point, Wisconsin. (Ex. FF.) Gamber-Johnson is a nationwide distributor of vehicle mounting systems ("mounting

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1  systems") for laptop computers.[1] In or around March 2007, Gamber-Johnson was acquired by

2  Leggett & Platt, Inc., located in Carthage, Missouri. (Ex. C at 21:19-22:11.)

3     Gamber-Johnson sells its mounting systems through a network of resellers, who

4  purchase and then resell Gamber's products to end users. (Ex. HH at 16:16-17:17.) Gamber-

5  Johnson also sells its mounting systems directly to Original Equipment Manufacturers

6  ("OEM's") such as Panasonic, Motorola, Comtech (a United States military contractor) and

7  General Dynamics/Itronix.   (Ex. GG at 12:10-20.)   Gamber has been selling its mounting

8  systems since approximately 1994. (Ex. FF.)

9     Plaintiff National Products, Inc. ("NPI"), established in 1994, is a current competitor of

10  Gamber-Johnson located in Seattle. (Ex. G. at 20:22-21:20.) Like Gamber-Johnson, NPI sells

11  vehicle mounting systems for laptop computers (Ex. O at ¶ 10), however, NPI has been selling

12  complete vehicle mounting systems only since about 2004 or 2005. (Ex. CC at 12:2-11.)

13     NPI and Gamber-Johnson have been adversaries in previous litigation over intellectual

14  property issues. (Ex. G at 6:22-7:2; Ex. C at 35:17-36:14.)

15              <u>THE MOUNTING EVIDENCE VIDEO</u>

16     The Mounting Evidence video ("The Mounting Evidence" or the "Video") was a

17  project initiated and overseen by Scott Zuelke, Gamber-Johnson's former Vice President of

18  Marketing.  (Ex. C at 10:1-4.) [2]

19

---

20  [1]    A vehicle mounting system generally consists of several components. (Ex. D at 63:19-64:22.) (All
references to Exhibits herein are to those exhibits attached to the Declaration of Jonathan D. Jay, filed herewith.)
21  A base plate secures the mounting system to the floor of a vehicle. Lower and upper tubes attach to the vehicle
base and permit height adjustment of the upper and lower tubes. A motion attachment affixed to the upper tube
(sometimes called an articulating arm) provides tilt, swivel and slide capabilities for a cradle or dock which
22  secures the laptop to the mounting system. A cradle is a tray that holds the laptop; a dock is a tray that holds the
laptop but which has electronic ports. (Id.) Exhibit E is a photograph of a typical mounting system of Gamber-
23  Johnson.

[2]    In June 2007, Mr. Zuelke left Gamber-Johnson on good terms to pursue opportunities with one of
24  Gamber's resellers, Mobile Mounting Solutions, Inc., located in McKinney, Texas.  (Ex. C at 9:11.)  Mobile

- 3 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

In or around 2006, Mr. Zuelke watched a video produced for Ford Motor Company that compared certain features of Ford's F-150 trucks to similar features of Ford's competitors. (Ex. C at 61:17-62:25; Ex. B.) Mr. Zuelke liked the video and thought something like it could help Gamber resellers learn more about Gamber's mounting systems and thereby increase sales of Gamber's mounting systems. (Ex. C at 61:17-62:25.)

In late 2006 and early 2007, in consultation with others at Gamber-Johnson, and with editorial input from the Thomas Marks & Associates advertising agency, Mr. Zuelke wrote the script for The Mounting Evidence. (Ex. C at 99:20-101:7,106; 14-108:7; Ex. H at 24:12-25:3, 43:22-44:11.)

The final script for The Mounting Evidence was based upon input and comments that several Gamber-Johnson engineers provided to Mr. Zuelke after they analyzed the mounting systems to be discussed in the Video. (Ex. C at 95:18-97:5, Ex. S.) Gamber-Johnson's engineers provided comments to Mr. Zuelke regarding such things as hardware, construction, design, attention to detail, and other issues. (Ex. C at 119:17-120:4.)

Gamber-Johnson and Mr. Zuelke decided to hire David Long to narrate the script of The Mounting Evidence. (Ex. C at 109:8-110:18.) Mr. Long is a nationally-registered paramedic[3], emergency medical technician and nurse who has received training in airbag safety issues. (Ex. I at 37:19-38:9, 47:10-48:20; Ex. U).

Mr. Long calls himself and is known as the "Airbag Detective" because he has lectured at length on airbag safety issues to the federal government (i.e., the National Highway Traffic

---

Mounting is the reseller who made sales of Gamber mounting systems to Comcast Cable Communications LLC ("Comcast") in 2007. As discussed below, NPI claims to have lost sales to Comcast as a result of The Mounting Evidence.

[3] Nationally-registered paramedics must complete a certified training program and, in addition, must complete 72 hours of continuing education every two years. (Ex. I at 45:6-12.)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1    Safety Administration), law enforcement agencies, emergency personnel and the media. (Ex. I

2    at 55:17-56:5, 122:21-124:21, 61:5-62:15, Ex. C at 109:8-110:9.)

3        The Mounting Evidence was recorded in Madison, Wisconsin in April 2007. (Ex. H at

4    26:20-23.) Gamber-Johnson budgeted approximately $35,000 to produce the Video. (Ex. II.)

5    The Video was first shown to approximately 50 to 60 Gamber resellers at Gamber's annual

6    Connect 4 Tomorrow Conference held in Stevens Point, Wisconsin on May 18, 2007. (Ex. GG

7    at 27:25-28:23; Ex. HH at 114:23-115:4.)

8        The    Video,    and    its    script,    were    also    posted    on    a    linked    website,

9    <www.themountingevidence.com>, beginning in late May or early June 2007. (Ex. GG at

10   27:13-24.)

