Honorable James L. Robart

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

NATIONAL PRODUCTS, INC.,

Civil Case No. CV08-0049-JLR

9

Plaintiff,

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

v.

10

GAMBER-JOHNSON LLC,

11

Defendant.

**Note on Motion Calendar:**
**Friday, January 8, 2010**

12

**ORAL ARGUMENT REQUESTED**

13

14

15

16

17

18

19

20

21

22

23

24

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. FACTS ............................................................................................................... 2

    A. The Parties. ........................................................................................... 2

    B. The Mounting Evidence. ....................................................................... 4

    C. NPI's Allegations of False Advertising ................................................ 7

III. LEGAL FRAMEWORK ..................................................................................... 8

    A. Summary Judgment. ............................................................................. 8

    B. False Advertising Under the Lanham Act. .......................................... 9

IV. ARGUMENT .................................................................................................... 10

    A. A Genuine Factual Dispute Exists Concerning Whether *The Mounting Evidence* is Literally False. ........................................................................... 10

        1. Long's Purported "analysis" and "investigation" ........................... 11

        2. *The Mounting Evidence* Makes Several Literally False Superiority Claims 16

            a) Laptop Restraint During Airbag Deployment or Challenging Driving .. 16

            b) Materials Used ....................................................................... 19

            c) Fasteners ................................................................................ 19

            d) Lower Tube Design ................................................................ 20

            e) Key Lock ................................................................................ 20

    B. False Statements in *The Mounting Evidence* Are Clearly Material. .................. 21

    C. Gamber Misinterprets Evidence and Case Law on Injury ................................. 23

    D. NPI's CPA Claim Also Survives Summary Judgment ....................................... 25

    E. Unjust Enrichment ............................................................................................ 26

V. CONCLUSION ................................................................................................ 26

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**    - i -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbot Laboratories v. Mead Johnson & Co.,*
971 F.2d 6 (7th Cir. 1992) ................................................................... 10

*American Home Products Corp. v. F.T.C.,*
695 F.2d 681 (3d Cir. 1982) ................................................................ 10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................. 9

*Castrol Inc. v. Pennzoil Co.,*
987 F.2d 939 (3d Cir. 1993) ................................................................ 10

*Century 21 Real Estate Corp. v. RE/MAX South County,*
882 F. Supp. 915 (C.D. Cal. 1994) ..................................................... 22

*Cook, Perkiss and Liehe, Inc. v. Cook,*
911 F.2d 242 (9th Cir. 1990) ............................................................... 21

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*
No. 81 CIV 731 (CSH), 1982 WL 121559 (S.D.N.Y. June 9 1982) ...................... 10

*Harper House, Inc. v. Thomas Nelson, Inc.,*
889 F.2d 197 (9th Cir. 1989) ............................................................... 23

*In re Apple Computer Securities Litigation,*
886 F.2d 1109 (9th Cir. 1989) ............................................................. 23

*Jessinger v. Nevada Federal Credit Union,*
24 F.3d 1127 (9th Cir. 1994) ............................................................... 9

*Lindy Pen Co. v. Bic Pen Corp.,*
982 F.2d 1400 (9th Cir. 1993) ............................................................. 23

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,*
938 F.2d 1544 (2d Cir. 1991) ............................................................... 11

*National Products Inc. v. Gamber Johnson LLC,*
CV04-0252-MJP, Docket No. 179 (W.D. of Wash. 2006) ....................... 4

*Novartis Consumer Health, Inc. v. Johnson & Johnson,*
290 F.3d 578 (3d Cir. 2002) .......................................................... 19, 20

*Pizza Hut, Inc. v. Papa John's International, Inc.,*
227 F.3d 489 (5th Cir. 2000) ............................................................... 22

*Plastwood SRL v. Rose Art Industrial,*
No. C07-0458JLR, 2008 U.S. Dist. LEXIS 101157 90 U.S.P.Q. 2d 1241
(W.D. Wash. 2008) ............................................................................. 10

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          - ii -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

*Proctor & Gamble Co., v. Chesebrough-Pond's Inc.,*
    747 F.2d 114 (2d Cir. 1984) ......................................................................... 11

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) ........................ 9, 10, 11, 16, 17, 18, 20, 21, 22, 23, 26

*Time Warner Cable, Inc. v. Direct TV, Inc.,*
    497 F.3d 144 (2d Cir. 2007) ......................................................................... 11

*U-Haul Int'l Inc. v. Jartran Inc.*, 793 F.2d 1034 (9th Cir. 1986) ........................... 10, 23, 25

*Vidal Sassoon, Inc. v. Bristol-Myers Co.,*
    661 F.2d 272 (2d Cir. 1981) ......................................................................... 21

*Warren v. City of Carlsbad,*
    58 F.3d 439 (9th Cir. 1995) ........................................................................... 8

*William H. Morris Co. v. Group W, Inc.,*
    66 F.3d 255 (9th Cir. 1995) ......................................................................... 10

## FEDERAL STATUTES

15 U.S.C. § 1125(a) .................................................................................................. 9

Fed. R. Civ. P. 56(c) ................................................................................................ 8

Lanham Act, Title 15 U.S.C. § 43(a)(1)(B) (1125(a)(1)(B)) ................................. 8

## STATE STATUTES

Washington State Consumer Protection Act, RCW 19.86.020 ............................... 8

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**     - iii -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

1

## I.   INTRODUCTION

The false advertisement at issue in this case was launched by Gamber-Johnson LLC

("Gamber") in response to competitive pressure from the vehicle laptop mounts sold by

National Products, Inc. ("NPI").  In 2004-2005, NPI began selling innovative vehicle laptop

mounts that cost roughly half of comparable Gamber mounts causing Gamber to malign the

safety of NPI's products.  Gamber's false advertisement warns of laptops becoming "out-of-

control missiles," and "projectiles" if NPI mounts are used.  These claims are even made by

"a nationally recognized airbag specialist and safety instructor," Dave Long, who claims

they are based on his "analysis" and "investigation."  The truth is that Long was a paid

narrator with no engineering training and not a single test was done to support the

outrageous claims he made in the video.  While it is Gamber's burden to prove that Long

had adequate scientific support for his claims, actual airbag and other crashworthiness

testing done by NPI prove that his statements are literally false.

Gamber's motion for summary judgment (Docket No. 75) scarcely addresses the

video's misrepresentation that Long, a.k.a. "The  Airbag Detective," actually "investigated"

and "analyzed" the mounting systems featured in the video.  Gamber's motion also parses

statements made in *The Mounting Evidence*, removing them from context in an attempt to

cast them as "literally true."  This tactic is contrary to Ninth Circuit law which requires that

statements in advertising be analyzed in their full context.

Gamber also asserts that *The Mounting Evidence* had "no impact," claiming it was

"puffery" and did not have the ability to influence purchasing behavior.  These arguments

are belied by a steady stream of sales closed through use of the video, a number of laudatory

reports, emails, and even a case study praising it as a "breakthrough approach."

