Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GAMBER-JOHNSON LLC, <br><br> Defendant. | Case No. C08-0049 JLR <br><br> **REPLY MEMORANDUM OF GAMBER-JOHNSON LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br> NOTE ON MOTION CALENDAR: <br> Friday, January 8, 2010 <br><br> ORAL ARGUMENT REQUESTED |

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

# INTRODUCTION

In its opening brief, Gamber-Johnson LLC ("Gamber") established that it is entitled to summary judgment as to the eleven statements NPI previously alleged to be literally false. In its opposition, NPI now contends that only six statements in "The Mounting Evidence" Video (the "Video") were literally false. NPI thus concedes that the other five statements challenged by Gamber's motion are not false and thus not actionable. Gamber's entitlement to summary judgment as to those five statements cannot be disputed. Gamber is also entitled to summary judgment as to the remaining six statements identified in NPI's opposition, for the reasons set forth below. NPI thus has not raised a material issue of fact suggesting that any of the statements in the Video were materially false. Moreover, NPI essentially concedes that it cannot show any actual harm caused by Gamber's Video. Because NPI has no evidence of material falsity or causation, Gamber is entitled to summary judgment on NPI's Lanham Act claims.

Gamber is also entitled to summary judgment on NPI's CPA and unjust enrichment claims. As to the CPA claim, for all the reasons stated above, NPI has no evidence of deceptive conduct by Gamber or of causation, two essential elements of any CPA claim. NPI also cannot establish a third essential element—impact to the public interest. As to the unjust enrichment claim, NPI does not dispute its failure to meet the elements of such a claim under Washington law. This Court should thus grant summary judgment on both state law claims as well.

Instead of squarely addressing the relevant issues now before the Court, NPI has deluged the Court with irrelevant documents and information (for example, a lengthy discussion of the so-called "VersaTrue" lawsuit, which settled nearly four years ago).[1] In the

---

[1] As discussed in the Declaration of Gamber's President Brian Wagner, filed herewith, NPI has initiated two other lawsuits against Gamber during the past few years, including a patent infringement case that, shortly after

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

final analysis, the Court should find that the Video was simply a short and truthful commentary on major design differences between Gamber products and those of its primary competitors.

## ARGUMENT

In its opposition, NPI has proposed yet another variation of the alleged literally false statements in the Video.[2] Gamber addresses here NPI's current understanding of its purported false advertising claim.

### I. NPI OFFERS NO EVIDENCE THAT ANY STATEMENTS MADE IN THE VIDEO WERE LITERALLY FALSE

#### Dave Long

NPI argues that Dave Long's statements that he "stripped down and analyzed" and "examined" the laptop mounts are literally false and therefore actionable because Long did not personally disassemble any of the mounting systems before shooting the Video. As demonstrated by Gamber's opening brief, and related submissions, Long's statements in the Video on this point were literally true.[3] Assuming, arguendo, that Long's statements are found to be false, they are nonetheless non-actionable because NPI cannot demonstrate that they were material.

First, the statements made by Long concerning his analysis or examination of the mounting systems do not relate to an inherent quality or characteristic of NPI's or Gamber's

---

filing, NPI voluntarily dismissed, and another patent infringement case that is now on hold as the United States Patent and Trademark Office re-examines the purported validity of NPI's patent at issue in that case.

[2] Previously, NPI claimed that Gamber made 11 alleged literally false statements in the Video. (See Dkt. No. 76, Ex. R.) Now, NPI claims that only 6 statements in the Video were literally false.

[3] The Video specifically uses the word "analyzed." To analyze is "[t]o separate into parts or basic principles so as to determine the nature of the whole; examine methodically." The American Heritage Dictionary, 2nd College Edition, p. 106 (1982). The Video also uses the term "stripped down." The word "strip" is defined as "remove[ing] the . . . covering from . . . Strip often suggests force or abrupt action and applies to removal of such diverse things as . . . components of machinery . . ." The American Heritage Dictionary, 2nd College Edition, p. 1206 (1982).

