Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS, INC.,

Plaintiff,

v.

GAMBER-JOHNSON LLC,

Defendant.

Civil Case No. CV08-0049-JLR

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTIONS IN LIMINE**

<u>Note On Motion Calendar</u>:
**Friday, March 19, 2010**

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

# TABLE OF CONTENTS

| | Page |
|---|---|

INTRODUCTION ................................................................ 1

ARGUMENT ................................................................... 1

A. The Opinions Offered by NPI's Mechanical Engineering Expert Are Relevant to Expose the False and Misleading Nature of Defendant's Video Advertisement ................................................. 1

    1. Dr. Eby's Opinion Regarding the Strength and Thickness of the Lower Tube Is Relevant to Debunk Defendant's Safety and Design Claims ................................................. 3

    2. Dr. Eby's Expert Analysis and Testing of Laptop Mount Performance in the Open or "Abuse" Position Are Both Relevant and Reliable ................................................. 4

    3. Dr. Eby's Opinions Regarding the Side-by-Side Shake and Vibrations Tests Are Relevant to Expose the Objective Unreliability of Defendant's Comparative Safety Claims ............. 5

    4. Defendant's Theft Prevention Claims and Inclusion of NPI's Docking Station Mount in the Video Render Dr. Eby's Expert Analysis Highly Relevant ................................................. 6

B. Defendant's Attempt to Cut Off Damages Through Exclusion of Scott Hampton's February 17, 2010 Supplemental Damages Chart Should Be Denied ................................................. 7

C. Evidence Regarding the Parties' Prior Business Relationship and Patent Litigation Is Highly Relevant to Show Willfulness and Intent ........ 9

D. Evidence Regarding Docking Stations Is Relevant to Show the Literal Falsity of Defendant's Theft Prevention Claims ........................... 12

E. Admissions from Defendant's Advertising Agency, Thomas Marks & Associates, Qualify as Non-Hearsay and Are Relevant to Show Harm ..... 12

F. Defendant's Employee E-Mail String Bears Directly on Materiality, Willfulness, and Intent, and Should Be Admitted Over Defendant's Relevance and Rule 403 Objections ........................................... 14

G. Dean Eisenberger Has Been Withdrawn from NPI's Trial List Rendering Any Objection Moot ................................................. 16

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)    - i -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

H.  Defendant's Customer Statements Qualify as Nonhearsay, Fall Under an Exception to the Hearsay Rule, and Are Highly Relevant to Show Customer's State of Mind ................................................ 16

I.  Customer Complaints Regarding Defendant's Side Clips Are Highly Relevant to Show Literal Falsity as Well as Defendant's Intentional and Willful Misconduct ............................................................ 17

J.  Evidence Relating to Comtech as a Lost Customer Is Highly Relevant and Admissible ................................................................ 17

K.  The Testing Videos Relied Upon by NPI's Technical Expert Are Relevant to Show the Falsity of Defendant's Product Safety and Superiority Claims ..................................................................... 18

CONCLUSION ................................................................................. 18

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)                    - ii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Argue v. David Davis Enterprises, Inc.,*
    Civ. No. 02-9521, 2008 WL 450097 (E.D. Penn. Feb. 15, 2008) ................................ 7

*Baden Sports, Inc. v. Molten,*
    No. C06-210MJP, 2007 WL 2220215 (W.D. Wash. Aug. 1, 2007) ........................ 7, 8

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.,*
    No. 03-6025, 2009 WL 1743699 (D. N.J. June 5, 2009) ............................................ 10

*Callahan v. A.E.V., Inc.,*
    182 F.3d 237 (3rd Cir. 1999) ................................................................................... 17

*CytoSport, Inc. v. Vital Pharms., Inc.,*
    617 F. Supp. 2d 1051 (C.D. Cal. 2009) ................................................................... 16

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579, 596 (1993) ........................................................................................... 2

*Dorn v. Burlington N. Santa Fe R.R. Co.,*
    397 F.3d 1183 (9th Cir. 2005) .................................................................................... 2

*Grove Fresh Distributors, Inc. v. New England Apple Products Co., Inc.,*
    969 F.2d 552 (7th Cir. 1992) ................................................................................... 17

*Jauch v. Corley,*
    830 F.2d 47 (5th Cir. 1987) ..................................................................................... 16

*Luma v. Stryker Corp.,*
    226 F.R.D. 536 (S.D. W.Va. 2005) ........................................................................... 8

*Lyons P'ship, L.P. v. Morris Costumes, Inc.,*
    243 F.3d 789 (4th Cir. 2001) ................................................................................... 16

*M.F. Patterson Dental Supply Co. v. Wadley,*
    401 F.2d 167 (10th Cir. 1968) ................................................................................. 16

*Mangold v. Cal. Pub. Utils. Comm'n,*
    67 F.3d 1470 (9th Cir. 1995) ..................................................................................... 5

*Micro Chem., Inc. v. Lextron, Inc.*
    317 F.3d 1387 (Fed. Cir. 2003) ................................................................................. 2

*National Products Inc. v. Gamber Johnson LLC,*
    CV04-0252-MJP, Docket No. 179 (W.D. Wash. 2006) ............................................ 9

*Obrey v. Johnson,*
    400 F.3d 691 (9th Cir. 2005) ..................................................................................... 5

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)    - iii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
**TELEPHONE (206) 389-4510**

*O'Connor v. Boeing N. Am., Inc.,*
No. CV 97-1554-DT (RCx), 2005 WL 6035243 (C.D. Cal. Sept. 12, 2005) .............. 8

*Safeco Ins. Co. of Am. v. Burr,*
551 U.S. 47 (2007) ................................................ 10

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) ..................................... 3, 10, 15