11       Gamber-Johnson made 5000 copies of The Mounting Evidence. (Ex. HH at 21:5-7;

12   156:3-157:3.) Copies of the Video were given to Gamber's resellers and were made available

13   at various trade shows. (Ex. HH at 150:23-152:25.) In September 2008, several months after

14   NPI filed this lawsuit, in a gesture of good faith toward NPI, Gamber voluntarily stopped

15   distributing    hard    copies    of    The    Mounting    Evidence,    and    also    discontinued    the

16   <www.themountingevidence.com> website. (Ex. GG at 110:17-112:17.)

17       The Mounting Evidence, approximately 25 minutes in length, contained several

18   segments commenting on topics including: air bag safety, mount design and construction,

19   restraints, security, ease of use, fasteners, attention to detail (mounts), attention to detail

20   (packaging), and certifications.  (Ex. A and Ex. J.)  The Video discussed mounting systems

21   sold by Gamber-Johnson, NPI, Jotto-Desk, Havis-Shield, Ledco and FMT.  (Id.)  The Video

22   displayed a Gamber-Johnson banner behind Dave Long during certain segments.  (Ex. A,

23   Segments II, VII, VIII, IX, X and XI.)

24

- 5 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

The Video discussed NPI's "RAM-VB-109-SW1-Vehicle System 2004-Newer F150" (NPI's "Tough Tray," unless otherwise specified herein.) (Ex. A and Ex. J.)[4] In that segment of the Video which discussed "packaging," a "RAM-234-PAN1M-RAM" was pictured, but that specific product was not discussed. (Ex. A, Segment IX; Ex. J at 11.) The Video stated that "Information contained herein was accurate at the time of production (April 2007)," and that "COMPARISONS IN THIS PROGRAM WERE ACCURATE AT THE TIME OF PRODUCTION." (Ex. A, Segment XI; Ex. J at 15.)

<u>NPI's IDENTIFICATION OF ALLEGED FALSE STATEMENTS</u>

NPI's identification of the alleged false statements in The Mounting Evidence has changed throughout the course of this litigation. (<u>See</u> and <u>compare</u> Ex. O, ¶¶19-27; Ex. Q, No. 15; Ex. R.)

The most recent (and broadest) iteration of NPI's identification of the alleged false statements in The Mounting Evidence is found within NPI's expert report of Dr. David Eby ("Eby"), in which Eby opines that eleven (11) statements in the Video falling into the following categories were literally false. (Ex. R.)

<u>Dave Long</u>

The Video states, "I [Dave Long] have stripped down and analyzed comparable vehicle mounting systems from six manufacturers." (Ex. A, Segment I; Ex. J at 2.) Through its expert Eby, NPI claims that this statement was literally false because Mr. Long "did no research, analysis, investigation, or testing" of the mounting systems shown in the Video. (Ex. R at 8.) (<u>Alleged Literally False Statement No. 1</u>) In fact, Mr. Long did strip down and analyze vehicle mounting systems from six manufacturers. (Ex. I at 254:6-256:25.)

---

[4] RAM® is a registered trademark of NPI. Gamber-Johnson's universal laptop tray is referred to in the Video and in this brief as Gamber's Notepad IV.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

## Front Restraints

The Video states that "there are no front restraints on RAM's . . . laptop mount[] and that's a serious shortcoming." (Ex. A, Segment IV; Ex. J at 5.) NPI, through its expert Eby, claims that this statement was literally false. (Ex. R at 11.) (Alleged Literally False Statement No. 2) In fact, at the time of the Video, and thereafter, NPI's Tough Tray has not been sold with front restraints. (Ex. K at 89:20-91:22; Ex. Y; Ex. L at 105.)

## Airbag Friendly

The Video states that "a mount can be airbag friendly . . . [and] an airbag friendly mount would offer the best chance of withstanding the impact and, of course, restraining the equipment." (Ex. A, Segment II, Ex. J at 3.). NPI, through its expert Eby, claims that this statement is literally false. (Ex. R at 14.) More specifically, Eby claims that "any representation in The Mounting Evidence that the RAM Tough Tray does not adequately restrain the laptop in the event of an airbag deployment is literally false." (Id.) (Alleged Literally False Statement No. 3) The Video does not make this statement. (Ex. A and Ex. J.)

Eby admitted during his recently-taken deposition that an "airbag friendly" mount offers a better chance of restraining a laptop in the event of an airbag deployment. (Ex. L at 152:6-153:5.)

## Inferiority of RAM Mounts; Superiority of Gamber Mounts

The Video states, in reference to the use of side, rear and front restraints on a vehicle mount, that if you "want your laptop properly restrained," "then you want Gamber-Johnson." (Ex. A, Segment IV; Ex. J at 5.)

In reference to this statement, NPI argues, through its expert Eby, that "any representation in The Mounting Evidence that the RAM Tough Tray does not adequately restrain the laptop in the event of an airbag deployment is literally false." (Ex. R at 14.)

- 7 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

(Emphasis added.) (<u>Alleged Literally False Statement No. 4</u>) This statement is not made in the Video. (Ex. A and Ex. J.)

NPI further contends that "any representation in The Mounting Evidence that Gamber-Johnson's Notepad IV is superior to NPI's RAM Tough Tray in terms of restraining the laptop in the event of an airbag deployment is literally false." (Ex. R at 14-15.) (<u>Alleged Literally False Statement No. 5</u>) This statement is not made in the Video. (Ex. A and Ex. J.)