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**           - 1 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

1    In one final challenge, Gamber's motion argues that NPI suffered no injury, but the

2    evidence shows a number of lost sales and untold damage to the NPI's reputation and brand,

3    all compensable under the Lanham Act by an award of Gamber's profits through a theory of

4    unjust enrichment.  The evidence also supports an award for past and future remedial

5    advertising.  Gamber's motion for summary judgment should be denied.

6    **II.    FACTS[1]**

7    **A.    The Parties**



NPI was founded by West Seattle inventor and

entrepreneur, Jeff Carnevali.  NPI designs, makes, and

sells a wide variety of innovative mounting devices for

vehicles sold under the trademark RAM®.  One of the

most successful RAM mounting products is a ball-and-

socket connector protected by U.S. Patent No. 5,845,885

("the '885 patent"), a device that allows ergonomic positioning of mounted equipment.

Since 2004, RAM mounting systems have also included laptop computer mounts sold in

competition with Gamber.[2]

Sometime in 1999, Gamber and NPI entered into a distribution relationship whereby

Gamber was permitted to sell NPI's patented ball-and-socket connector.[3]  The parties'

relationship soured and NPI withdrew Gamber's distribution rights.

---

[1] The following facts are based on the Declaration of Mark P. Walters (hereinafter "Walters Decl."), the Declaration of Dr. Steven Nowlis (hereinafter "Nowlis Decl."), and the declaration of Dr. David Eby (hereinafter "Eby Decl."), all offered in opposition to Gamber's motion for summary judgment.
[2] Vehicle laptop mounts have been the bulk of Gamber's business for many years prior to NPI's entry into this market.
[3] This distribution agreement was not in writing.  Gamber's president at the time, Jeff Greene, claims that the agreement provided exclusive rights for Gamber to sell to certain customers.  (Walters Decl. Ex. H, Greene II 22:2-12; 34:10-20.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**        - 2 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

Sometime in 2004, Gamber released its own ball-and-socket connector called "VersaTrue." Shortly thereafter, NPI filed suit alleging infringement of the '885 patent. While NPI sought enforcement of its '885 patent against Gamber, NPI also began to compete directly with Gamber in the market for laptop computer mounting systems with pre-drilled vehicle bases. (Walters Decl., Ex. D, Zuelke 25:17-26:15.) According to internal marketing plans, Gamber was very concerned about the RAM mounting systems for laptop computers, especially the pre-drilled vehicle bases which Gamber considered its "traditional market." (*Id.* 28:21-32:6 and DepEx122.) One important cause for concern was the fact that RAM mounting systems were sold at half the cost. (*Id.* GJ297441 "RAM has made heavy push . . . [t]hey are selling similar product at half the cost," *see also* Ex. E, Guerndt I, 20:7-9.)

The competitive pressure from RAM weighed heavily on Gamber in the fall of 2006, when Gamber perceived a weakness in its product offering, particularly to the "public safety" market.[4] (*Id.* Ex. E, Guerndt I 14:8-17, DepEx2 at GJ136294; *see also* Ex. D, Zuelke 68:4-10.) Accordingly, RAM's equivalent mounting systems posed a significant threat to one of Gamber's core markets. (*Id.* Ex. E, Guerndt I 17:4-7, DepEx2 at GJ136298 stating that "RAM's development of low cost Gamber-Johnson look-alike vehicle mounting systems and docking stations in addition to their strong marketing campaign may start to

---

[4] Made up of police, fire, and emergency medical personnel, the public safety market is particularly sensitive to price. (*Id.* Ex. E, Guerndt I 14:18-15:1; *see also* Ex. D, Zuelke 68:4-10.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT — 3 — Civil Case No. CV08-0049-JLR

DARBY & DARBY P.C.
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

affect the sales of our products, specifically our vehicle bases;" *see also* Ex. D, Zuelke 71:1-72:11.)

The VersaTrue litigation ended in September 2006, when Gamber admitted to infringing the '885 patent, paid damages, and was prevented from making any further sales of the VersaTrue product. (*Id.* Zuelke 46:20-47:3; *see also National Products Inc. v. Gamber Johnson LLC*, CV04-0252-MJP, Docket No. 179 (W.D. of Wash. 2006)). VersaTrue had been a product developed in part by Gamber's former Vice President of marketing, Scott Zuelke. (Walters Decl., Ex. D, Zuelke 23:20-23.) The discontinuation of the VersaTrue product was a very public disappointment for Gamber and, in particular, Zuelke (*Id.*, Ex. F, Greene II at 86:24-87:8 *Id.* 88:22-90:9, DepEx17; at GJ343393 and GJ343391; *see also* Ex. D, Zuelke 51:3-53:14.)

**B.    The Mounting Evidence**

In late 2006, facing competitive pressure from NPI's equivalent but much less expensive mounting systems and "deeply troubled" by the demise of the VersaTrue product line (*Id.*, Ex. F, Greene II, DepEx17 at GJ343393), Zuelke began work on *The Mounting Evidence* by submitting the concept for incorporation into the 2007 marketing budget. (*Id.* 61:13-16, DepEx134, 64:1-12, 66:2-4, 90:9-91:10; *see also* Ex. G, Greene I 15:2-5.)

According to Gamber's 2007 Integrated Marketing Plan,[5] *The Mounting Evidence* was conceived as "a promotional CD directed at our resellers and end users that competitively compares our products to the competition and communicates specific facts or competitive statements about why Gamber-Johnson product is the best in the industry." (*Id.* Ex. E, Guerndt I 23:8-18, DepEx2 at 136310; *see also* Ex. F, Guerndt II 16:15-17:2.) In

---

[5] Work on the 2007 Integrated Marketing Plan began in the fall of 2006. (*Id.* Ex. D, Zuelke 30:9-13.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**     - 4 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

view of the competitive threat from RAM, particularly in the public safety market, Gamber

thought it important to "communicate the differences of [its] products . . . over the

competition" (*Id.* Ex. E, Guerndt I 9:9-18, 20:7-12) and it sought to accomplish this through

a strategy of "aggressive PR . . . to public safety." (*Id.* 20:25-21:8.)

In February 2007, Zuelke was looking for someone who might "lend credibility" to

*The Mounting Evidence* project, someone who might be seen as "an industry expert [to]

facilitate (on-screen) the points" Zuelke planned to make in the video. (*Id.* Ex. D, Zuelke

DepEx143, 111:10-112:17.) Long was a suitable choice because he regularly spoke to

police, fire, and emergency medical groups about airbag safety. (*Id.* Ex. I, Long 55:17-

56:16.) According to Zuelke, Long provided "name recognition that would lend some –

some additional credibility to our – our marketing project." (*Id.* Ex. D, Zuelke 112:5-17.)