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

products. Therefore, NPI is required to present evidence that these allegedly false statements were material to, or that they actually influenced the purchasing decisions of, the target audience. See, Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997), William H. Morris v. Group W., Inc., 66 F.3d 255 (9th Cir. 1995).[4] NPI has submitted the opinion of its expert, Stephen Nowlis, concluding that consumers are often times influenced by people they respect or regard as experts in a given field. Nowlis' opinion, however, is not based upon any research he conducted regarding the opinions of people who saw the Video. He has simply expressed his own personal opinion. This type of personal opinion as to how consumers "could have reacted" is not sufficient under the law. See, Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 502-03 (5th Cir. 2000).[5] Instead, the law requires NPI to show how consumers who actually viewed the Video in question actually reacted to it. Id.

What the relevant evidence submitted to the Court does show is that the people who actually saw the Video equated Long with Gamber and quickly concluded that the Video was not an objective, unbiased study conducted by an independent expert. For example, Doug

---

[4] NPI's opposition brief relies extensively upon the Southland case. But the facts in Southland are materially distinguishable from the facts of this matter in at least three respects. First, Southland involved two separate tests underlying the alleged offending advertisements. 108 F.3d at 1138. As noted above, NPI argues that there were no tests underlying the advertisement at issue in this matter. Second, the Southland Court held that the advertisement at issue claiming "50 % Less Mowing" was "a specific and measurable advertisement claim of product superiority based on product testing and, as such, is not puffery." 108 F.3d at 1145. The claims at issue in this case and the "implied" statements in the Video that NPI complains about are not "specific and measurable," nor are they based on product testing. Third, the plaintiff in Southland supported its claims with a consumer survey, which the Court held was "probative on the ultimate question of whether consumers were materially deceived by the bar-chart and two-pot advertisements." 108 F.3d at 1142. It is undisputed that NPI has not conducted any consumer survey in this case, and has not offered any evidence that consumers have been deceived by the Video. Southland is therefore inapposite.

[5] Despite NPI's attempt to limit the holding in Pizza Hut to a discussion of the materiality of its advertising slogan alone, an actual reading of the case shows that it is clearly not so limited. In fact, the Pizza Hut case addressed the slogan only in connection with two advertisements that addressed the very ingredients used to make the pizzas at issue (much like the components used to make mounting systems in this case) and concluded that while some of defendant's statements as to the superiority of its pizzas' ingredients made in connection with the slogan were found to be deceptive, Pizza Hut still had the burden of showing materiality. 227 F.3d at 502-03.

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

Mayer (of Mobile Desk, an NPI reseller) testified in his deposition that he and one of his potential customers who viewed the Video clearly understood that Long was on Gamber's "payroll."[6] Additionally, Aaron Hersey, NPI's Director of Marketing, informed a potential client that Long was "a compensated individual who obviously has an extreme bias to Gamber Johnson's products." (Ex. KK, 85:3-6; Ex. LL). Even Jeff Carnevali, the founder and president of NPI, has affirmed that when he first saw the Video, he was not "overly concerned about it" because he thought end users would "see right through it, recognizing that it was not an independent objective product comparison supported by scientifically conducted studies." (Dkt. No. 20 at ¶ 5.) Having failed to show that any statement made by Long that he personally analyzed or examined the products was material, NPI cannot maintain a cause of action based upon such statements.[7]

Front Restraints

NPI argues that the Video "expressly represents that Gamber's NotePad IV is superior to NPI's universal tray due to the presence of 'front restraints.'" (Dkt. No. 85 at 16). This argument is clearly misleading because the Video never made that statement. The only arguably

---

[6] A: And he made the comment that—all he said was, you know this guy is on the payroll.
    \*    \*    \*
Q: Did you share Mr. Simes' view that Dave Long had to be on Gamber-Johnson's payroll, after you had seen what you seen?
A. Yeah. Yes, I mean –
(Ex. MM at 141: 7-19;153:10-13.).

[7] If NPI cannot demonstrate literal falsity, it must prove that the challenged statements in the Video are true but misleading. In such cases, "proof that the advertising actually conveyed the [allegedly] implied message and thereby deceived a significant portion of the recipients becomes critical." William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 258 (9th Cir. 1995). "It is not enough [for the plaintiff] to place the statements alone before the Court: The plaintiff must adduce evidence (usually in the form of market research or consumer surveys) showing how the statements are perceived by those who are exposed to them." U-Haul Int'l, Inc. v. Jartran, Inc., 522 F.Supp. 1238, 1249 (D. Ariz. 1981) citing McNeilab, Inc. v. American Home Products Corp., 501 F.Supp. 517, 525 (S.D.N.Y. 1980). NPI has offered no consumer surveys or other extrinsic evidence of what the Video meant to consumers and therefore it cannot establish that the statements in the Video are true but misleading, entitling Gamber to summary judgment.