*Turner v. Murphy Oil USA, Inc.,*
No. 05-4206, 2006 U.S. Dist. LEXIS 985 (E.D. La. Jan. 11, 2006) .......................... 6

*United States v. Allen,*
341 F.3d 870 (9th Cir. 2003) ...................................... 12, 15

*United States v. Gil,*
58 F.3d 1414 (9th Cir. 1995) ...................................... 13, 14

*United States v. W.R. Grace,*
504 F.3d 745 (9th Cir. 2007) ...................................... 14

*United States v. Winkle,*
477 F.3d. 407 (6th Cir. 2007) ..................................... 12

*Weschler v. Macke Int'l Trade, Inc.,*
221 F.R.D. 619 (C.D. Cal. 2004) .................................. 8

*White v. Ford Motor Co.,*
500 F.3d 963 (9th Cir. 2007) ...................................... 17

*Wilson v. O'Gorman High School,*
No. 05-4148, 2008 WL 2571845 (D.S.D. June 26, 2008) ........................... 9

**STATUTES**

Fed. R. Evid. 403 ................................................. 11, 14, 17

Fed. R. Evid. 702 ................................................. 2, 6, 7

Fed. R. Evid. 703 ................................................. 14

Fed. R. Evid. 801 ................................................. 13, 16

Fed. R. Evid. 803 ................................................. 16, 17

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)

- iv -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
**TELEPHONE (206) 389-4510**

**INTRODUCTION**

Defendant Gamber-Johnson LLC ("Gamber") seeks exclusion of a wide variety of highly relevant evidence proffered by plaintiff, National Products, Inc. ("NPI"), to show the falsity and/or materiality of certain statements contained in *The Mounting Evidence* video advertisement, and Gamber's deceptive intent underlying those statements.[1]  Because NPI's proffered evidence is competent, highly probative and not unfairly prejudicial, Gamber's motions should be denied in their entirety.

**ARGUMENT**

**A.  The Opinions Offered By NPI's Mechanical Engineering Expert Are Relevant to Expose the False and Misleading Nature of Defendant's Video Advertisement**

Dr. David Eby offers expert opinions establishing how Gamber's claims of product superiority are false, in the process shredding Defendant's empty assertions that its vehicle laptop mounting systems are safer by design and construction.  (Declaration of Nicholas S. Kuhlmann in Support of Defendant's Motions in Limine ( "Kuhlmann Decl."), Ex. A (Rule 26 Report of David J. Eby dated October 25, 2009) at 4, Dkt. No. 122-3.)  Dr. Eby is thoroughly trained and highly qualified in the areas of mechanical engineering, holding B.S., M.S., and Ph.D. degrees in Engineering Mechanics.  (Kuhlmann Decl., Ex. A at 3.)  Dr. Eby has significant expertise in machine design, welds and weldments, structural reinforcements, metal and composite materials testing, material fatigue and fracture, storage and handling of gases and liquids, hydraulic machines, and the evaluation of other industrial equipment.  *Id.* at 25-27.  Additionally, he has extensive experience and training in the field of crashworthiness of vehicles and vehicle systems.  *Id.* at 3-4.

In this case, Dr. Eby has evaluated statements contained in *The Mounting Evidence*

---

[1] In its introduction, Gamber again misconstrues NPI's position concerning the false statements asserted in *The Mounting Evidence*, which are accurately set forth in NPI's Second Supplemental Response to Interrogatory. (Declaration of Patrick E. Premo in Support of Plaintiff's Opposition to Defendant's Motions in Limine ("Premo Decl."), Ex. A.)

video regarding: (1) front restraints (hard driving and airbag deployment); (2) materials (steel versus plastic); (3) fasteners (grades of fasteners); (4) tube design (thickness and structural integrity); and (5) theft prevention (tamper resistant and locking systems). (Kuhlmann Decl., Ex. A at 4-5.) Dr. Eby also evaluated whether the Gamber's testing, research, or analysis was adequate to support the video's claims. (*Id.* at 5.)

In each area of inquiry, Dr. Eby's analysis (1) is well grounded in the facts and industry-accepted tests and research; (2) is the product of reliable principles and methods; and (3) involves the application of the principles and methods reliably to the facts of this case. (*See* Kuhlmann Decl., Ex. A at 28, 30-49.) Federal Rule of Evidence 702 permits a qualified expert to offer opinion testimony to assist the trier of fact provided these three criteria are met. Fed. R. Evid. 702. In fact, the rejection of expert testimony is the exception, not the rule. Fed. R. Evid. 702, Notes of Advisory Comm. (2000).

While the trial court plays a gate-keeping role with respect to expert testimony, it does not replace the adversary system. *See Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005); *Micro Chem., Inc. v. Lextron*, Inc., 317 F.3d 1387, 1392 (Fed. Cir. 2003). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof remain the primary means of attacking challenged evidence. *Dorn*, 397 F.3d at 1196 (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993)). Gamber's cursory challenge to certain aspects of Dr. Eby's opinions under Federal Rule 702 contains no challenge to his qualifications. Nor does it show that Dr. Eby's opinions are based on improper methodologies warranting exclusion.

NPI can satisfy the falsity element of its comparative advertising claim by either (a) attacking the reliability of Gamber's "analysis" purportedly validating its superior design and product safety claims, or (b) showing that the tests are contradicted or unsupported by

1  other scientific tests.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th

2  Cir. 1997).  Defendant attempts to hobble NPI's technical expert by seeking to exclude the

3  following four areas of his testimony, primarily on grounds of relevance:  (1) the strength

4  and thickness of the lower tube in the laptop mounts; (2) laptops that were tested in an open

5  or "abuse" position; (3) so-called "shake and vibe" tests; and (4) "docking station" mounts.