Materials—Nuts, Bolts and Restraints

The Video states that it "builds a case for identifying high-grade materials and bolts within mounting systems" and that "there are important differences in how mounting components are designed and what they are constructed from." (Ex. J at 1, 3.) In reference to these statements, NPI claims, through its expert Eby, that "<u>any</u> statement in The Mounting Evidence that suggests the Gamber-Johnson base plate, lower tube, gusset and upper pole are . . . made of superior materials is literally false." (Ex. R at 16.) (Emphasis added.) (<u>Alleged Literally False Statement No. 6</u>) This statement is not made in the Video. (Ex. A and Ex. J.)

In fact, the Video states that Gamber-Johnson uses Grade 5 bolts, compared to NPI's Grade A bolts, to mount the lower tube pedestal to the base of the mounting system, and that Gamber's lower tube is 1/8" thick, while NPI's lower tube is 1/16" thick. (Ex. A, Segments IV and VIII; Ex. J at 4; 8.) The statements made in the Video concerning these bolts and the tube thickness of Gamber's and NPI's respective mounting systems were literally true. (Ex. L at 172 and 153.)  In 2008, NPI made a decision to switch to Grade 5 nuts and bolts for its mounting systems incorporates the Tough Tray. (Ex. K at 113:17-118:15; Ex. Z.)

NPI's Plastic Tray

The Video states that NPI's Tough Tray is made of plastic and that "there are products where the use of plastic is appropriate, but trust me folks, this isn't one of them." (Ex. A,

- 8 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1  Segment V, Ex. J at 4-5.) NPI claims, through its expert Eby, that this statement was literally

2  false. (Ex. R. at 18.) More specifically, NPI claims that "<u>any</u> statement in the Mounting

3  Evidence that the metallic Notepad IV is superior to the plastic RAM Tough Tray in terms of

4  restraining the laptop in the event of an airbag deployment of challenging driving conditions

5  are [sic] literally false." (Ex. R at 18.) (Emphasis added.) (<u>Alleged Literally False Statement</u>

6  <u>No. 7</u>) This statement is not made in the Video. (Ex. A and Ex. J.)

7  Fasteners

8  The Video states that "Gamber-Johnson engineers specify a Grade 5 bolt" where the

9  pedestal attaches to the vehicle base, that for the same application, NPI uses a "Grade A" bolt,

10  and that "for Gamber-Johnson, this [i.e., the use of a Grade A bolt] just isn't good enough."

11  (Ex. A, Segment VIII; Ex. J at 8.)

12  In reference to this statement, NPI claims, through its expert Eby, that "<u>any</u> statements

13  in the Mounting Evidence that the bolts used by NPI are of inadequate or inappropriate

14  strength for the application is [sic] literally false." (Ex. R at 19.) (Emphasis added.) (<u>Alleged</u>

15  <u>Literally False Statement No. 8</u>) This statement is not made in the Video. (Ex. A) As stated

16  above, the Video truthfully states that Gamber-Johnson uses Grade 5 bolts for its mounting

17  system and that at the time of the Video NPI used Grade A bolts. (<u>See</u>, p.7 <u>supra.</u>)

18  The Video states that, "[i]f an airbag hits a laptop mounting system, you need the

19  mount to be solid and not break apart. There's no reason to take a chance with a product that's

20  not formidable." (Ex. A, Segment VIII; Ex. J at 8-9.) In reference to this statement, NPI claims,

21  through its expert Eby, that "any statements in the Mounting Evidence about NPI's mounts or

22  fasteners breaking apart during airbag deployment are literally false." (Ex. R at 20) (Emphasis

23  added.) (<u>Alleged Literally False Statement No. 9</u>) The Video does not make this statement.

24  (Ex. A and Ex. J.)

- 9 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

## Lack of NPI Locking Top

The Video states, in reference to locking systems, "Here's Gamber-Johnson's secured locking device. This is the right way to do it. Standard feature, Simple to use. Tamper resistant." (Ex. A, Sec. 5, Ex. J at p. 6.) In reference to this statement, NPI, through its expert Eby, claims that "<u>any</u> superiority statements in the Mounting Evidence about Gamber-Johnson's security locking device are literally false" (<u>Alleged Literally False Statement No. 10</u>) because "a thief" can use "an adjustable wrench" and a "pliers" to remove the "nut" on the locking device and "steal or tamper with a laptop." (Ex. R at p. 23.)

The Video states, "Here's a RAM mount. No key lock to be found." (Ex. A., Segment VI, Ex. J at 6.) NPI, through its expert Eby, claims that this statement was literally false. (Ex. R at 23-24.) More specifically, NPI claims, "any statements in the Mounting Evidence that NPI does not offer locking system<u>s</u> for its laptop mount<u>s</u> are literally false." (Id.) (Emphasis added.) (<u>Alleged Literally False Statement No. 11</u>.)

The Video did not state that the RAM-234-PAN1M did not include a lock. (Ex. A, Ex. J.) As to the NPI Tough Tray shown in the Video, no locking top was available to be purchased for that product until November or December 2007. (Ex. JJ at 91:12-92:5.) (Ex. K 72:12-17.)

## THE ALLEGED IMPACT OF THE MOUNTING EVIDENCE

On August 7, 2009, pursuant to Gamber-Johnson's 30(b)(6) Notice of Deposition of NPI, Chad Remmers, an owner of NPI, testified regarding the following subjects (among others):

- All facts relating to [NPI's] contention that customers or potential customers of NPI were misled or potentially misled by the Video; and

- All facts relating to [NPI's] contention that NPI suffered lost sales and/or lost profits as a result of the display or distribution of the Video.

- 10 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

(Ex. D at 12:3-22,34:21-35:8, 35:23-36:22, 88:12-89:3; Ex. V.)

In response to deposition questions concerning these subjects, NPI (through Mr. Remmers) identified the following customers or potential customers of NPI:

- Comcast;
- Lenovo;
- RadioWorks; and
- General Dynamics/Itronix

(Id.)[5]

Each of these alleged customers or potential customers is addressed, in turn.