After auditioning for Gamber and its advertising agency, Thomas Marks &

Associates, Long was hired on or around March 1, 2007. (*Id.* Ex. I, Long 164:6-19, 192:22-

193:7.) Aside from reviewing a promotional video from Ford Motor Company (Jay Decl.,

Docket No. 76, Ex. B), Long was not asked to do anything to further *The Mounting

Evidence* project until he showed up for the first day of filming on April 9, 2007. (Walters

Decl., Ex. I, Long 195:12-196:24, 257:2-19.) He had no part in drafting the script. (*Id.*

201:24-25.) He did not evaluate or investigate any of the mounting systems. (*Id.* 195:12-25,

305:24-307:5.) In fact, he had not even seen any of the competitive mounting systems in

order to "strip down and analyze" them until he showed up on set to read Gamber's script.

(*Id.* 257:2-19.)

Zuelke came up with the title for *The Mounting Evidence* because he thought it

"played up nicely" with Long's moniker, "The Airbag Detective." (*Id.* Ex. D, Zuelke 114:3-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**            - 5 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

10, DepEx144.)  Zuelke's use of the word "evidence" stood to increase the impact and effectiveness of the video as a sales tool given that first responders are "accustomed to hearing [Dave Long] talk about incidents that [he has] investigated or looked into." (*Id.* Ex. I, Long 106:15-107:5.)  An image of Long appeared on the CD cover, where he was described as "a nationally recognized air bag specialist and safety instructor." (*Id.* Ex. A.) The CD further explained that "[t]his presentation represents the *results of an in-depth look at laptop mounting systems. . . . join Dave Long as he investigates* the facts." (*Id.* emphasis added.)

The Mounting Evidence was first revealed at Gamber's annual reseller conference "Connect 4 Tomorrow," on May 16-19, 2007. (*Id.* Ex. E, Guerndt I 120:20-121:8, DepEx27 "Special Presentation" at GJ316794.)  It was well received at Connect 4 Tomorrow. (*Id.* Ex. F, Guerndt II 97:11-15.)  One reseller review included the comment: "CD – Good Sales Tool – It's About Time!" (*Id.* 97:16-98:4 and DepEx12, GJ0001150.)  A number of resellers rated *The Mounting Evidence* "the most informative" session of the 2.5 day conference. (*Id.* GJ001142 "The presentation with Dave Long," 1145 "special presentation," and 1146 "I found The Mounting Evidence very valuable info.").

On May 29, 2007, Zuelke circulated a power point presentation informing all of Gamber's resellers about *The Mounting Evidence* and encouraging them to use it as a sales tool in competitive situations against other mount manufactures, including RAM.

> [H]ow do you sell against Jotto Desk, RAM, Havis-Shields? When they only compete on price? When the customer tells you 'all mounts are the same . . .' How do you sell the *value* of Gamber-Johnson? *What if* you had a tool . . . so *powerful* that it changed the customer's perspective? A tool that *fairly* compares the options . . . a *competitive edge* to sell more product? Beginning today, *there is* such a tool . . . to help you *sell more* Gamber-Johnson mounting systems. It can be found at www.themountingevidence.com . . . and it's the *first time* that mounts have been compared in this way. **Bold** Comparisons. **Factual** differences. **Convincing** arguments. One **Powerful** Tool. www.themountingevidence.com.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**          - 6 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

1    (Nowlis Decl., Ex. D at 330-345 (emphasis in the original); *see also* Walters Decl., Ex. D,

2    Zuelke DepEx154, 141:12-142:6.)

3          While Gamber only has about 85 resellers (*Id.* Ex. G, Greene I 17:11-13), it printed

4    at least 5,000 copies of the CD for distribution (*Id.* 21:5-7), and it hosted the video on a

5    dedicated web site from May 29, 2007 through at least September 9, 2008.  (*Id.* Ex. F,

6    Guerndt II 193:13-17.)  Distribution of the video was widespread; it was sent to all Gamber

7    customers.  (*Id.* Ex. E, Guerndt I 38:21-39:1.)  The video was also used widely by Gamber

8    and its resellers to sell Gamber's products, oftentimes in direct competition with NPI.

9    (Nowlis Decl., Ex. A. at 26-29, ¶¶, 42-50.)

10          Gamber's investment of money and time into *The Mounting Evidence* was

11   significant, including over $100,000 in costs related to production, over $275,000 in trade

12   show expenses where the video was distributed, and nearly $300,000 in internet marketing

13   and advertising, directing traffic to the main Gamber website which included a link to *The*

14   *Mounting Evidence*, and also including marketing for www.themountingevidence.com.

15   (Walters Decl., Ex. N.)  According to an Email from Thomas Marks, he invested as many as

16   160 hours on the project.  (Walters Decl., Ex. O.)

17          **C.      NPI's Allegations of False Advertising**

18          NPI filed its amended complaint on January 15, 2007.[6]  NPI alleges that *The*

19   *Mounting Evidence* "makes materially false or misleading comparative and superiority

20   claims about its mounts and NPI's RAM MOUNTS" (¶17) and that these claims are falsely

21

22

23   ───────────────────
     [6] The causes of action are false advertising under the Lanham Act, Title 15 U.S.C. § 43(a)(1)(B)
     (1125(a)(1)(B)), common law unjust enrichment, and unfair competition for violation of the Washington State
24   Consumer Protection Act, RCW 19.86.020.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**        - 7 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

based on "scientifically conducted studies" or "investigations" at the direction of Dave Long. (¶19.)

Specifically, *The Mounting Evidence* falsely claims, based on "analysis" and "investigation," that (a) Gamber's mounts are superior at restraining the laptop in the event of an airbag deployment or during hard or challenging driving conditions; (b) Gamber's mounts are made from superior materials to NPI's; (c) NPI's fasteners are inferior or inadequate for the application; (d) NPI's lower tube is inferior in design to Gamber's because it is made of thinner steel; and (e) NPI does not offer a key lock, or where it does, Gamber's lock is superior.[7]

## III. LEGAL FRAMEWORK

### A. Summary Judgment

Summary judgment is not appropriate unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts must be viewed in the light most favorable to the nonmoving party, *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), meaning that all reasonable inferences should be drawn in favor of the nonmoving party. The Court is not permitted to weigh the evidence on a motion made under Rule 56. *Jessinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). Instead, the Court's role under Rule 56 is narrowly limited to assessing the threshold issue of whether a genuine dispute exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine dispute

---

[7] Gamber's motion for summary judgment complains that "NPI's identification of the alleged false statements in The Mounting Evidence has changed throughout the course of this litigation." (Gamber's Motion 6:9-15.) Discovery is on going in this case, and NPI continues to update and supplement its disclosures as required by the rules. The false statements identified by NPI's experts are consistent with NPI's previous discovery responses and supplements made during discovery. (Walters Decl., Ex. C)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**          - 8 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

exists, "the judge must view the evidence presented through the prism of the substantive evidentiary burden" and consider what "quality and quantity of evidence is required by the governing law." *Id.* at 254.