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

factual statement within the Video relating to front restraints is this: "There are no front restraints on RAM's . . . laptop mount." (Dkt. No. 85 at 16, citing Walters Decl., Ex. B.) NPI has offered no evidence to show this statement was literally false.

The additional "contextual" statement quoted within NPI's brief, that the lack of front restraints could be a "serious shortcoming," is a vague, generalized, non-actionable statement of opinion. NPI's expert David Eby admitted during his recent deposition that "certainly some people might prefer a mounting system with front restraints and some people . . . wouldn't care to have those front and rear restraints." (Dkt. No. 76, Ex. L p. 152:17-24.) The final "contextual" statement quoted within NPI's brief ("that [your] laptop could submarine right out of the side restraints . . .") is similarly non-actionable because it is subjective and qualified (i.e., could, or could not) and therefore cannot be "quantified." See, e.g., Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc., 911 F.2d 242, 246 (9th Cir. 1990) (advertising claims are considered "puffery" when they are either vague or highly subjective); Smith-Victor Corp. v. Sylvania Elec. Products, Inc., 242 F.Supp. 302, 308-09 (N.D. Ill. 1965) (distinguishing a non-actionable statement ("far brighter than any lamp ever before offered") from an actionable statement ("35,000 candle power and 10-hour life")).

### Materials Used—Plastic

NPI's Opposition brief also attempts to raise a fact issue relating to the following statement in the Video: "[s]ee this mount from RAM — plastic . . . [t]here are products where the use of plastic is appropriate, but trust me folks, this isn't one of them." (Dkt. No. 85 at 19, citing Walters Decl., Ex. B.) NPI's expert, Eby, claims that this statement is literally false. (Dkt. No. 85 at 19; Eby Decl., ¶ 12.) Eby's opinions in this matter are inapposite, as this is not a comparative "testing" case. Furthermore, the statement in the Video that the RAM mount is

- 5 -

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

made of plastic was true. Whether plastic is or is not "appropriate" is simply the expression of a non-actionable opinion, and it is well established that "[a]dvertising which merely states in general terms that one product is superior is not actionable." Cook, Perkiss and Liehe, Inc., 911 F.2d at 246 (citing, Smith-Victor, 242 F.Supp. at 308). In fact, when questioned about this statement during his deposition, Eby admitted that, "certainly engineers could . . . have differing opinions on when and when it's not appropriate to use plastic" materials. (Ex. NN, 163:20-165:3).

### Fasteners – Bolts

NPI further attempts to make a case for false advertising based on the Video's statement that, "for Gamber-Johnson, this [i.e., the use of a Grade A bolt] just isn't good enough . . . ." (Dkt. No. 85 at 19.) Again, NPI's Opposition does not challenge the truth of this statement—Gamber uses Grade 5 bolts for its mounting systems, and NPI (at the time of the Video) used Grade A bolts.

NPI instead argues that Gamber's statements in the Video concerning NPI's use of Grade A bolts <u>eventually became false</u> because NPI switched to a Grade 5 bolt in or around April 2008—about one year after the production of the Video. But, there is no dispute between the parties that the Video contained a disclaimer clearly stating that "COMPARISONS IN THE PROGRAM WERE ACCURATE AT THE TIME OF PRODUCTION." (Dkt. No. 85 at 19, fn 13.) Citing Novartis Consumer Health, Inc. v. Johnson & Johnson, 290 F.3d 578, 599 (3d Cir. 2002), NPI argues that Gamber's disclaimer was "not effective[]." (Dkt. No. 85 at 19, fn 13.) However, Novartis is irrelevant because in that case, the lower court had already issued an injunction prohibiting the false advertising. 290 F.3d at 597-98. The defendant in Novartis wanted to use a disclaimer as a *remedy* akin to injunctive relief *only after* liability was

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

- 6 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

determined. (Id. at 598.) The <u>Novartis</u> court rejected this proposed remedy: "We do not believe that a disclaimer can rectify a product name that necessarily conveys a false message to the consumer." (Id.)