6  Dr. Eby's expert testimony is relevant in each of these four areas because it shows how the

7  superior design and product safety claims scripted by Gamber's then-Vice President of

8  Marketing are objectively unreliable and literally false.

9      **1.**    **Dr. Eby's Opinion Regarding the Strength and Thickness of the Lower
Tube Is Relevant to Debunk Defendant's Design and Safety Claims**

10      Gamber contends that Dr. Eby should be precluded from testifying regarding

11  strength or thickness of the lower tube because at the hearing on Defendant's Motion for

12  Summary Judgment, the Court made a tentative ruling to dismiss any claim based on the

13  thickness of the lower tube.  (Mot. at 2.)  In *The Mounting Evidence,* David Long, Gamber's

14  "airbag specialist and safety instructor," states the following with respect to the lower tube

15  in Gamber's and NPI's mounts:

16      Here is Gamber-Johnson's lower tubes and it's one-eighth of an inch thick
and it's rock solid. Here is RAM's lower tube – hmmm looks like the
17      same product from this angle – but it's not. RAM's wall thickness is one-
sixteenth of an inch. Gamber-Johnson's is a robust one-eighth of an inch –
18      double the thickness. Sometimes the mounting evidence comes down to an
eighth of an inch.

19

20  (Declaration of Mark P. Walters in Support of Plaintiff's Opposition to Motion for

21  Summary Judgment, Ex. C, Dkt. No. 86-3.)  These statements follow directly after

22  statements regarding the "design and integrity" of a mount needed to "offer the best chance

23  of withstanding impact . . . and restraining the equipment" to avoid the laptop becoming a

24  "projectile."  (*See* Premo Decl. Ex. D at NPI000026-27.)  In this context, these statements

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE**  (No. CV08-0049 - JLR)    - 3 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1   necessarily indicate that the additional thickness in Gamber's lower tube results in a

2   superior, safer and more reliable design—a statement that is literally false according to

3   Dr. Eby's tests and analysis. (Dkt. No. 85 at 20.)

4          Notwithstanding the Court's tentative ruling that the above-quoted statement may

5   not be literally false, Dr. Eby's testing concerning the strength and rigidity of the lower tube

6   is relevant and helpful to the jury's evaluation of other allegedly false statements in the

7   video, including statements concerning how well the mounting systems retain the laptop in

8   the event of an airbag deployment or during "challenging driving conditions." Further,

9   Dr. Eby's testing and evaluation of the lower tube is relevant to impeach Long's credibility

10  on issues relating to crashworthiness and design. Long claims that "Gamber-Johnson's is a

11  robust one-eighth of an inch – double the thickness," but Dr. Eby's tests show this makes no

12  difference in terms of airbag safety or design. Accordingly, Dr. Eby's opinions are relevant

13  to show (a) how Long's "analysis" of the lower tube is objectively unreliable, and (b) how it

14  is unsupported by the type of scientific tests necessary to substantiate Gamber's design

15  superiority and product safety claims.

16          **2.     Dr. Eby's Expert Analysis and Testing of Laptop Mount Performance in the Open or "Abuse" Position Are Both Relevant and Reliable**

17          Gamber contends that Dr. Eby should be precluded from testifying regarding

18  performance of the laptop mounts in the open, or "abuse" position, because *The Mounting*

19  *Evidence* video does not make specific statements about performance in the abuse position.

20  *The Mounting Evidence* video refers to laptop mounts as "airbag-friendly" and challenges

21  the safety and reliability of NPI's mounts in the event of a crash, airbag deployment or hard

22  driving such as that experienced by police, fire and emergency medical. For example,

23  Gamber's "airbag specialist," Long, claims in the video that:

24          •       "I've . . . investigated hundreds of mounting installations in vehicles, and this

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)                 - 4 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

is what I've found: . . . . Frankly, there is a lot of myths about airbags and a lot of poorly designed and dangerous mounting systems being used out there."

- "If your laptop isn't restrained in the front and if an airbag deploys, it's going to hit right here and that laptop could submarine right out of the side restraints and fly around in your vehicle."

- "Air bags deploy at a speed between 100 to 200 miles an hour. If an airbag hits a laptop mounting system, you need the mount to be solid and not to break apart. There's no reason to take a chance with a product that's not formidable."

(*See* Premo Decl., Ex. A [Second Supplemental Response to Interrogatory No. 1].) As

Dr. Eby has stated, such statements only have significance where there is significant contact

between airbag and mount. (Kuhlmann Decl. Ex. A at 13-14.) Thus, in the tests, laptops

were placed inside of the airbag deployment zone with their screens open. (Premo Decl.,

Ex. B [11/18/09 Eby Depo.] at 135:4-137:1.) It is entirely appropriate to evaluate that truth

of these claims in light of customers' foreseeable use of the products, including both

recommended and non-recommended positions.

Gamber also objects to this testimony on the grounds that it is purportedly

"incomplete" and "potentially prejudicial" because Dr. Eby does not mention in his expert

report that one test showed that a non-standard laptop was ejected from NPI's RAM Tough

Tray in the "abuse" position. Dr. Eby fully testified as to the results of all testing he

performed or evaluated during his deposition. But in any event, objections to the

completeness of an expert's analysis generally go to the weight of the evidence, not its

admissibility. *Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005); *Mangold v. Cal. Pub.

Utils. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995). Gamber's response for this purported

omission in his written analysis is not the drastic remedy of exclusion, but cross-

examination of Dr. Eby on this subject in front of the jury.