Comcast

After NPI filed this lawsuit, Gamber-Johnson asked NPI in its First Set of Interrogatories, No. 4, to identify "any and all sales NPI claims it has lost as a result of Gamber-Johnson's use of 'The Mounting Evidence.'" In its Answer, NPI identified Comcast as "one major account lost for Mobile Desk SVP, Inc." (Ex. P.) Mobile Desk sells mounting systems that it "co-brands" with NPI. (Ex. JJ at 59:9-14.)

More specifically, in its Answer to Interrogatory No. 4, NPI alleged that "Mobile Desk lost sales of MOBILE DESK branded mounting systems, including RAM components as a result of 'The Mounting Evidence infomercial.'" (Ex. P.) NPI has identified Comcast witnesses having knowledge of this alleged lost opportunity including: (1) Joshua Simes; (2) Dennis Jones; and (3) Michael Schiller. (Exs. F, P.) These individuals were recently deposed by Gamber-Johnson. (Exs. M, N, and AA.)

---

[5]     In its initial responses to Gamber-Johnson's Second Set of Interrogatories, No. 17, which had asked NPI to describe "all aspects and all bases" for its "alleged damages" in this matter, NPI identified Comtech Mobile Data Communications ("Comtech") as a potential lost sales opportunity arising from the Video. (Ex. Q.) But in its 30(b)(6) deposition, NPI testified that NPI is "not claiming . . . lost sales to Comtech as a result of . . . The Mounting Evidence," and that "NPI [is not] making any claim that Gamber-Johnson enjoyed increased sales or profits with Comtech as a result of . . . The Mounting Evidence." (Ex. D at 82:2-84:17.)

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1    Mr. Simes is a Comcast Technical Operations Manager in California who in 2007 was

2    responsible for helping Comcast determine which of three vendors (Gamber-Johnson, NPI or

3    Jotto Desk) would be selected to provide mounting systems for approximately 80 Comcast

4    vehicles in California's "Delta Valley" region. (Ex. M at 11:1-13:9.) As part of his research

5    into which mounting systems to recommend and purchase, Mr. Simes saw The Mounting

6    Evidence. (Ex. M at 15:15-25.) Mr. Simes and Comcast "were trying to get the best price point

7    available." (Ex. M at 22:15-23:2.)

8        As to his research concerning NPI mounting systems, Mr. Simes met with Doug Mayer

9    of Mobile Desk in the first half of 2007. (Ex. M at 23:24-24:2.) During this meeting, Mr.

10   Mayer and Mr. Simes discussed a locking top feature for the NPI/Mobile Desk mounting

11   system that Mr. Simes was considering. (Ex. M at 25:4-14.) The subject was discussed because

12   Comcast "did not want the laptops to be stolen" from the vehicles in which they would be

13   mounted. (Ex. M at 25:9-10.)

14       During this meeting in the first half of 2007, Mr. Mayer told Mr. Simes that, "We

15   [NPI/Mobile Desk] do not offer it [a locking top], but I'm flexible in making that happen." (Ex.

16   M at 25:4-17.) Mr. Simes found NPI's mounting system (offered by Mobile Desk) to be "a

17   little bulky" and not "as flexible as the Jotto or Gamber product." (Ex. M at 46:5-47:8.)

18       After his discussion with Mr. Simes about the fact that NPI/Mobile Desk did not have a

19   locking top for the Tough Tray, Doug Mayer (with assistance from an engineer in Ohio)

20   designed a new locking top feature for the mounting system that Mobile Desk wanted to sell to

21   Comcast. (Ex. JJ at 127:21-128:13.) This new product was called the "Fuzion" and was

22   shown to Comcast in December 2007. (Id.) This mount included, among other features, a

23   locking top and front and rear restraints. (Ex. JJ at 76:5-8 and 248:2-8.) Mobile Desk's sales

24   to Comcast in 2007 were nominal, but by the summer of 2008, Comcast had ordered

- 12 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

1     approximately $600,000 worth of Fuzion mounting systems from Mobile Desk (Ex. JJ at

2     127:21-133:13.)

3          Mr. Simes recommended to his superior at Comcast that both Gamber-Johnson and

4     Jotto Desk made good products and that Comcast "couldn't go wrong with either of them."

5     (Ex. M at 46:5-47:8.) Mr. Simes' recommendations were not influenced by The Mounting

6     Evidence. (Ex. M at 47:18-21.) Eventually, Mr. Simes' superior decided to purchase mounting

7     systems from Jotto Desk, not Gamber-Johnson. (Ex. M at 56:19-21.)

8          In 2007, Dennis Jones was a Senior Manager for Comcast in San Francisco. (Ex. N at

9     7:1-8:20.) Mr. Jones was asked by his superiors to evaluate mounting systems needed for

10    approximately 320 vehicles within his Comcast region. (Ex. N at 13:21-14:2.) Mr. Jones spoke

11    with other Comcast employees (including Mr. Simes) and conducted his own research to

12    determine which mounting system to purchase for these vehicles. (Ex. N at 23:1-24:5.) Mr.

13    Jones considered Gamber-Johnson, Jotto Desk and NPI/Mobile Desk mounting systems. (Id.)

14         In or around March 2007, Mr. Jones watched The Mounting Evidence. (Ex. N at 36:12-

15    37:15.) He thought it was a "comical" "infomercial." (Id.) Although Mr. Jones eventually

16    decided to purchase Gamber-Johnson mounting systems for the vehicles within his region, "the

17    only considerations" that factored into his decision were "configuration, price point, delivery,

18    the ability to supply the correct inverter, and the proper locking system." (Ex. N at 34:16-22.)