### B.    False Advertising Under the Lanham Act

Section 43(a) of The Lanham Act of 1947 is codified at 15 U.S.C. § 1125(a).  Since 1989, the Act has provided a cause of action where "any person . . . uses in commerce any . . . false or misleading representation of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  The elements of a Lanham Act false advertising claim are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Gamber's Motion incorrectly claims that "[a] failure to establish the existence of any one of these elements is fatal … and mandates entry of summary judgment.  (GJ Motion at 16:15-17.) Gamber is incorrect because in the Ninth Circuit, the "publication of a deliberately false comparative claim gives rise to a presumption of actual deception and reliance."  *U-Haul Int'l Inc. v. Jartran Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986) (reasoning "he who has attempted to deceive should not complain when required to bear the burden of rebutting the presumption he succeeded"); *see also William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).  As explained further below, summary judgment is inappropriate in this

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          - 9 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

case, *interalia*, because *The Mounting Evidence* makes deliberately false comparative claims.

## IV.   ARGUMENT

### A.   A Genuine Factual Dispute Exists Concerning Whether *The Mounting Evidence* is Literally False

Whether or not an advertisement is "literally false" is a question of fact.  *See Abbot Labs v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992);  *see also Plastwood SRL v. Rose Art Indus.*, No. C07-0458JLR, 2008 U.S. Dist. LEXIS 101157 at *12-13, 90 U.S.P.Q.2d 1241 (W.D. Wash. 2008).  And because literally false advertisements create a presumption of deception and reliance, *U-Haul*, 793 F.2d at 1040-41, summary judgment in favor of the defendant is inappropriate where sufficient evidence exists to permit a juror to conclude that an advertisement is literally false.  *See Southland Sod*, 108 F.3d at 1146 (reversing summary judgment where a reasonable juror could conclude advertisements were literally false).  Gamber's ad makes several literally false statements. (*See*, *e.g.*, Eby Decl., ¶¶ 2-15.)

"When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context."  *Southland Sod*, 108 F.3d at 1139 (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993); *American Home Products Corp. v. F.T.C.*, 695 F.2d 681, 687 (3d Cir. 1982); and *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 CIV 731 (CSH), 1982 WL 121559, *2 (S.D.N.Y. June 9 1982) ("In determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other."))  For this reason, "an advertisement can be literally false even though it does no explicitly make a false assertion, if the words or images, considered in context, necessarily and

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**       - 10 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

unambiguously imply a false message." *Time Warner Cable, Inc. v. Direct TV, Inc.*, 497

F.3d 144, 148 (2d Cir. 2007). Under this doctrine, the advertisement is said to be "literally

false by necessary implication." *Southland Sod*, 108 F.3d at 1139.

When claims in an advertisement purport to be validated by tests or studies, a

plaintiff can show literal falsity "either by attacking the validity of the defendant's tests

directly or by showing that the defendant's tests are contradicted or unsupported by other

scientific tests." *Id.* (citing *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544,

1549 (2d Cir. 1991); *Proctor & Gamble Co., v. Chesebrough-Pond's Inc.*, 747 F.2d 114,

119 (2d Cir. 1984)). In short, "the plaintiff must demonstrate that such tests 'are not

sufficiently reliable to permit one to conclude with reasonable certainty that they

established' the claim made." *McNeil-P.C.C.*, 938 F.2d at 1549 (quoting *Procter &

Gamble*, 747 F.2d at 119). Here, as explained in greater detail below, Gamber did no

supporting tests or scientific analysis, so its tests necessarily fail to support the statements in

the ad. (Eby Decl., ¶ 8.)

### 1.   Long's Purported "analysis" and "investigation"

*The Mounting Evidence* expressly represents in a number of places that it is the

product of Long's "analysis" and "investigation." For example, the CD cover states that

*The Mounting Evidence* "represents the *results of an in-depth look* at laptop mounting

systems. . . . join Dave Long as *he investigates* the facts." (Walters Decl., Ex. A., emphasis

added.) Long states in the video that he has "*stripped down and analyzed* comparable

vehicle mounting systems from six manufacturers"[8] and "*we*[9] have *examined* a lot from

---

[8] In documents produced by Thomas Marks, it was revealed that the script was changed from a version that
read "*My staff and I* have stripped down and analyzed." (*Id.* Ex. I, Long 232:15-233:2, DepEx46, emphasis
added.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**          - 11 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

safety and design to fasteners and attention to detail." (*Id.* Ex. B at 2.) The CD cover

includes a photo of Long and presents him as "a nationally recognized air bag specialist and

safety instructor." (*Id.* Ex. A.) The CD cover further says "[i]n this *compelling analysis* of

comparable laptop mounting systems a case is built for . . . [*inter alia*] restraining laptops

properly." (*Id.* emphasis added.) Finally, the CD cover says: "[i]n this presentation,

*everything will be investigated* – from design and construction to restraint and security."

(*Id.* emphasis added.)

Zuelke, after he came to be employed by a Gamber reseller, distributed *The*

*Mounting Evidence* representing that it was a "study." (*Id.* Ex. D, Zuelke 169:13-170:20,

Dep Ex 164.) Zuelke's business associate, Brian Belcher, represented that *The Mounting*

*Evidence* was "the results of tests performed on several of the current mobile computer

mounts that might be of interest to you and your staff." (*Id.* at Ex. K, Belcher 46:4-47:21,

DepEx103.) These are examples of how the ad was perceived and used. Gamber even had

a cover letter prepared for distribution of the CD which read in-part, "*The Mounting*

*Evidence* is a product comparison presentation *conducted by Dave Long, the Air Bag*

*Detective*, which *fairly evaluates* our competition's products and contrasts that with

Gamber-Johnson's features." (*Id.* Ex. D, Zuelke DepEx155, emphasis added.)[10]

Despite Gamber's express representations that Long "investigated" the mounting

systems featured in *The Mounting Evidence*, that he "examined" them, looked at them "in-

depth," and "analyzed" them, he did nothing of the sort. In fact, Long repeatedly testified

that his role was limited to that of a "paid narrator" (*Id.* Ex. I, 60:19-61:3), and that he was

---

[9] As used here, the pronoun "we" excludes Gamber because Long refers to Gamber in the next couple sentences as "they" and later as "these guys." (Walters Decl. Ex. B. 2 and 11 "It's obvious these guys know what they are doing.") Nowhere does Long represent that he is relying on any work done by Gamber.