But in this case, a disclaimer of the kind used by Gamber, stating that the information conveyed in the Video "was accurate *at the time of production*," is valid and effective. <u>American Hospital Ass'n. v. Henderson</u>, 1981 WL 601618, * 5 (N.D.Ill.1981)(claim of false representation under the Lanham Act was "without merit" because "[t]he representation that [the alleged offending advertisement] contained the most current data then available <u>was true as of the date [the advertisement] was published</u>.")(emphasis added.)

### Lower Tube Design

The Video states that Gamber's lower tube is twice as thick as the lower tube on NPI's RAM product. (Dkt. No. 85 at 20.) NPI claims this statement is literally false because "NPI's tube provides equivalent stiffness in all directions when compared to Gamber's lower tube." (Id.) It is undisputed that Gamber's lower tube is one-eighth of an inch thick, while the lower tube on NPI's RAM mount is one-sixteenth of an inch thick. NPI has admitted as much: "The point that the host [Dave Long] mentions regarding the wall thicknesses in comparison are true in the fact that Gamber Johnson uses a thicker wall diameter." (See Ex. LL.) And, because there can be no dispute that a tube that is one-eighth of an inch thick is twice as thick as a tube that is one-sixteenth of an inch thick, Gamber's statements regarding the tube thickness are literally true. Eby's opinion that the RAM product provides "equivalent stiffness in all directions" is completely immaterial because Gamber made no representations other than the thickness of the tubes.

### Key Lock

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

- 7 -

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

In the Video, Long states that the RAM tray does not have a key lock: while holding a RAM Tough Tray, Long states "Here's a RAM mount. No key lock to be found." (Dkt. No. 87, Ex. B at 24.) This statement is literally true – at the time the Video was made, and when Long held the RAM Tough tray, the RAM tray did not have a key lock. Amazingly, NPI claims this statement is actionable because "this statement became literally false as of November or December 2007 . . . *about 6 months after the Video was released*." (Dkt. No. 85 at 20, emphasis added.) NPI apparently contends that Gamber should have known that NPI would revise its product *six months after the Video was released*, thereby making the earlier statement literally false. But as NPI admits, the Video contains a clear disclaimer that all comparisons were "accurate at the time of production." (Dkt. No. 85 at 20.) NPI claims that such a disclaimer is ineffective under Novartis, but as discussed above, the Novartis case is inapposite here.

In the Video, Long also states that Gamber's product "offers the best chance at deterring theft," and is "tamper resistant." (Dkt. No. 85 at 20; Dkt. No. 87, Ex. B at 23.) NPI claims that these statements are literally false, because a thief can still "steal or tamper with" a locked Gamber tray. (Dkt. No. 87, Ex. B at 23.) But references to the Gamber product being "tamper resistant," or "offering the best chance at deterring theft" are not measurable, quantifiable statements of fact – they are vague, subjective, and non-measurable, and are therefore not actionable. See, e.g., Cook, Perkiss and Liehe, Inc., 911 F.2d at 246 (advertising claims are considered "puffery" when they are either vague or highly subjective); Smith-Victor Corp., 242 F.Supp. at 308-09 (distinguishing a non-actionable statement ("far brighter than any lamp ever before offered") from an actionable statement ("35,000 candle power and 10-hour life")). Moreover, there is a clear difference between "tamper resistant" and "tamper proof" – "tamper

- 8 -

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

resistant" does not mean the item can never be stolen or damaged. And the statement that Gamber's product "offers the best chance at deterring theft" is similarly subjective and non-measurable, just as a statement that "wearing a seat belt gives you the best chance to ensure your safety" does not mean that a seat belt is guaranteed to prevent all injuries. Because these statements are vague, subjective, and non-measurable, they cannot be literally false under Cook Perkiss.