**3. Dr. Eby's Opinions Regarding the Side-by-Side Shake and Vibration Tests Are Relevant to Expose the Objective Unreliability of Defendant's Comparative Safety Claims**

Gamber next moves to exclude Dr. Eby's opinions concerning the shake and

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

vibration tests on the bases that Dr. Eby did not himself perform those tests, and because no

shake and vibration testing is performed in *The Mounting Evidence*. (Mot. at 4-5.) Gamber

cites Rule 702 in its challenge with no further explanation of how Dr. Eby's opinion is

inadmissible under the rule. (Mot. at 5.)

Independent testimony in this case corroborates that shake and vibration testing is a

common and accepted methodology in the industry for testing, for example, whether a

product is "rugged," as Gamber claims in the video. (Premo Decl., Ex. C [Pace & Gardner

Depo.] at 32:17-37:22.) Shake and vibration tests were thus properly employed to evaluate

this claim, as well as Gamber's broader claims of superior product safety in design,

construction and performance of the mounts.[2] Gamber has identified no defects in the

manner in which the shake and vibration tests at issue were performed. As explained above

in Section A.2, if it believes there are flaws in Dr. Eby's analysis or conclusions based on

these tests, its remedy is cross-examination, not exclusion.

Finally, the fact that Dr. Eby did not himself perform the tests in question is of no

consequence, as experts routinely opine based on data and analysis conducted by others in

the field. *See, e.g., Turner v. Murphy Oil USA, Inc.,* No. 05-4206, 2006 U.S. Dist. LEXIS

985 at *22-23 (E.D. La. Jan. 11, 2006) (admitting opinion testimony over challenge that

expert had not performed independent research in support of opinion).

### 4. Defendant's Theft Prevention Claims and Inclusion of NPI's Docking Station Mount in the Video Render Dr. Eby's Analysis Highly Relevant

Gamber moves to exclude Dr. Eby's opinion regarding the locking system on NPI's

RAM-234-PAN1M docking station mount on the basis that it is purportedly irrelevant to

prove the truth or falsity of the assertion that NPI's RAM Tough Tray lacks a locking

system. (Mot. at 5.) Gamber's argument is misleading. Dr. Eby's opinion addresses the

---

[2] The tests also go to the issues of strength of bolts and plastic versus metal.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1   false assertion that NPI does not offer locking systems with its mounts.  (*See* Kuhlmann

2   Decl., Ex. A at 24.)  The RAM-234-PAN1M docking station is shown in *The Mounting*

3   *Evidence* and listed in the credits as being included in David Long's purported "analysis."  It

4   is thus a model implicated by Gamber's general claims about product superiority and

5   specific claims that the NPI mount does not have a key lock.[3]  ((Premo Decl., Ex. D [*The*

6   *Mounting Evidence*] at NPI000038.)  Dr. Eby's opinion is therefore relevant, indeed,

7   dispositive to Gamber's advertising claims regarding theft prevention.[4]

8   **B.    Defendant's Attempt to Cut-off Damages Through Exclusion of Scott
        Hampton's February 17, 2010 Supplemental Damages Chart Should Be Denied**

9           Gamber moves to exclude a routine supplement to Scott Hampton's expert report,

10  offered for the sole purpose of updating his damages calculations through the date of trial.

11  (Mot. at 6.)  Gamber faces no prejudice based on the timing of the disclosure of

12  Mr. Hampton's Supplemental Chart.  It was produced nearly two months before the

13  scheduled trial date and in time to allow cross-examination at the expert's deposition.

14          Importantly, the Supplemental Chart does not alter Mr. Hampton's methodology or

15  analysis.  It only presents updated figures based on the damages NPI has continued to incur

16  from Gamber's ongoing use of *The Mounting Evidence*.  (*See* Kuhlmann Decl., Ex. G.)  This

17  type of supplementation of damages figures is routine.  *See Argue v. David Davis Enterprises,*

18  *Inc.,* Civ. No. 02-9521, 2008 WL 450097 at *6 (E.D. Penn. Feb. 15, 2008) (updated damages

19  calculations prior to trial not subject to exclusion based on expert report deadlines).  It also

20  distinguishes the present action from the case cited in Defendant's motion, *Baden Sports, Inc.*

21  *v. Molten*, No. C06-210MJP, 2007 WL 2220215, at *1 (W.D. Wash. Aug. 1, 2007).  In *Baden*

22  [3] In its motion, Gamber states that the RAM-234-PAN1M is unlike the RAM Tough Tray because the former
    is a metal docking station while the latter is plastic.  (Mot. at 5:10-12.)  NPI submits that the evidence at trial

23  will show that there are multiple versions of the RAM-234-PAN1 mount, some of which are plastic like the
    Tough Tray.

24  [4] Gamber again invokes Rule 702 in its challenge with no explanation or argument.  (Mot. at 6:5.)  This
    contention should be rejected for the reasons discussed above.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1    *Sports*, plaintiff's damages expert still had not disclosed the royalty rate underlying the patent

2    damages analysis, despite the fact that trial was five days away.[5]

3        Here, the Supplemental Chart was disclosed nearly two months before the scheduled

4    trial date and before Mr. Hampton was deposed. Gamber's counsel questioned him

5    regarding it extensively during that deposition. (Premo Decl., Ex. E [2/18/10 Hampton

6    Depo.] at 140:8-152:11.) It was also disclosed prior to the deposition of Gamber's own

7    damages expert, who was afforded sufficient time to formulate and express his opinions in

8    rebuttal. Any arguable prejudice has been eliminated. *See Weschler v. Macke Int'l Trade,*

9    *Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) ("[B]ecause plaintiff is willing to allow

10   defendants to take [the expert]'s deposition regarding the damage calculations contained in

11   the Second Supplemental Expert Report, any prejudice to defendants will be minimized");

12   *see also Luma v. Stryker Corp.,* 226 F.R.D. 536, 545 (S.D. W.Va. 2005)(court denied

13   motion to exclude supplemental reports as timing did not require redeposition or

14   rescheduling of trial).