19         NPI has claimed that Michael Schiller, a Comcast Regional Safety Director, watched

20    the Video and was misled by it. (Ex. P at 12.) Although Mr. Schiller saw The Mounting

21    Evidence, and thought it was "very informative," he had no authority over purchasing

22    decisions made by such Comcast employees as Joshua Simes and Dennis Jones. (Ex. AA at

23    21:7–22:4). Mr. Schiller's responsibilities as a Safety Director for Comcast did not include

24

- 13 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1    approving or rejecting quotes for the mounting systems under consideration by Mr. Simes and

2    Mr. Jones in 2007. (Ex. AA, at 43:23–45:15).

3                                        Lenovo

4           As stated above, in its August 7, 2009 30(b)(6) deposition, NPI also claimed that it lost

5    sales or potential sales to a prospective customer, Lenovo Corporation, a laptop manufacturer,

6    as a result of The Mounting Evidence. (Ex. D at 12:3-17, 20:25-22:15.) Lenovo's primary

7    contact at NPI was Aaron Hersey. (Id.)

8           In August 2007, Mr. Hersey communicated with Joshua Jankowski, Lenovo's World

9    Wide Product Manager, and sent him an NPI Tough Tray mounting system for evaluation by

10   Lenovo's "quality assurance team." (Ex. K at 48:11-52:7; Ex. X.)

11          In September 2007, Lenovo's Mr. Jankowski advised Mr. Hersey that NPI's universal

12   laptop tray i.e., (Tough Tray) was "rudimentary" and that "the [Lenovo] quality guys are going

13   to challenge the long term use of a spring-and-clamp system." (Ex. K at 60:1-61:22; Ex. X.)

14   At this time, in September 2007, NPI did not have a locking top for its Tough Tray, but NPI

15   founder Jeff Carnevali was "developing" one. (Ex. K at 63:13-65:16; Ex. X.)

16          Eventually, Lenovo elected to not purchase products from NPI because "he [Mr.

17   Jankowski] was looking into doing a custom solution because he didn't feel that a universal

18   solution [offered by NPI] was what they were looking for." (Ex. K at 63:13-21.)

19                                      RadioWorks

20          In June 2007, NPI corresponded by email with RadioWorks Communications Inc. in

21   Victoria, BC, Canada ("RadioWorks"). (Ex. W.)   At that time, RadioWorks was selling

22   Gamber-Johnson mounting systems but also "regularly recommend[ed]" RAM products to its

23   customers. (Id.)  NPI wanted to sell docks or cradles to RadioWorks. (Id.)  On June 29, 2007,

24   RadioWorks advised NPI that it was "not interested in a spring-loaded" solution for its

- 14 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

customers. (Id.) In this email, RadioWorks stated, "I've seen your passive tray before and I can just give the laptop a tug and it comes right out." (Id.)

Itronix

In its 30(b)(6) deposition testimony, NPI identified General Dynamics/Itronix ("Itronix") as a customer or potential customer of NPI whose sales were lost as a result of The Mounting Evidence. (Ex. D, 12:13.) NPI (through Mr. Remmers) testified that Itronix forwarded specifications and requirements to NPI and that NPI manufactured a docking station meeting those requirements (Ex. D, 50:25-51:08.), but that NPI received "very little" in terms of sales (Ex. D, 52:7-8.)

NPI alleges that the sales team at Itronix used the Video with potential customers (Ex. D, 52:9-53:2), but NPI offers no direct or anecdotal evidence of any actual lost sales connected to Itronix. (Id.)

Finally, as stated, Mr. Remmers was also designated by NPI to testify as its corporate representative regarding all facts supporting NPI's contention that it suffered lost sales or profits as a result of The Mounting Evidence. When questioned extensively about this topic, Mr. Remmers had absolutely no specific information concerning NPI's alleged lost sales or profits. (Ex. D, 73:9-74:21.)

## III. SUMMARY JUDGMENT STANDARD

It is well settled that "[s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

- 15 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## IV.    ARGUMENT

### A.    THE ELEMENTS OF A CLAIM UNDER SECTION 43(a)(1)(B) OF THE LANHAM ACT.

To maintain an action for false advertising under section 43(a)(1)(B) of the Lanham Act, the plaintiff must establish: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)(citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 244 (9th Cir. 1990)).  A failure to establish the existence of any one of these elements is fatal to NPI's case and mandates the entry of summary judgment in favor of Gamber-Johnson.

### B.    THE MOUNTING EVIDENCE DOES NOT MAKE ANY LITERALLY FALSE STATEMENTS.

A plaintiff may prevail on a false advertising claim under the Lanham Act by showing that the statement was literally false on its face. Southland Sod Farms, 108 F.3d at 1139.  A literally false statement is one grounded in fact. Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999).  It must be clear and unambiguous. Time Warner Cable, Inc. v. DirectTV, Inc., 497 F.3d 144 (2d Cir. 2007).  To be literally false, the challenged

- 16 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1    statement must be "specific and measurable," and must be capable of being proven untrue by

2    affirmative evidence.  173 F.3d at 731.

3         Generalized claims of product superiority (or inferiority), and/or statements of opinion,

4    cannot be literally false and therefore are not actionable. Id.  Likewise, commercial claims that

5    are "implicit, attenuated or merely suggestive" are usually not literally false. United Indus.

6    Corp. v. Clorox Co., 140 F.3d 1175 (8th Cir. 1998). "The greater the degree to which a message

7    relies upon the viewer or consumer to integrate its components and draw the apparent

8    conclusion, however, the less likely it is that a finding of literal falsity will be supported." (Id.)