[10] Marketing VP Jennifer Guerndt testified that she recognized a similar form letter as one that was sent out to Gamber's resellers. (*Id.* Ex. E, Guerndt I 74:5-7, DepEx14.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**                - 12 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

hired "to read their [Gamber's] teleprompter" (*Id.* 230:5-6), not to conduct an "evaluation" or "investigation" of the mounting equipment featured in the video. (*Id.* 241:2-244:10, DepEx30.) Long also repeatedly testified that he lacked technical experience or education necessary to evaluate or investigate the mounting systems featured in the video (*Id.* 99:19-105:24; *see also* 267:5-10) and that he did not examine the structural integrity of the mounting systems (*Id.* 259:3-9), he has never actually seen a laptop "become ejected like a projectile during an airbag deployment" (*Id.* 267:5-10), and that he "never deployed an airbag on a RAM mount to see whether the lack of a front restraint would cause the laptop to be ejected like an out-of-control missile." (*Id.* 294:7-16.) Where Long made any statements in *The Mounting Evidence* concerning the performance, safety, or design of the mounting systems, he was relying exclusively on what he was told by Zuelke. (*Id.* 247:3-6, 258:21-25, 271:3-25, 272:3-15, 276:7-19, 286:9-287:4, 291:23-292:8, 299:18-301:19.)

With respect to Long's statement "I have stripped down and analyzed comparable vehicle mounting systems from six manufacturers," Gamber's motion makes the incredible claim that "[i]n fact, Mr. Long did strip down and analyze vehicle mounting systems from six manufacturers." (Motion at 6:21-22, citing Long 254:6-256:25.) As discussed above, however, Long did nothing even resembling the "compelling analysis of comparable laptop mounting systems" that was purportedly done to support *The Mounting Evidence*.[11] Long confirmed at his deposition that the statement "I have stripped down and analyzed" is not referring to any other activity besides the time during filming of *The Mounting Evidence*

---

[11] Again, The CD jacket represents that Dave Long conducted a "compelling analysis" that "builds a case for" a variety of things that cannot reasonably have been conducted by merely *looking* at the mounting systems, including "[r]estraining laptops properly," "[i]dentifying high-grade material and bolts within mounting systems" and "[m]easuring the differences in design, construction and workmanship." (Walters Decl., Ex. A.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT** - 13 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

when he "looked at the systems with Scott Zuelke." (Walters Decl., Ex. I, Long 257:22-258:6.)

When Zuelke was asked about Long's claim to have "stripped down and analyzed comparable vehicle mounting systems from six manufacturers," Zuelke was forced to admit that this claim was literally false. (*Id.* Ex. D, Zuelke 176:2-8.)

> Q.   Mr. Long says, I have stripped down and analyzed comparable vehicle mounts from six manufacturers. That statement's not literally true because – at least for the fact that Mr. Long never stripped down and analyzed comparable vehicle mounting systems from six manufacturers; is that correct?
>
> A.   That's correct.

(*Id.*) Guerndt, who worked with Zuelke on this project, agrees that Long did not investigate, analyze, or strip down any of the mounts featured in the video. (*Id.* Ex. F, Guerndt II 78:7-81:3, "we did the analysis. He [Dave Long] was asked to read it."). Likewise, former Gamber president Greene was not aware of Long contributing any independent analysis to the video. (*Id.* Ex. E, Greene I 86:21-23.)

While *The Mounting Evidence* expressly represents that Long conducted the analysis and investigation supporting the "facts" set forth in the video, Gamber takes the position that it was actually Gamber's engineering team that did the analysis. (GJ Motion 4:10-14 "[t]he final script for The Mounting Evidence was based upon input and comments that several Gamber-Johnson engineers provided to Mr. Zuelke after they analyzed the mounting systems to be discussed in the video.") Even if *The Mounting Evidence* could be viewed as the product of Gamber's analysis and not Long's,[12] Gamber's engineers had just two meetings with Scott Zuelke in connection with the project (Walters Decl., Ex. J,

---

[12] Gamber points to no statement in the video that would support this view. The Mounting Evidence clearly presents Long as an independent expert who conducted the analysis independently. (Nowlis Decl., Ex. B at pp. 10-11, ¶ 11.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**          - 14 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

Lewandowski, 19:21-20:2), these meetings were both in Zuelke's office. No other "analysis," "investigation," or testing was done. (*Id.* 20:3-22:16.) In fact, the only technical or scientific work of any kind Gamber claims to have done to support the project consisted of "measurements and opinions" formed by "disassembl[ing] and reviewing the different mounting systems." (*Id.* 23:5-24:3, 25:4-11.) Nothing was reduced to writing. (*Id.* 24:4-10.) There was no finite element analysis (FEA), no crashworthiness evaluation, no airbag deployments, and no shake or vibration testing. (*Id.* 28:2-29:13.) In fact, no one from Gamber's engineering team even saw the script Zeulke was working on. (*Id.* 30:24-31:25.)

Zuelke confirmed the fact that there were no tests done to support the claims made in *The Mounting Evidence* (*Id.* Ex. D, Zuelke: 127:23-129:19; 179:17-182:19; 191:9-20; 192:9-194:1; 198:4-9), that he has no engineering or scientific training of any kind (*Id.* 130:2-131:2), and that Gamber's engineers did not review or approve the script in any way. (*Id.* 182:20-183:2; *see also* 129:20-130:1.)

According to Dr. David Eby, Gamber's alleged "analysis" is inadequate to claim superior performance in the event of an airbag deployment or in any of the other specific design categories addressed in *The Mounting Evidence*. (Eby Decl., ¶ 8.) Further, Eby's tests show that Gamber's mounting systems are not made of superior materials, that NPI's lack of front restraints on its universal laptop tray is not "a serious shortcoming," and that NPI's lower tube and fasteners are sufficiently strong and safe for the application. (Eby Decl. ¶¶ 10-14.)

Therefore, even if *The Mounting Evidence* could be viewed as based on the undocumented and cursory work conducted by Gamber's engineering team, it is nevertheless false because Gamber's statements are (a) not adequately supported by these

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**            - 15 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

cursory measurements, and (b) are contradicted by the results of truly scientific testing

performed by Dr. Eby. *See Southland Sod*, 108 F.3d at 1139 (holding that when claims in

an advertisement purport to be validated by tests or studies, a plaintiff can show literal

falsity "either by attacking the validity of the defendant's tests directly or by showing that

the defendant's tests are contradicted or unsupported by other scientific tests.").

> **2.** ***The Mounting Evidence Makes Several Literally False Superiority Claims***

*The Mounting Evidence* falsely claims that Gamber's mounts are superior to NPI's in

at least the following ways: (a) restraining the laptop in the event of an airbag deployment or

during hard or challenging driving conditions (e.g. "projectile" "missile"); (b) materials

used; (c) fasteners; (d) lower tube design; and (e) key lock. Each of these claims is

addressed below.

> **a)** ***Laptop Restraint During Airbag Deployment or Challenging Driving***

The Mounting Evidence expressly represents that Gamber's NotePad IV is superior

to NPI's universal tray due to the presence of "front restraints:"

> Here is Gamber-Johnson's approach. And Frankly, *this is really important*. Of Course, side restraints here, rear supports there, *and front restraints here*. Now pay attention, *this is where it gets scary*. There are *no front restraints on RAM's . . . laptop mount*[] and *that's a serious shortcoming . . .* If your laptop isn't restrained in the front and if an airbag deploys, it's going to hit right here and that laptop could submarine right out of the side restraints and fly around in your vehicle.