## II. NPI CANNOT ESTABLISH A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER ANY OF ITS ALLEGED DAMAGES ARE "ATTRIBUTABLE TO" THE VIDEO

In its Opposition, NPI argues it need not show a causal link between the alleged false statements in the Video and its alleged disgorgement damages. (Dkt. No. 85 at 23.) Although the Ninth Circuit has held that, "an inability to show actual damages does not alone preclude a recovery under section 1117," and that monetary relief must be based on the "totality of the circumstances,"[8] NPI wrongly concludes that it is entitled to an award of damages in this matter.[9]

NPI relies upon the Lindy Pen decision to support its belief that it may recover damages under the Lanham Act without showing that it suffered any actual damage <u>as a result of</u> Gamber's alleged false advertising. Not only does Lindy Pen not stand for this proposition, the

---

[8] Citing, Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir. 1993).

[9] Recognizing it cannot produce evidence of any lost sales resulting from an alleged false statement in the Video, NPI asserts that it is entitled to a presumption of actual consumer deception and reliance, entitling to an award of damages, because the Video was deliberately false. To show willfulness, NPI is required to produce evidence that Gamber had a "deliberate intent to deceive." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993). The courts have held that this type of willfulness requires a showing of bad faith. See, Gracie v. Gracie, 217 F.3d 1060 (9th Cir. 2000). NPI has produced absolutely no evidence that Gamber acted in bad faith in producing the Video. See, EMCO, Inc. v. Obst, 2004 WL 1737355; U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034 (9th Cir. 1986); and Lindy Pen, 982 F.2d 1400.

court's decision in <u>Lindy Pen</u> supports Gamber's entitlement to summary judgment in this matter:

> [A]n accounting is intended to award [disgorgement] profits only on sales that are <u>attributable to</u> the infringing conduct. The plaintiff has . . . the burden of establishing the defendant's gross profits <u>from the infringing activity</u> with reasonable certainty.

982 F.2d at 1408. (Emphasis added.)

The Ninth Circuit Model Civil Jury Instruction 15.26, which governs disgorgement of a defendant's profits under the Lanham Act, also confirms that a plaintiff may be entitled to damages only as to those profits "that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence." <u>See also</u>, <u>Rolex Watch, U.S.A., Inc. v. Michel Co.</u>, 179 F.3d 704, 712 (9th cir. 1999) (plaintiff carries the burden to show with "reasonable certainty" the defendant's gross sales from the infringing activity); <u>Societe Civile Succession Richard Guino v. Beseder Inc.</u>, 2007 WL 3238703 (D. Ariz. 2007) (although "[t]his recent Ninth Circuit authority suggests that the issue of damages may be evaluated under the 'totality of the circumstances' in Lanham Act cases, . . . evidence of some damage or harm to a Lanham Act plaintiff is still required to justify such an award.") (citing, <u>Lindy Pen</u> for the proposition that "when seeking damages a plaintiff must prove both the fact and the amount of damages.")

Not only must NPI prove Gamber's gross profits <u>from the infringing activity</u> with reasonable certainty, <u>Lindy Pen</u>, 982 F.2d at 1408, NPI must also isolate the damages properly attributable to each actionable statement. In <u>Coastal Abstract Service, Inc. v. First American Title Insurance Co.</u>, 173 F.3d 725 (9th Cir. 1999), the Ninth Circuit reversed an award of damages because two of the three alleged false advertisements upon which liability was based were not actionable under the Lanham Act, and it was not possible to isolate damages attributable to the one remaining statement. 173 F.3d at 729. In reversing the trial court's

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

damages award, the Ninth Circuit held that, "[t]hese awards were based in substantial part on the two statements that we have found as a matter of law not to be actionable. The awards are not segregated in a manner that permits attribution of any portion of the damages to any particular statement." 173 F.3d at 732.

NPI cannot isolate any damages that are arguably attributable to any allegedly false statement in the Video. For example, NPI cannot show what amount of alleged damages are attributable to Long's "stripped down and analyzed" statement, nor has NPI attempted to segregate its alleged damages "in a manner that permits attribution of any portion of the damages to any particular statement." Coastal Abstract, 173 F.3d at 732.

NPI argues that there is factual evidence of alleged damage in this action. In particular, NPI states that "there are a number of emails showing use of the Video to take sales away from NPI." (Dkt. No. 85 at 24). In fact, among the thousands of documents submitted to the Court by NPI, there is just one e-mail, and it merely makes a vague reference to a telephone call from "someone [in] California." (Dkt. No. 86, Ex. D, Zuelke Dep. Ex. 159). This "someone" in California has never been deposed and to this day remains unidentified.