15        Gamber states that Mr. Hampton originally "maintained that the 'damage period' in

16   this case was May 1, 2007 through December 31, 2008," and that therefore the updated

17   period in the Supplemental Chart is an attempt to alter Mr. Hampton's opinion. (Mot. at

18   6-7.) This misstates Mr. Hampton's report, which specifically states that the damages

19   period is "preliminary and subject to change and amendment" based on receipt of new or

20   updated information. (Kuhlmann Decl., Ex. H at 8.) Further, Mr. Hampton states in his

21   report that, based on the continued use of the video by Gamber's resellers, "damages may

22   continue through the date of this report and into the future." (Premo Decl., Ex. F [10/26/09

---

23   [5] Similarly, in *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554-DT (RCx), 2005 WL 6035243 (C.D. Cal.
Sept. 12, 2005), cited in Gamber's motion, three "supplemental" expert reports disclosed well after close of

24   discovery in an eight-year-old class action suit were stricken because they contained entirely new opinions on
chemical exposure and causation, which had not previously been disclosed. *Id.* at \*7-8.

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)     - 8 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

Expert Report of Scott Hampton] at 12.)  *Nowhere* in his reports does Mr. Hampton opine that NPI ceased to incur damages after December 31, 2008.  Gamber could not reasonably have believed that to be the case, as it has made no effort to recall the video or stop its use by its marketing and other business affiliates.[6]  (*Id.* at 11.)

Since the Supplemental Chart is consistent with Mr. Hampton's original opinions, includes no new methodology and has caused no prejudice, Gamber's objections should be overruled.  *See Wilson v. O'Gorman High School,* No. 05-4148, 2008 WL 2571845 at *3 (D.S.D. June 26, 2008) (supplemental opinions were consistent with original report and thus not prejudicial).

## C.  Evidence Regarding the Parties' Prior Business Relationship and Patent Litigation Is Highly Relevant to Show Willfulness and Intent

Defendant moves to exclude evidence of the parties' prior business relationship and patent litigation, which bear directly on issues of intent and willfulness.  In 1999, Gamber and NPI entered into a distribution relationship whereby Gamber was permitted to sell NPI's patented ball-and-socket connector used with NPI's mounted equipment.  (Premo Decl., Ex. G [Greene II] at 22:2-12; 34:10-20.)  The parties' relationship soured and NPI withdrew Gamber's distribution rights.  Sometime in 2004, Gamber released its own competing product, called "VersaTrue."  NPI filed suit alleging infringement of U.S. Patent No. 5,845,885.  Ultimately, the VersaTrue litigation ended in September 2006 after Gamber admitted infringement, paid damages, and was prevented from making further sales of the VersaTrue product.  (Declaration of Mark P. Walters, (hereafter, "Walters Decl."), Dkt. No. 86, Ex. D [Zuelke Depo.] at 46:20-47:3; *see also National Products Inc. v. Gamber Johnson LLC*, CV04-0252-MJP, Docket No. 179 (W.D. Wash. 2006)).

---

[6] In fact, in an e-mail dated September 12, 2008, Gamber's sales staff admits that its customers "hopefully" saved copies on their hard drives, and that while it was pulling the video down from its website, it was going to be shipping "boxes" of the false video to all of its regional sales representatives to continue distribution of the video in hard copy form.  (Premo Decl., Ex. H  at GJ164201.)

*The Mounting Evidence* video and marketing plan were conceived during this same time period in response to the competitive threat caused, in large part, by the termination of the distributorship and success of NPI's patent suit. VersaTrue had been a product developed in part by Gamber's former Vice President of Marketing, Scott Zuelke, who also prepared the script for *The Mounting Evidence* video. (Walters Decl., Dkt. No. 86, Ex. D, [Zuelke Depo.] at 23:20-23.) The discontinuation of the VersaTrue product was a public disappointment for Gamber and, in particular, Zuelke. (*Id.*, Ex. F, Greene II at 86:24-87:8 & 88:22-90:9, DepEx17 at GJ343393 and GJ343391; *see also* Ex. D, Zuelke 51:3-53:14.)

Gamber contends that evidence of the prior distributorship relationship between the parties, as well as references to the VersaTrue patent litigation, are "wholly irrelevant" to this case because the video "did not exist at the time the VersaTrue case settled." (Mot. at 8-9.) A critical issue at trial will be whether Gamber acted willfully or with a "deceptive intent." Under Ninth Circuit law, willful conduct gives rise to presumptions with respect to other elements of a Lanham Act false advertising claim, including actual deception, injury and causation. *See Southland Sod*, 108 F.3d at 1146 (quoting *U-Haul International, Inc. v. Jartran, Inc., 793 F.2d 1034*, 1040-41 (9th Cir. 1986)). The plaintiff can establish willfulness by showing either intentional conduct or that the defendant acted recklessly. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2009 WL 1743699, at *70 (D. N.J. June 5, 2009) (holding that "a finding of recklessness, or voluntary and intentional conduct will suffice to demonstrate willfulness" in comparative advertising cases); *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (finding that willfulness can be established by a showing of recklessness).

Evidence that Gamber previously distributed and resold NPI products to its customers is unquestionably relevant to show both willfulness and intent, as it shows:

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)     - 10 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

(1) that the parties are familiar with each other's operations and the quality of their products;

(2) that Gamber endorsed and believed NPI's products to be safe and of high quality; and

(3) the safety and product superiority claims in *The Mounting Evidence*—which are clearly inconsistent with Gamber's agreement to distribute NPI—are false.