9         As explained above (See, Facts pp. 5-9), there are no genuine issues of material fact

10   regarding those statements within the Video that NPI contends are literally false. The

11   statements that Gamber made in the Video regarding the thickness of its lower tube, the grade

12   of its mounting bolts (and those of NPI), the absence of front restraints on NPI's Tough Tray,

13   the absence of a lock for the Tough Tray, and other features of Gamber's and NPI's mounting

14   systems are fully supported by the uncontroverted evidence of record.   Gamber-Johnson is

15   therefore entitled to judgment as a matter of law in its favor as to those eleven (11) statements.

16        Furthermore, many statements in the Video are puffery and therefore are not actionable.

17   Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer

18   would rely.  A statement is considered puffery if the claim is extremely unlikely to induce

19   consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery

20   rests in the specificity or generality of the claim." TYR Sport Inc. v. Warnaco Swimwear Inc.,

21   2009 WL 176944, *11 citing Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053

22

23

24

- 17 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1 (9th Cir. 2008). Whether an alleged false statement is non-actionable puffery may be decided

2 as a matter of law on summary judgment. Cook, Perkiss & Liehe, 911 F.2d at 245-46.[6]

3     Many statements in the Video also included vague, subjective "qualifiers," making

4 them statements of opinion. Eby, for example, bases his opinions of literal falsity in part on

5 the following statement: "[i]f your laptop isn't restrained in the front and if an air bag deploys,

6 it's going to hit right here and that laptop could submarine right out of the side restraints and

7 fly around in your vehicle." (Ex. R at 11, emphasis added.) In other words, under such

8 conditions the laptop could, or could not, submarine right out of the mounting system's side

9 restraints.

10     Even Eby's report supports the conclusion that many of the alleged "literally false"

11 statements in the Video are nothing more than generalized "superiority" claims.[7] See Facts,

12 supra, p. 7 (discussing "superior" characteristics of Gamber mounts in terms of laptop

13 restraint); p. 7 (discussing "superior materials" used to make Gamber mounting systems); p. 7

14 (discussing whether a Gamber metal tray is "superior" to an NPI plastic tray); and p. 9

15 (discussing "superiority statements" made in the Video regarding Gamber's locking device).

16 Generalized claims of "superiority" are not actionable as a matter of law. Coastal Abstract

17

18

---

19 [6]     Just a few examples of puffery contained within the Video are the following statements, which NPI relies
upon in support of its claims against Gamber-Johnson in this action: "Then you want Gamber-Johnson;" (Ex. A,
Segment IV, Ex. J at 5) "trust me;" (Ex. A, Segment IV, Ex. J at 5) "the best chance;" (Ex. A, Segment V, Ex. J at

20 5) "the right way;" (Ex. A, Segment VII, Ex. J at 10) "simple to use;" (Ex. A, Segment V, Ex. J at 6) "this is
where it gets scary." (Ex. A, Segment IV, Ex. J. at 5.) None of these statements could reasonably be interpreted as

21 "a statement of objective fact." Coastal Abstract Serv., 173 F.3d at 731. Statements such as these are puffery and
cannot form the basis for any false advertising claim against Gamber.

22 [7]     A "generalized," "vague or highly subjective" claim of product superiority is one that cannot be
"measured." Southland Sod Farms, 108 F.3d at 1145 (finding defendant's "Less is More" claim non-actionable

23 puffery because it was the type of "generalized boasting upon which no reasonable buyer would rely.") Only
product superiority claims that are "specific and measurable" are potentially actionable. Id. (holding that "50%

24 Less Mowing" claim was not puffery because it was specific and measurable and based upon product testing.)

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

1  <u>Serv.</u>, 173 F.3d at 731. Any and all claims of NPI based upon such statements in the Video are

2  therefore not actionable.

3  **C.    NPI CANNOT PROVE THAT THE MOUNTING EVIDENCE MADE**
4  **MISLEADING STATEMENTS WHICH ACTUALLY DECEIVED A**
   **SIGNIFICANT PORTION OF ITS TARGETED AUDIENCE.**

5      "Where a statement is not literally false and is only [alleged to be] misleading in

6  context . . . proof that the advertisement actually conveyed the implied message and thereby

7  deceived a significant portion of the recipients becomes critical." <u>William H. Morris Co. v.</u>

8  <u>Group W, Inc.</u>, 66 F.3d 255, 258 (9th Cir. 1995). The required proof usually takes one of two

9  forms; either extrinsic evidence of actual confusion, or consumer survey results. <u>See</u> <u>generally</u>

10 <u>U-Haul Int'l v. Jartran, Inc.</u>, 522 F. Supp. 1238, 1249-55 (D. Ariz. 1981).

11     If a plaintiff chooses to rely upon extrinsic evidence of actual confusion, it must present

12 evidence that a statistically significant percentage of the audience was deceived. <u>William H.</u>

13 <u>Morris</u>, 66 F.3d at 259 (recognizing that proof of deception of 7.5% of advertising recipients

14 was statistically insufficient under the Lanham Act.). If a plaintiff presents consumer survey

15 evidence, that evidence must relate to the challenged statements and must demonstrate how

16 those statements were perceived by those who were exposed to them. <u>U-Haul Int'l</u>, 522 F.

17 Supp. at 1249. "The personal opinion of an expert as to what a consumer would understand is

18 not enough." <u>First Health Group Corp. v. United Payors & United Providers, Inc.</u>, 95 F. Supp.

19 2d 845, 849 (N.D. Ill. 2000), <i>aff'd</i>, 269 F.3d 800 (7th Cir. 2001).