(Walters Decl., Ex. B, emphasis added.) Dr. Eby's testing shows that this claim is literally

false because "NPI's universal tray without front restraints outperformed Gamber's Notepad

IV in my static airbag deployment testing." (Eby Decl., ¶ 10.)

With respect to challenging driving conditions, *The Mounting Evidence* says "[w]hen

driving a vehicle, especially a police car, there could be inertia from any direction,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**          - 16 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

depending upon the speed, breaking [sic] force and degree of turn. The laptop needs to stay in place through all of this." This statement is made just after the video claims that RAM's lack of front restraints is "a serious shortcoming."

Gamber takes the position that *The Mounting Evidence* does not claim superiority of Gamber's NotePad IV over RAM's universal laptop tray. (GJ Motion at 7:19-8:6.) Gamber's position advocates reading statements out of context from the entire video as a whole; this is inconsistent with the Ninth Circuit's decision in *Southland Sod*, where an order granting summary judgment of no literal falsity was reversed because statements from the advertisement were not read in their full context. 108 F.2d at 1137.

In *Southland Sod*, the accused advertisement compared Southland's "Marathon IIe" turfgrass with Defendant's "Bonsai" turfgrass using a bar-chart and concluding *inter alia* that Bonsai required "less mowing," "reduced costs," and had "slower growth." *Id.* at 1144. The bar charts in *Southland Sod* "represented a comparison of tall fescues accumulated from March through May 1990 at Aurora, Oregon." *Id.*

In opposition to summary judgment, Southland offered evidence showing that Bonsai had "unusually slow establishment as a seedling and starts spring growth . . . about a month later than other dwarf tall fescues." *Id.* at 1138. Relying on this evidence, Southland argued that the bar-chart advertisements were literally false because they were intended to represent year-round growth characteristics for mature Bonsai, but the data represented only spring growth for juvenile Bonsai. The district court disagreed with Southland, "[b]ecause the advertisement never claimed to be a representation of year-round growth characteristics" for mature turfgrass. *Id.* The district court further relied on the fact that the bar-chart advertisements "indicated the time period during which data was collected." *Id.* at 1140.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**     - 17 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

1    Reasoning that the district court "failed to consider Defendants' bar-chart

2 advertisements in their full context" the Ninth Circuit reversed because "there are several

3 ways in which a jury could reasonably conclude that the bar chart advertisements, when read

4 as a whole, contain literally false statements" including "that the bar chart is in fact intended

5 to represent year-round growth characteristics of mature turfgrass." *Id.* Of particular

6 relevance was the fact that the bar-chart advertisements included the heading "PROOF

7 THAT BONSAI DWARF GROWTH HABIT SAVES TIME AND MONEY." *Id.* at 1144.

8 According to the Ninth Circuit in *Southland Sod*, this heading "would be nonsensical if the

9 bar chart were only intended to represent the turf's growth characteristics during the spring

10 months in the first year following germination." *Id.*

11    *The Mounting Evidence* says that NPI's lack of front restraints is "a serious

12 shortcoming," and "if not restrained in the front and if an airbag deploys" the laptop could

13 "submarine out of the side restraints and fly around your vehicle." Gamber further claims,

14 with no support, "without the right mount, a lap-top is a projectile." (Walters Decl., Ex. B.

15 at 14.) These claims, and others made in *The Mounting Evidence*, would not make sense

16 unless the video represented that RAM's mount was inferior to Gamber's NotePad IV in the

17 event of an airbag deployment or during challenging driving conditions.

18

19

20

21

22

23

24

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**          - 18 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

### b) *Materials Used*

*The Mounting Evidence* expressly claims that Gamber's NotePad IV is made from superior materials; specifically, that plastic is not appropriate for use in the construction of a laptop mount. (Walters Decl., Ex. B. "[s]ee this mount from RAM – plastic . . . [t]here are products where the use of plastic is appropriate, but trust me folks, this isn't one of them."). This claim is literally false as Dr. Eby shows in his analysis. (Eby Decl., ¶ 12.)

### c) *Fasteners*

*The Mounting Evidence* represents that NPI's use of Grade A fasteners makes RAM Mounts inferior to Gamber's because Gamber uses Grade 5 bolts. (Walters Decl., Ex. B. "for Gamber-Johnson, this [i.e., the use of a Grade A bolt] just isn't good enough . . . [i]f an airbag hits a laptop mounting system, you need the mount to be solid and not break apart. There's no reason to take a chance with a product that's not formidable.") This statement is literally false according to Dr. Eby, who shows though his own analysis that RAM's fasteners are of adequate strength for the application. (Eby Decl., ¶ 13.) Moreover, as Gamber admits in its Motion, RAM switched to Grade 5 hardware in April 2008 (Jay Decl., Ex. Z), making *The Mounting Evidence* literally false in this additional way as of April 2008.[13]

---

[13] Gamber points to a disclaimer at the end of the video ("COMPARISONS IN THIS PROGRAM WERE ACCURATE AT THE TIME OF PRODUCTION") in order to deal with clearly false claims like this one and one other, relating to NPI's purported lack of "locking top" on its universal laptop tray (NPI released a locking top for its universal tray in November 2007 about 6 months after production of *The Mounting Evidence*). (GJ Motion at 6:6-7.) But disclaimers may not effectively cure false advertising. *See Novartis Consumer Health, Inc. v. Johnson & Johnson*, 290 F.3d 578, 599 (3d Cir. 2002). The positioning of Gamber's disclaimer in this case, at the end of a multi-segmented video, is of dubious effect, thus creating more factual disputes for trial.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**     - 19 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

### d) Lower Tube Design

The necessary implication of statements made by Gamber in *The Mounting Evidence* is that RAM's lower tube is inferior in design when compared to Gamber's because RAM's is made of thinner steel.

> Here is Gamber-Johnson's lower tube and it's one-eighth of an inch thick and it's rock solid. Here is RAM's lower tube – hmmm looks like the same product from this angle – but it's not. RAM's wall thickness is one-sixteenth of an inch. Gamber-Johnson's is a robust one-eighth of an inch – double the thickness. Sometimes 'the mounting evidence' comes down to an eighth of an inch.

(Walters Decl., Ex. C.) Reading the above statements in context, they clearly and unambiguously represent that Gamber's thicker tube is superior in design when compared to RAM's thinner tube. Another reading would simply not make sense. *See Southland Sod*, 108 F.2d at 1144. But as Dr. Eby explains, Gamber's claim of superior tube design is literally false because NPI's tube provides equivalent stiffness in all directions when compared to Gamber's lower tube, making this statement literally false. (Eby Decl., ¶ 14.)