Incredibly, NPI also claims that one of its resellers, Doug Mayer, "testified to facts showing that the Video played a 'significant role in his lost sales to Comcast.'" (Dkt. No. 85 at 24.) When questioned at his deposition, Mr. Mayer initially testified that an "order" he had placed with Comcast had been cancelled because of the Video, but after further cross-examination, Mr. Mayer was forced to concede that this particular alleged "lost order" was nothing more than a bid proposal that was not accepted by Comcast. (Ex. MM at 119:17-121:11.)

REPLY MEMORANDUM OF GAMBER-
JOHNSON LLC IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

LEFFERT JAY & POLGLAZE, P.A.
150 SOUTH FIFTH STREET, SUITE 1900
MINNEAPOLIS, MN 55402
TEL: 612-312-2200

Beyond this alleged "lost order," Mr. Mayer also conceded in his deposition that although he did not sell mounting systems to Comcast locations in Sacramento and Fresno, he was never told that anyone's "purchasing decisions were influenced by the Video." (Ex. MM at 169:24-171:12) NPI's reference to the deposition of Comcast Regional Safety Director Michael Schiller is similarly unremarkable because Schiller only found the Video to be "very informative," but he was not involved in any purchasing decisions on behalf of the company, as admitted by NPI. (Dkt. No. 85 at 24.) [10]

Finally, NPI relies upon the expert report of Stephen Nowlis to argue that the Video caused damage to NPI. In particular, NPI refers to the court paragraphs 51-80 of Nowlis' report. (Dkt. No. 90, Ex. B.) However, a careful examination of these paragraphs of the Nowlis' report reveals that Nowlis has only generally opined that the Video was widely available and that it was intended to be an effective sales tool.

### III. NPI'S CONSUMER PROTECTION ACT CLAIM MUST BE DISMISSED

NPI argues that its Consumer Protection Act claim is valid because "the public has an interest in companies being truthful" and the Video was available on the Internet. (Dkt. No. 85 at 25-26.) These assertions do not sustain NPI's burden to establish the five elements required to maintain a private cause of action under RCW 19.86.020. As Gamber established in its opening submission, the "effect on public interest" element of a CPA claim requires a showing of "*a real and substantial potential for repetition*, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." Michael v. Mosquera-Lacy, 165 Wash. 2d 595, 604-05 (2009)(citations omitted, emphasis added). NPI's unsupported assertion that

---

[10] Although NPI contends that Brian Belcher testified that Mr. Schiller was "instrumental" in helping Mobile Mounting Solutions "win" Comcast orders, Mr. Belcher clearly testified otherwise at his deposition. (Ex. OO, 79:13-80:2).

anyone with a vehicle could have seen the Video is nothing more than an unsubstantiated hypothetical possibility and therefore cannot defeat Gamber's Motion for Summary Judgment on NPI's CPA claim.[11]

## CONCLUSION

For the foregoing reasons, Defendant Gamber-Johnson, LLC respectfully requests that the Court grant summary judgment in its favor and dismiss all claims asserted against it by Plaintiff National Products, Inc.

Dated: January 8, 2009

**LEFFERT JAY & POLGLAZE, P.A.**

By: /s/ Jonathan D. Jay
Jonathan D. Jay, MN Bar #18603x
Nicholas S. Kuhlmann, MN Bar #33750x
150 South Fifth Street, Suite 1900
Minneapolis, Minnesota 55402
Tel: 612-312-2200
Fax: 612-312-2250
Admitted Pro Hac Vice

Mark S. Parris, WS Bar #13870
Charles J. Ha WS Bar #34430
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5700
Seattle, Washington 98104
Tel: 206-839-4300
Fax: 206-839-4301

**ATTORNEYS FOR DEFENDANT GAMBER-JOHNSON LLC**

---

[11] In its Motion for Summary Judgment, Gamber set forth the elements of an unjust enrichment claim under Washington state law and its proof that NPI cannot sustain this claim. In its Opposition, NPI argues only that it is entitled to an unjust enrichment award of damages under §1117. As §1117 is a reference to the Lanham Act, Gamber is entitled to summary judgment as to NPI's claim for unjust enrichment, for the reasons stated above.