Similarly, evidence regarding the VersaTrue litigation is relevant to establish the deliberate and willful nature of the Gamber's conduct. At trial, NPI will show that the VersaTrue litigation and resulting injunction caused tremendous animosity and ill-will towards NPI that led to the conduct at issue here. For example, Scott Zuelke, the primary author of the script for *The Mounting Evidence*, was described as follows in his performance review immediately preceding the video's creation:

> It seems I may have seen more cracks in the porcelain this year than previous. Understandably, Scott was *deeply troubled* by the VT [VersaTrue] decision and more importantly the entry of NPI into our space . . . [These] developments *seemed to alter Scott's psyche* . . .

(Premo Decl., Ex. M [12/13/09 Greene II. Dep. Ex. 17] at 5) (emphases added)). Jeff Greene further testified that Mr. Zuelke had difficulty managing his emotions regarding the VersaTrue litigation and NPI's entry into the market. (*Id.* Ex. G [12/13/09 Greene Dep.] at 88:14-90:9.) The termination of the distributorship followed by NPI's successful patent suit provide the motivation and intent the false advertising campaign manifested in the video.

Defendant argues in a conclusory fashion that "the evidence would prejudice Gamber and confuse the jury if admitted." (Mot. at 9.) To exclude relevant evidence, the probative value must be "substantially outweighed" by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403. The fact that the evidence is damaging does not provide grounds for exclusion. Rule 403 only guards against unfair prejudice. "Unfair prejudice does not mean the damage to defendant's case that results from legitimate probative force; rather it refers to evidence which tends to suggest a

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1    decision on an improper basis." *United States v. Winkle,* 477 F.3d. 407, 417 (6th Cir. 2007);

2    *see also United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (white supremacy

3    evidence was prejudicial against defendant, but not unfairly so). Here, Gamber cannot

4    establish a legitimate basis to sanitize the trial of facts bearing on its motivation and intent.

5    **D.    Evidence Regarding Docking Stations Is Relevant to Show the Literal Falsity of Defendant's Theft Prevention Claims**

6         Gamber argues that all evidence regarding docking station products should be

7    excluded on the theory that those specific products are not at issue in the litigation. (Mot. at

8    9.) This objection is without merit. The false statements in *The Mounting Evidence* are not

9    limited to a particular category or classification of mounting system. On the contrary, they

10   are extremely broad in their scope, making general claims about "safety," "quality," and

11   "workmanship." All NPI vehicle mounting system products are thereby implicated. (*See*

12   Premo Decl., Ex. A [Second Supplemental Response to Interrogatory No. 1].) As discussed

13   above, docking stations are shown in the video no fewer than *seven* times. (Premo Decl.,

14   Ex. D [*The Mounting Evidence*].) In addition, the RAM-234-PAN1M docking station is

15   listed in the credits as being included in David Long's purported "analysis." (*Id.* at

16   NPI000038.) The video advertisement clearly implicates this type of mounting system.

17         In its brief, Gamber also claims that the RAM-234-PAN1M docking station is made

18   of metal (Mot. at 5.) However, there are multiple versions of the RAM-234-PAN1 docking

19   station, some of which are made from plastic. (Premo Decl., Ex. I.) The video's statements

20   concerning plastic versus steel are relevant to docking stations and other mounting systems.

21   Gamber's effort to narrow trial to a single type of mounting system should be denied.

22   **E.    Admissions from Defendant's Advertising Agency, Thomas Marks & Associates, Qualify as Non-Hearsay and Are Relevant to Show Harm**

23         Defendant's motion in limine to exclude a statement broadly promoting the success

24

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)                - 12 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

of *The Mounting Evidence* video on the website of its advertising agency qualifies as a party-admission by a party opponent and its agent. Here, the statement at issue was part of a "case study" put forth by Thomas Marks & Associates. (Premo Decl. J [6/18/08 Thomas Marks Dep.] at 77:20-78:2.) Thomas Marks & Associates was hired by Gamber to assist in producing *The Mounting Evidence*. It was involved in nearly all aspects of its creation and subsequent promotion. Thomas Marks & Associates promoted its collaboration on the video project on its website: "The nationwide reseller network for Gamber-Johnson has indicated that this selling device has accounted for a 15 percent increase in closing ratios." (Kuhlman Decl., Ex. I. (Marks Depo. at 81:25 - 82:3).)[7] The admission is highly relevant in establishing the success of the video and its impact in diverting sales from NPI.

Defendant's hearsay objection should be overruled because the statement qualifies as party admission under Rule 801(d)(2) by Gamber and its agent. Gamber not only authorized the statement, it supplied the information, according to sworn testimony of Thomas Marks. Its further objections regarding vagueness and lacking foundation are therefore disingenuous and without merit.

To lay a proper foundation, NPI must only offer sufficient facts to permit a reasonable juror to conclude the statement was made by Gamber and not someone else. *See United States v. Gil*, 58 F.3d 1414, 1419 (9th Cir. 1995) (testimony that author was "probably" the author of a ledger, combined with other circumstantial evidence, was sufficient to establish foundation for finding that the ledger was a party admission). In addition to testifying that the Thomas Marks & Associates website would never publish inaccurate claims, Thomas Marks specifically testified under oath that Gamber provided the

[7] Given this context—Thomas Marks & Associates was affirmatively trumpeting the success of *The Mounting Evidence* to the public–it is quite clear that "closing ratios" unambiguously refers to Gamber's increased sales as a result of the video.

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)         - 13 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

data reported in the statement. (*Id.* at 88:12-90:4.)