20     There is no genuine issue of material fact in this lawsuit as to whether a "statistically

21 significant portion" of the intended recipients of The Mounting Evidence were misled. If, as

22 NPI alleges, thousands of copies of the Video were produced and distributed, and if, as NPI

23 further alleges, the Video was displayed for several months on the Internet (at

24 www.themountingevidence.com), a significant portion of the intended audience would amount

- 19 -

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

to at least hundreds if not thousands of customers or potential customers who were allegedly misled. Yet NPI has no evidence that a "statistically significant percentage" of the intended audience was deceived. In fact, the only testimonial evidence in this case that comes from potential customers who saw the Video demonstrates that it was not misleading or influential in any way. (See Facts, supra, pp. 10-13)

It is also undisputed that NPI has not produced evidence of a survey conducted by any of its expert witnesses that would show statements in The Mounting Evidence were deceptive or misleading. Although the Eby report claims that statements within the Video were false or misleading, Eby's "personal opinion" is not relevant to the issue of deception because, as stated, "the personal opinion of an expert as to what a consumer would understand is not enough." First Health Group, 95 F. Supp. 2d at 849 (dismissing false advertising claim on summary judgment).

**D.  NPI CANNOT PROVE THAT ANY DECEPTIVE STATEMENTS FROM THE MOUNTING EVIDENCE WERE MATERIAL.**

A false advertising claim requires proof that an alleged false or misleading statement was "material." A false or misleading statement is material only if it is *likely to influence the purchasing decisions* of the consumers to which the statement was directed. Southland Sod Farms, 108 F.3d at 1145; William H. Morris, 66 F.3d 255. "The materiality requirement is based on the premise that *not all deceptions affect consumer decisions*." Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 502 (5th Cir. 2000) (emphasis added). The alleged deceptive statement *alone* must be material in influencing consumers' purchasing decisions; proof that the advertisement *as a whole* influenced consumers' purchasing decisions is *insufficient*. Century 21 Real Estate Corp. v. RE/MAX South County, 882 F.Supp. 915 (C.D. Cal. 1994)(finding that plaintiff had failed to prove materiality: "This evidence does not establish

- 20 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

whether the offending language in the ad affected purchasing decisions—it shows at most that the ad as a whole affects the decisions.").

Materiality can be established only by showing how relevant consumers *actually reacted* to the alleged deceptive statement, *not* by how such consumers *could have* reacted. 227 F.3d at 502-03. "Reactions of the public are typically tested through the use of consumer surveys." Southland Sod Farms, 108 F.3d at 1140. Furthermore, evidence of the message a defendant subjectively intended to convey has no bearing on the element of materiality:

> [plaintiff] provides no precedent, and we are aware of none, that stands for the proposition that the subjective intent of the defendant's corporate executives to convey a particular message is evidence of the fact that consumers in fact relied on the message to make their purchases. Thus, this evidence does not address the ultimate issue of materiality.

Pizza Hut, Inc., 227 F.3d at 503.

In this matter, NPI failed to produce any survey directed at consumers' reactions to allegedly false or misleading statements made in The Mounting Evidence. NPI's "evidence" of materiality is based solely on the opinion of its expert Dr. Nowlis ("Nowlis").[8] In his report, Nowlis provides his *personal* opinion, which summarily concludes that The Mounting Evidence "focused on" certain statements, that those statements were likely important to consumers, and that therefore The Mounting Evidence was material. (Ex. EE at 13.) However, as set forth above, even if The Mounting Evidence as a whole was material, NPI's proof fails because evidence of materiality must show that *specific deceptive language* influenced consumers' purchasing decisions.

---

[8]    In a letter dated July 31, 2009, NPI disclosed that it would be providing materials to Dr. Richard Yalch, professor of Marketing at the University of Washington, but Dr. Yalch has not produced a survey report in this case. (Ex. BB.)

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

Because Nowlis made no attempt to gauge consumer reaction to any of the challenged statements in The Mounting Evidence, his opinion that the Video was material to consumers' purchasing decision lacks foundation. Nor does any alleged subjective intent of Dave Long, Scott Zuelke, or any other Gamber employee have any bearing on the determination of materiality. Accordingly, NPI cannot establish the element of materiality in support of its false advertising claims and Gamber-Johnson is entitled to summary judgment.

## E.    NPI CANNOT SHOW THAT IT SUFFERED ANY INJURY CAUSALLY RELATED TO ALLEGED FALSE OR MISLEADING STATEMENTS IN THE MOUNTING EVIDENCE.

To recover monetary damages under Section 43(a) of the Lanham Act, a plaintiff must show that its injury was caused by the defendant's deceptive advertising: "If plaintiff seeks damages based upon its own lost sales or upon defendant's profits, plaintiff is faced with the traditional problems of proving an *actual diversion of customers from itself to defendant*." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:42 (4th ed. 2009)(citations omitted, emphasis added). Further, courts require that at least some quantum of lost sales, such as proof of actual diversion of sales, be shown, because Section 43(a) is "not intended to provide a windfall." Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 (1st Cir. 1977).

In Harper House, Inc. v. Thomas Nelson, Inc., the Ninth Circuit addressed the element of injury in a false advertising case, stating that "the plaintiff *may not recover* if he fails to prove that the defendant's actions *caused the claimed harm*." 889 F.2d 197, 209 (9th Cir. 1989)(emph. added). In that case, the plaintiff "presented no evidence of any injury causally related to the defendants' deception" and "no evidence of lost profits." Id. at 210. Accordingly, the appellate court reversed the trial court's denial of the defendant's motion for judgment notwithstanding the verdict on the unfair competition claim. Id.

- 22 -

In this case, although NPI claims to have lost sales relating to Comcast, Lenovo, RadioWorks, and Itronix, the facts show otherwise. <u>See</u> Facts at 10-15, *supra*. Like the plaintiff in <u>Harper House</u>, NPI has failed to present evidence sufficient to establish that any of the purported lost sales are causally related to any specific alleged false or misleading statement by Gamber in The Mounting Evidence. Thus, any contention by NPI that it is entitled to "lost profits" or a disgorgement of Gamber's profits is wholly unfounded. This element of NPI's false advertising claim therefore fails as well.