### e) Key Lock

*The Mounting Evidence* also claims that RAM does not offer a key lock for its universal laptop tray. As Gamber admits in its motion, this statement became literally false as of November or December 2007 (GJ Motion at 10:16-17), about 6 months after the video was released. As explained *supra* at footnote 13, Gamber's disclaimer ("COMPARISONS IN THIS PROGRAM WERE ACCURATE AT THE TIME OF PRODUCTION") is of dubious effect, *see Novartis*, 290 F.3d at 599, and certainly not sufficient to cure this particular false advertising as a matter of law.

*The Mounting Evidence* also claims that its locking mechanism is "[t]amper resistant" and that it "offers the best chance at deterring theft." (Walters Decl., Ex. C.) These statements are literally false as explained by Dr. Eby. (Eby Decl. ¶ 15.) Further, as

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

Gamber's head of engineering admitted, Gamber has received several complaints of theft

from the NotePad IV due to the bending of the very weak side restraints.  (Walters Decl.,

Ex. J., Lewandowski at 44:11-22.)

**B.    False Statements in *The Mounting Evidence* Are Clearly Material**

A false statement is "material" if it is "likely to influence the purchasing decision" of

a consumer.  *Southland Sod*, 108 F.3d at 1139.  Matters relating to an "inherent quality or

characteristic" of a product are typically material.  *Vidal Sassoon, Inc. v. Bristol-Myers Co.*,

661 F.2d 272, 278 (2d Cir. 1981).  Puffery is not material; it is "exaggerated advertising,

blustering, and boasting upon which no reasonable buyer would rely."  *Id.* at 1145.  Thus, an

advertisement claiming superiority through "vague or highly subjective" terminology is

typically not actionable.  *See Cook, Perkiss and Liehe, Inc. v. Cook*, 911 F.2d 242, 246 (9th

Cir. 1990) (holding that a claim of "we're the low cost, commercial collection experts" was

non-actionable puffery).  On the other hand, "[a] specific and measurable" claim of

superiority based on product testing is not puffery.  *Id.*  Further, "misdescriptions of specific

or absolute characteristics" of a product are also not puffery  *Id.*

As explained by Dr. Nowlis, the false statements made in *The Mounting Evidence*

are highly material.  The video concerns matters that, according to Gamber's own pre-

litigation customer surveys, are highly important to consumer decision making in this

market.  (Nowlis Decl., Ex. A at 9-13, pp. 11-12; see also Ex. B at 22-23, ¶¶ 35-36.)  The

video's "results" were expressly represented as validated by the "investigation" and

"analysis" of someone who is well known and credible among first responders; this fact,

according to Dr. Nowlis increases the likelihood that a consumer will rely on the

advertisement.  (Nowlis Decl., Ex. A at 18-22, ¶¶27-31.)  Consumers in the public safety

market are especially concerned about airbag safety (Walters Decl., Ex. E, Guerndt I 14:18-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**          - 21 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

15:7 DepEx2; Guerndt II 100:12-102:9, DepEx 13) and they are accustomed to hearing

Long report on matters he has "investigated." (*Id.* Ex. I, Long 106:18-107:5.) *The*

*Mounting Evidence* was indented to communicate "important differences" between products

(*Id.* Ex. D, Zuelke 114:22-115:3; *see also* 141:1-11) and this fact was communicated

expressly through several reminders that items being discussed in the video are *inter alia*

"critical" and "very important." (*Id.* Ex. B at 7; *see also* NPI Response to Gamber

Interrogatory No. 15 attached to Jay Decl., Docket No. 76, Ex. Q.)

Both cases relied on by Gamber, *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d

489, 502 (5th Cir. 2000) and *Century 21 Real Estate Corp. v. RE/MAX South* County, 882 F.

Supp. 915, 924 (C.D. Cal. 1994), to argue that the alleged false statements made in *The*

*Mounting Evidence* are not material (*see* GJ Motion at 20:18-21:20) are wholly inapposite.

In *Pizza Hut*, the advertising claim was "Better Ingredients. Better Pizza." 227 F.3d at 491.

This slogan is a clear example of puffery due to its highly subjective and immeasurable

character. In *Century 21*, the advertising claims included "Highest Level Of Customer

Satisfaction" and "Most Transactions." 882 F. Supp. at 922-23. These claims were too

ambiguous to be false, and since they were not false, the district court concluded they could

also not be material. *Id.* at 924.[14]

Unlike the cases cited by Gamber and discussed in the previous paragraph, the

factual comparisons made in *The Mounting Evidence* do not rely on highly subjective or

ambiguous statements. On the contrary, *The Mounting Evidence* relies on "a compelling

analysis" where "a case is built" on several "facts." Dr. Nowlis calls this a "strong

---

[14] This district court case is of very limited value because it was decided prior to the Ninth Circuit's decision in
*Southland Sod* in 1997, which adopted the doctrine "literally false by necessary implication." 108 F.3d at 1139.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**          - 22 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

argument" and it is the kind that, according to published research, is highly effective at influencing consumer behavior. (Nowlis Decl., Ex. A. ¶¶ 27-31.)

In view of Dr. Nowlis' proffered expert testimony, including all of the documentary evidence relating to the issue of materiality, summary judgment on this issue would be inappropriate. *Southland Sod*, 108 F.3d 1144 ("'As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case.'") (quoting *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1116 (9th Cir. 1989)).

## C. Gamber Misinterprets Evidence and Case Law on Injury

Gamber asserts that to recover monetary damages under the Lanham Act, including a "defendant's profits," NPI must first show "actual diversion of customers from itself to defendant." (*Id.* at 22:12.) Gamber's argument is devoid of merit. The case law Gamber relies on, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989), has been substantially limited by subsequent Ninth Circuit cases as explained in *Southland Sod*.

> [A]lthough the Ninth Circuit in *Harper House* stated that 'actual evidence of some injury resulting from the deception is an essential element' in a suit for damages under § 43(a), a more recent decision holds that 'an inability to show actual damages does not alone preclude a recovery under section 1117.

108 F.3d at 1146 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993)). "Under *Lindy Pen*, the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances." *Southland Sod*, 108 F.3d at 1146. Application of the above rule is especially appropriate in this case, where Gamber has published a deliberately false advertisement and where NPI enjoys an evidentiary presumption of actual deception and reliance. *See U-Haul*, 793 F.2d at 1040-41.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**       - 23 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900

Not only is Gamber wrong on the law, but it is also factually incorrect when it claims that NPI has not shown evidence of injury. There are a number of emails showing use of *The Mounting Evidence* to take sales away from NPI. (Walters Decl., Ex. D, Zuelke 154:14-155:14, DepEx159; *see also* Nowlis Decl., Ex. A at ¶ 47.)[15] There is also substantial evidence to support a finding that RAM lost several sales to Comcast in California in late 2007 and early 2008. One of NPI's resellers, Doug Mayer, testified to facts showing that *The Mounting Evidence* played a significant role in his lost sales to Comcast. (Walters Decl., Ex. L, Mayer 48:5-50:12; 101:16-22; 115:17-116:17.) And Mayer's testimony was confirmed by the testimony of Comcast's Regional Safety Director for the California, Mike Schiller, who testified that he found The Mounting Evidence "very informative." (*Id.*, Ex. M, Schiller 41:21-42:1.)