Finally, the report and testimony of NPI's damages expert, Scott Hampton, establishes that this website evidence (1) is of a kind typically relied on by experts in his field, and (2) is probative of a baseline incremental sales benefit attributable to the video.[8] (Premo Decl., Ex. F [10/26/09 Expert Report of Scott Hampton] at 4, ¶¶ 4-5, & Ex. E [2/18/10 Hampton Depo.] at 113:16-114:17) At a minimum, Mr. Hampton should be allowed to testify about any of his damages opinion and analysis which is based on the statement. *See* Fed. R. Evid. 703; *United States v. W.R. Grace*, 504 F.3d 745, 761 (9th Cir. 2007) (reversing district court order preventing expert from testifying to opinion because it was formed in reliance on a prejudicial and inadmissible study).

**F.     Defendant's Employee E-mail String Bears Directly on Materiality, Willfulness, and Intent, and Should Be Admitted Over Defendant's Relevance and Rule 403 Objections**

Gamber moves to exclude portions of a June 1, 2007 e-mail string between one of its regional sales managers, Tom Reiter, and Jennifer Guendt, Gamber's then VP of marketing and co-producer of the video, on the basis that a purportedly "inflammatory" statement contained therein would be unfairly prejudicial to Gamber. (Mot. at 10-11.) The document in question actually contains three separate e-mails exchanged soon after the release of *The Mounting Evidence* video. The communications show the value Gamber's personnel saw in the video. The Regional Sales Manager admits that: "Our Mounting Evidence production, CD, and website is the coolest thing we've ever done and the best marketing idea I've seen in years from anyone." (Kuhlman Decl., Ex. J.) He calls for expanded use "to our other 'major' product lines." (*Id.*) Gamber's Vice President of Marketing acknowledges the "long hours on this special project" and that it was "the start of a [of] couple series." (*Id.*)

---

[8] Contrary to Gamber's assertion, the meaning of "closing ratio" was clear to both Mr. Hampton and Thomas Marks & Associates. The statement is not impermissibly vague.

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE  (No. CV08-0049 - JLR)          - 14 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

The third e-mail includes the quote identified in Defendant's motion in limine. As the full context establishes, the e-mail was not a joke, but an exchange about the strength, materiality and value of the video and suggests ways to expand upon the statements made:

> When Dave Long was talking about weaker bolts and fewer screws and plastic cradles etc. etc., we could've / should've hit a home run by talking about trying to support a laptop and cradle/dock with a 'rubber ball.' That would've shoved a big one up Jeff Carnivale's backside !!!!

The communications should come into evidence in their full context, not in the redacted and carefully sanitized way that Gamber seeks.

The reference to the "rubber ball" is a clear reference to the ball-and-socket mount at issue in the VersaTrue patent dispute. The language and tone of the e-mail exchange underscores not only the value of the video as a counter-selling tool, but the personal nature of Gamber's competitive attacks. The allegedly "inflammatory" statement itself demonstrates Gamber's intent and motivation in using the video, which is relevant to willfulness. *See Southland Sod*, 108 F.3d at 1146. The probative value outweighs any potential prejudice caused by its employee's choice of words. *See, e.g., United States v. Allen*, 341 F.3d 870 (9th Cir. 2003) (Nazi-related literature and paraphernalia admissible despite its inflammatory nature because it was probative of an element at issue).

**G. Dean Eisenberger Has Been Withdrawn from NPI's Trial Witness List Rendering Any Objection Moot**

NPI has withdrawn Dean Eisenberger from its trial witness list. (Premo Decl., Ex. K [3/15/10 Letter from P. Premo to Defendant's counsel].) Accordingly, Gamber's motion to exclude his testimony is moot.

**H. Defendant's Customer Statements Qualify as Nonhearsay, Fall Under a Hearsay Exception and Are Relevant to Show the Customer's State of Mind**

Gamber moves to exclude a statement in a June 2007 e-mail authored by its employee, Nicky Molski, on the basis that the customer's statements are hearsay and

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)          - 15 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

unfairly prejudicial. (Mot. at 11.) The text of the e-mail states:

> Yesterday, I had someone from California call. He said that he was going to go with Ram, but after watching out Mounting Evidence video, he decided to go with us!!!!!!! So I gave him Lehr and Talley's number! So it is for sure working!!!!

(Kuhlmann Decl., Ex. L.)

*First*, the customer's statements that he elected to go with Defendant's products over NPI's after watching the video represent verbal acts. They qualify as non-hearsay because the statements are being offered for a purpose other than to prove the truth of the matter asserted. The statements have independent legal significance in that they prove the video was shown directly to customers, not just as a training video for sales personnel or resellers. *See* Fed. R. Evid. 801(c); *cf. Jauch v. Corley*, 830 F.2d 47, 52 (5th Cir. 1987) (newspaper article and video admissible to prove allegedly defamatory statements were made); *see also M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 172 (10th Cir. 1968). The statements also have independent legal significance because they are offered to establish the effect on the listener and show deception of the customer. An out-of-court statement is not hearsay if offered to show declarant's state of mind. *Cf. Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001) (statements admissible to prove speakers' confusion in trademark infringement action); *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051 (C.D. Cal. 2009) (employee reports of customer statements admissible to prove likelihood of confusion).

*Secondly*, Federal Rule of Evidence 803(3) also provides a hearsay exception for statements of the declarant's "then existing state of mind, emotion, sensation, or physical condition." Here, the customer provided a contemporaneous statement expressing the reasons for choosing Gamber's mounts over NPI's. Gamber has raised no credible basis to challenge the circumstances for the statement or suggest a motive for the declarant to

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE  (No. CV08-0049 - JLR)          - 16 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1    fabricate or misrepresent his thoughts.  In unfair competitions cases between competitors,

2    statements by customers are admissible under Rule 803(3) to establish the motive in

3    switching from one competitor to the other.  *See, e.g., Callahan v. A.E.V., Inc.,* 182 F.3d

4    237, 253 (3rd Cir. 1999); *Grove Fresh Distributors, Inc. v. New England Apple Products*

5    *Co., Inc.*, 969 F.2d 552, 556 (7th Cir. 1992).