## F.    GAMBER IS ENTITLED TO SUMMARY JUDGMENT ON NPI'S STATE LAW CLAIMS.

NPI also has pled causes of action against Gamber-Johnson under the Washington Consumer Protection Act ("CPA") and the common law theory of unjust enrichment. NPI cannot prevail under either theory.

RCW 19.86.020 prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To maintain a private cause of action under RCW 19.86.020, the plaintiff must establish five elements: (1) an unfair deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) injury to plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wash. 2d 778, 784-85 (1986). To show proximate causation, courts require that a plaintiff establish that "but for" the defendant's deceptive conduct, plaintiff would not have suffered injury. <u>See</u> <u>Kelley v. Microsoft Corp.</u>, 251 F.R.D. 544, 556-57 (W.D. Wash. 2008).

As set forth above, NPI cannot show that Gamber-Johnson made any false or misleading statement in The Mounting Evidence and therefore, NPI's CPA claim fails on the first element. Further, in <u>Michael v. Mosquera-Lacy</u>, the Supreme Court of Washington

- 23 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

recently reiterated the proof necessary to satisfy the "effect on public interest" element of a CPA claim:

> The purpose of the CPA is to protect the public. *It is the likelihood that additional plaintiffs have been or will be injured <u>in exactly the same fashion</u> that changes a factual pattern from a private dispute to one that affects the public interest.* There must be shown *<u>a real and substantial potential for repetition</u>*, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated. A private plaintiff must show that his lawsuit would serve the public interest. For private disputes, it may be *<u>more difficult</u>* to show that *<u>the public</u>* has an interest in the subject matter.

165 Wash. 2d 595, 604-05 (2009)(citations omitted, emphasis added). The <u>Michael</u> court then identified four factors that a court must evaluate when presented with a private dispute under the CPA:

> (1) Whether the alleged acts were committed in the course of defendant's business;
>
> (2) Whether the defendant advertised to the public in general;
>
> (3) Whether the defendant actively solicited this particular plaintiff, indicating potential solicitation of others; and
>
> (4) Whether the plaintiff and defendant have unequal bargaining positions.

<u>Id.</u> at 605 (citing <u>Hangman Ridge</u>, 105 Wash. 2d at 790).

In this case, Gamber-Johnson was acting in the course of its business when it presented The Mounting Evidence. Although the Video was posted for a period of time on the Internet, it was directed at a specific target audience, laptop mount resellers, not the general public. Gamber did not actively solicit NPI in connection with the Video, and the fourth factor of whether NPI and Gamber have unequal bargaining power appears to be factually inapposite here. In short, the above factors do not demonstrate any "real and substantial potential" that Gamber would repeat any alleged false or misleading statements that would cause any future injury to the public "in exactly the same way" as NPI allegedly was injured. NPI cannot show

- 24 -

1 | that its CPA claim "serves the public interest", and for these further reasons, it must be

2 | dismissed.

3 | As detailed above, NPI cannot present credible evidence of any injury "causally linked"

4 | to an alleged false or misleading statement in The Mounting Evidence, in support of the final

5 | elements of its CPA claim. NPI's CPA (and unjust enrichment) claims apparently rely on the

6 | same evidence as its Lanham Act claims. Based on the foregoing, NPI has failed to meet its

7 | burden of proof on the CPA claim.

8 | Likewise, NPI cannot prevail on an unjust enrichment theory. The elements of an

9 | unjust enrichment claim in Washington are: (a) a benefit conferred on defendant by the

10 | plaintiff; (b) appreciation or knowledge of the benefit; and (c) that retention of the benefit

11 | would be unjust under the circumstances. Kelley, 251 F.R.D. at 559 (citations omitted). Here,

12 | there is no evidence that Gamber has retained any benefit "conferred on it" by NPI, or by its

13 | use of The Mounting Evidence as a marketing tool. If the alleged inequity retained by Gamber

14 | is that it deceived consumers, "the trier of fact will need to inquire whether [Gamber] *actually*

15 | *deceived* consumers (an individualized inquiry) to determine whether any benefit conferred on

16 | [it] was unjust. Common issues will not predominate on that type of unjust enrichment

17 | claim"—namely, proof of causation is required. Id. (emphasis added). As noted, NPI has

18 | failed to present any independent evidence that a significant portion of consumers were

19 | deceived by any specific statement in The Mounting Evidence that affected their purchasing

20 | decisions.

21 | Nor is there evidence that Gamber possessed "appreciation or knowledge" of any

22 | alleged benefit. Again, this element fails. Finally, because equity is in fact on Gamber's side

23 | given NPI's baseless allegations in this suit, for these further reasons, NPI's unjust enrichment

24 | claim must be dismissed.

- 25 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

# V. CONCLUSION

For all of the foregoing reasons, defendant Gamber-Johnson LLC respectfully requests that the Court dismiss the claims asserted against it in the above-captioned matter by Plaintiff National Products, Inc.

Dated: December 4, 2009

**LEFFERT JAY & POLGLAZE, P.A.**

By: /s/ Jonathan D. Jay

Jonathan D. Jay, MN Bar #18603x
Nicholas S. Kuhlmann, MN Bar #33750x
150 South Fifth Street, Suite 1900
Minneapolis, Minnesota 55402
Tel: 612-312-2200
Fax: 612-312-2250
Admitted Pro Hac Vice

Mark S. Parris, WS Bar #13870
Charles J. Ha WS Bar #34430
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5700
Seattle, Washington 98104
Tel: 206-839-4300
Fax: 206-839-4301

**ATTORNEYS FOR DEFENDANT GAMBER-JOHNSON LLC**

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (NO. C08-0049 JLR)

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200