Schiller was tasked with completing a safety evaluation for Comcast of California, looking at various mounting equipment vendors. (*Id.* 15:18-17:21, 42:11-21.) At this same time, Doug Mayer was offering RAM Mounts in competition with Gamber to several California Comcast locations. (*Id.* Ex. L, Mayer 15:19-16:1.) Schiller ended up recommending Gamber-Johnson over RAM to several Comcast "fulfillment directors"[16] in an email that included a link to *The Mounting Evidence*. (*Id.* Ex. M, Schiller 42:11-44:5; 54:11-55:5.) While Schiller did not have final authority over a particular Comcast location's purchasing decision, he has "influence" over their decisions. (*Id.* 53:16-54:2.) Schiller's influence over Comcast's purchasing decisions was also reflected in the report of Gamber regional sales manager, Randy Quimby. (Walters Decl., Ex. P.) Brian Belcher

---

[15] Many of the emails showing Gamber's use of the video to take sales away from NPI have been marked "Strictly Confidential" by Gamber and therefore cannot be shared with NPI. Gamber's reliance on the Rule 30(b)(6) deposition of Chad Remmers as an exhaustive recitation of NPI's lost sales is inappropriate.

[16] Fulfillment directors are responsible for purchasing equipment for vehicles, and part of Mike Schiller's job at Comcast is to communicate to them what he believes is safe and to make recommendations. (Schiller 52:14-25.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**    - 24 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

agreed that Schiller was "instrumental" in helping him win certain Comcast orders. (*Id.* Ex.

K, Belcher 83:19-25.)  Even Gamber's then-current president, Greene, admitted that *The*

*Mounting Evidence* may have influenced Comcast's decision to go with Gamber over RAM.

(Greene I 24:1-22.)

 In addition to lost sales, NPI proffers evidence of damage to its reputation and brand

through the expert testimony of Dr. Nowlis. (Nowlis Decl., Ex. A at ¶ 10.)  All of the above

damages are compensable through an award of Gamber's profits and through an award for

corrective advertising.  *See U-Haul*, 793 F.2d at 1037.  As explained through the expert

report of Dr. Nowlis, *The Mounting Evidence* was an extremely widespread and effective

sales tool for Gamber.  (Nowlis Decl. at ¶¶ 51-80)  The extent of the deception and damage

it caused is unknown, but given Gamber's wide distribution, objective evidence showing it

led to significant sales for Gamber, an award of Gamber's full profit during the time the

video was in active use is surely justified in this case. To this day, Gamber has *still* made no

instruction to its tight network of 85 resellers to cease use of *The Mounting Evidence*.

(Walters Decl., Ex. E, Guerndt I 149-150; *see also* DepEx37 at GJ 164201, indicating that

copies were "hopefully" saved to hard drives.)

 **D.     NPI's CPA Claim Also Survives Summary Judgment.**

 Gamber argues that NPI's Consumer Protection Act ("CPA") claim should be

dismissed, alleging an absence of evidence showing that Gamber's false advertising "affects

the public interest." (GJ Motion 24:17-25:7.)[17]  Remarkably, Gamber asserts that *The*

*Mounting Evidence*, including its 5,000 printed copies and a hosted web site which was up

for approximately 15 months for all to see, "was directed at a specific audience, laptop

---

[17] Gamber also argues that this claim should be dismissed for many of the same reasons already addressed
above with respect to NPI's Lanham Act claim.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**          - 25 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
**1191 SECOND AVENUE**
**SEATTLE, WASHINGTON 98101**
**TELEPHONE: 206.262.8900**

1   mount resellers, not the general public." (*Id.* at 24:18-19.) This is an untenable position.

2   Gamber's own documents and witnesses admit that the website was intended to be seen by

3   end users (Walters Decl., Ex. E, Guerndt I 23:8-18, DepEx2 at GJ136310; *see also* Ex. E,

4   Greene I 22:1-10), which is anyone with a vehicle and a desire to mount a computer in it.

5   Clearly, the public has an interest in companies being truthful in their advertising.

6   Gamber's challenge to NPI's CPA claim fails.

7           **E.      Unjust Enrichment**

8           NPI's request for an unjust enrichment remedy in the award of damages is supported

9   by the law. *See Southland*, 108 F.3d at 1146. (holding that § 1117 "allows the district court

10  to award . . . 'compensation' for the plaintiff's losses *or the defendant's unjust enrichment*"

11  (emphasis added)).

12

13  **V.      CONCLUSION**

14          For all the foregoing reasons, NPI respectfully requests that the court deny Gamber's

15  motion in its entirety.

                                                        Respectfully submitted,
16
                                                        DARBY & DARBY P.C.
17

18  Dated:  January 4, 2010              By:   s/ Mark P. Walters_____
                                               David K. Tellekson, WSBA No. 33523
19                                             Robert L. Jacobson, WSBA No. 30838
                                               Mark P. Walters, WSBA No. 30819
20                                             1191 Second Avenue
                                               Seattle, Washington 98101
21                                             Telephone:  (206) 262-8900
                                               Facsimile:  (206) 262-8901
22                                             Email:  dtellekson@darbylaw.com

23                                             *Attorneys for Plaintiff National Products,*
                                               *Inc.*
24

## CERTIFICATE OF SERVICE

I, Sharie L. Parks, hereby certify that on January 4, 2010, I caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be served on the following parties as indicated below:

| | |
|---|---|
| **Mark S. Parris**<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>701 Fifth Avenue, Ste. 5700<br>Seattle, WA 98104-7097<br><br>*Attorneys for Defendant Gamber-Johnson LLC* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email [by agreement of counsel]<br>mparris@orrick.com |
| **Jonathan D. Jay**<br>**Nicholas S. Kuhlmann**<br>**Terrance C. Newby**<br>LEFFERT JAY & POLGLAZE, P.A.<br>150 South Fifth Street, Suite 1900<br>Minneapolis, MN 55402<br><br>*Attorneys for Defendant Gamber-Johnson LLC* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email [by agreement of counsel]<br>jjay@ljp-iplaw.com<br>nkuhlmann@ljp-iplaw.com<br>tnewby@ljp-iplaw.com |

DATED: January 4, 2010

s/ Sharie L. Parks
for David K. Tellekson, WSBA No. 33523
Robert L. Jacobson, WSBA No. 30838
Mark P. Walters, WSBA No. 30819
DARBY & DARBY P.C.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          - 27 -
Civil Case No. CV08-0049-JLR

**DARBY & DARBY P.C.**
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101
TELEPHONE: 206.262.8900