6        This evidence is not unfairly prejudicial to Gamber.  As previously stated, Rule 403

7    does not permit exclusion of evidence simply on the basis that it is detrimental to a party's

8    case.  *See White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007) (prejudice under Rule

9    403 must arise from a non-probative aspect of the evidence).  Here, the e-mail simply shows

10   that the Gamber employee thought the video was highly effective and that it successfully

11   motivated the customer to switch from NPI to Gamber. Gamber's motion fails to articulate

12   how this evidence would be unfairly prejudicial overcoming the presumption that relevant

13   evidence shall be admitted.

14   **I.    Customer Complaints regarding Defendant's Side Clips Are Highly Relevant to Show Literal Falsity as Well as Defendant's Intentional and Willful Misconduct**

15       Gamber moves to exclude evidence regarding side clips because none of the

16   statements "remaining at issue" in the suit purportedly relate to side clips.  (Mot. at 11.)

17   Gamber is incorrect, ignoring that *The Mounting Evidence* contains numerous false

18   statements relevant to side clips, including statements about safety during airbag

19   deployment (side clips are a crucial part of the mechanism restraining the laptop during such

20   deployment), the superiority of steel over plastic in mount construction, and Gamber's

21   purportedly more secure mounts (side clips are also a crucial part of the mechanism

22   preventing theft).  (*See* Premo Decl., Ex. A [Second Supplemental Response to

23   Interrogatory No. 1].)  NPI will adduce evidence at trial that such statements are false in that

24   Gamber's metal side clips: (1) are, in fact, inferior to NPI's plastic fasteners in terms of

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS**
**IN LIMINE**  (No. CV08-0049 - JLR)                    - 17 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

1     holding the laptop to the mount during airbag deployment; and (2) have led to actual laptop

2     thefts due to flimsy construction that allows them to be bent. The video puts performance,

3     design, and safety of Gamber's side clips squarely at issue.

**J.     Evidence Relating to Comtech as a Lost Customer Is Highly Relevant and Admissible**

5     Gamber contends that damages related to sales of products to one of its customers,

6     Comtech, should be excluded on the basis that NPI purportedly admitted that it seeks no such

7     damages. (Mot. at 12.) Gamber's argument is misleading as the deposition testimony cited

8     was later corrected in errata. (*Compare* Kuhlmann Decl., Ex. M *to* Premo Decl., Ex. L

9     [Errata to 8/7/09 Remmers 30(b) (6) Depo.].) NPI has in fact made no such "admission" and

10     fully contends that it has suffered recoverable damages related to sales to Comtech.

**K.     The Testing Videos Relied Upon by NPI's Technical Expert Are Relevant to Show the Falsity of Defendant's Product Safety and Superiority Claims**

12     Gamber attempts to exclude videos of shake and vibration testing listed on NPI's

13     trial exhibit list at Nos. 45-61, because such videos purportedly show products not at issue in

14     the case. (Mot. at 12.) The relevance of the shake and vibration tests has already been

15     discussed above at Section A.3. They are tests routinely used in the industry to evaluate the

16     types of claims made in *The Mounting Evidence* regarding product safety and performance.

17     The evidence at trial will also show that these shake and vibration test videos, in particular,

18     relate to potential use by Waste Management of NPI's plastic mount, a customer that ended

19     up buying Gamber mounting systems after it saw the video.

20     <u>**CONCLUSION**</u>

21     Based on the foregoing, NPI respectfully requests the Court deny Gamber's motions

22     in limine in their entirety.

23

24

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE** (No. CV08-0049 - JLR)     - 18 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

Date:  March 15, 2010                    FENWICK & WEST LLP


                                         By: s/ *David K. Tellekson*
                                         David K. Tellekson, WSBA No. 33523
                                         Ewa M. Davison, WSBA No. 39524
                                         Virginia K. DeMarchi (*pro hac vice*)
                                         Patrick E. Premo (*pro hac vice*)

                                         1191 Second Avenue, 10th Floor
                                         Seattle, WA 98101
                                         Phone:  206-389-4564 / Fax:  206-389-4511
                                         Email:  dtellekson@fenwick.com


                                         Attorneys for Plaintiff
                                         *National Products, Inc.*

**PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE**  (No. CV08-0049 - JLR)                 - 19 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510

# CERTIFICATE OF SERVICE

I, Sharie L. Parks, hereby certify that on March 15, 2010, I caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE** to be served on the following parties as indicated below:

| | |
|---|---|
| **Mark S. Parris**<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>701 Fifth Avenue, Ste. 5700<br>Seattle, WA 98104-7097<br><br>*Attorneys for Defendant Gamber-Johnson LLC* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email [by agreement of counsel]<br>   mparris@orrick.com |
| **Jonathan D. Jay**<br>**Nicholas S. Kuhlmann**<br>**Terrance C. Newby**<br>LEFFERT JAY & POLGLAZE, P.A.<br>150 South Fifth Street, Suite 1900<br>Minneapolis, MN 55402<br><br>*Attorneys for Defendant Gamber-Johnson LLC* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>**[X] By Electronic CM/ECF**<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email [by agreement of counsel]<br>   jjay@ljp-iplaw.com<br>   nkuhlmann@ljp-iplaw.com<br>   tnewby@ljp-iplaw.com |

DATED: March 15, 2010

*s/ Sharie L. Parks*
for David K. Tellekson, WSBA No. 33523
FENWICK & WEST LLP

PLAINTIFF'S OPP. TO DEFENDANT'S MOTIONS
IN LIMINE (No. CV08-0049 - JLR)                     - 20 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 389-4510