1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS, INC.,<br><br>         Plaintiff,<br><br>    v.<br><br>GAMBER-JOHNSON LLC,<br><br>         Defendant. | CASE NO. C08-0049JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Before the court is Defendant Gamber-Johnson LLC's ("Gamber-Johnson") motion for summary judgment (Dkt. # 76). Having reviewed the papers filed in support of and in opposition to the motion and having heard the argument of counsel, the court GRANTS in part and DENIES in part the motion. The court DENIES the motion as to

ORDER- 1

National Products, Inc.'s ("NPI") Lanham Act false advertisement claim and GRANTS the motion as to the state law claims.[1]  (Dkt. # 76).

## I.  BACKGROUND

Gamber-Johnson and NPI compete in the vehicle laptop mounting business.  As the name suggests, the companies design and sell mounting systems for laptops in vehicles.  Typically the mounting systems are sold to emergency responders who have a need for laptops in their vehicles.  This dispute relates to a video produced by Gamber-Johnson cleverly titled "The Mounting Evidence."  The video described the benefits of purchasing a Gamber-Johnson mounting system versus other mounting systems in the market, including the one developed by NPI called the "RAM."  (Declaration of Mark P. Walters ("Walters Decl."), Ex. B (Transcript from The Mounting Evidence ("Tr.")) at 2.).)

The video was developed by Gamber-Johnson's Vice President of Marketing, Scott Zuelke.  (Walters Decl., Ex. D (Deposition of Scott Zuelke ("Zuelke Dep.") at 23:20-23).)  The video was produced as a "promotional CD directed at [Gamber-Johnson] resellers and end users that competitively compares [Gamber-Johnson] products to the competition and communicates specific facts or competitive statements about why Gamber-Johnson product is the best in the industry."  (Walters Decl., Ex. E (Deposition of Jennifer Guerndt at 23, Dep. Ex. 136310).)  The Mounting Evidence essentially

---

[1] At oral argument, counsel for NPI acknowledged that it was not asserting a separate claim for unjust enrichment but rather seeks unjust enrichment damages from the alleged Lanham Act violation.  The court therefore finds that NPI has abandoned its state law claim for unjust enrichment.

1  compared safety features of various parts of the Gamber-Johnson mounting system with,
2  among others, NPI's RAM mounting system.
3      The video was narrated by David R. Long, a frequent speaker on airbag safety, as
4  well as ambulance driving and other types of emergency-responder driving techniques.
5  (Walters Decl., Ex. I (David R. Long Deposition ("Long Dep.") at 55).)  Mr. Zuelke
6  chose Mr. Long as the narrator because he felt that Mr. Long had sufficient name
7  recognition in the industry to lend some additional credibility to Gamber-Johnson's
8  marketing project.  (Zuelke Dep. at 112.)  As discussed below, however, Mr. Long's
9  contribution to the video consisted only of reading off a teleprompter.  He did not
10 contribute to the content of the script nor did he conduct any tests supporting the
11 comparison analysis of the different mounting systems.
12     Mr. Long's statements in the video form the basis of NPI's claims against
13 Gamber-Johnson.  Specifically, NPI takes issue with (1) Mr. Long's purported "analysis"
14 and "investigation" of the mounting systems; (2) his statements regarding the use of front
15 laptop restraints; (3) his statements regarding the types of materials used to manufacture
16 the mounting systems (*i.e.*, plastic versus steel and Grade 5 versus Grade A bolts); (4) his
17 implications regarding the thickness of the steel in the lower tube design; and (5) his
18 statements regarding the key locks.  Each allegedly false statement is discussed
19 separately below.  Gamber-Johnson moves to dismiss the complaint on the basis that NPI
20 has failed to show that (1) the statements were literally false; (2) the statements were
21 misleading and that they actually deceived a significant portion of the targeted audience;
22

(3) the statements were material; (4) the statements injured NPI; and (5) the statements affected the public interest. (*See generally* Mot.)

## II. ANALYSIS:

### A. Summary Judgment

Gamber-Johnson moves for summary judgment on all of NPI's claims against it. Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles,* 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

### B. Lanham Act Claim for False Advertisement

The elements of a Lanham Act § 43(a)[2] false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a

---

[2] Lanham Act § 43(a), codified at 15 U.S.C. § 1125(a), provides in pertinent part: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993).

Whether or not an advertisement is "literally false" is a question of fact. *See Abbot Labs v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992). And because literally false advertisements create a presumption of deception and reliance, *U-Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986), summary judgment in favor of the defendant is inappropriate where sufficient evidence exists to permit a juror to conclude that an advertisement is literally false. *See Southland Sod*, 108 F.3d at 1146 (reversing summary judgment where a reasonable juror could conclude advertisements were literally false). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* at 1139 (citing *Castrol Inc.*, 987 F.2d at 946).

1. David Long's "Analysis" and "Investigation"

As discussed above, The Mounting Evidence was narrated by David Long, the self-described "airbag detective." He expressly represents in a number of places that the video is the product of his "analysis" and "investigation." The CD cover states that The Mounting Evidence "represents the results of an in-depth look at laptop mounting systems. . . . [J]oin Dave Long as he investigates the facts." (Walters Decl., Ex. A.) Mr. Long also states in the video: "I have stripped down and analyzed comparable vehicle mounting systems from six manufacturers" and "we have examined a lot from safety and design to fasteners and attention to detail." (Tr. at 2.) Mr. Long testified, however, that he was only a paid narrator and that he was hired to read the teleprompter; he was not asked to conduct an evaluation or investigation of the mounting equipment featured in the video. (Long Dep. at 242-44).) Additionally, Scott Zuelke testified that Mr. Long's statement in the video that he had "stripped down and analyzed comparable vehicle mounting systems from six manufactures" was literally false. (Zuelke Dep. at 176.)

Even in the face of Mr. Zuelke and Mr. Long's testimony that the statement was false, Gamber-Johnson continues to assert that there is no genuine dispute that the statement was true. The court can find no support for this bald assertion. Regardless, at a minimum, the court finds there is a genuine issue of material fact as to the truth of Mr. Long's statement regarding his own analysis and investigation of the various mounting systems.

Gamber-Johnson next argues that the statements by Mr. Long were neither material nor likely to influence purchasing decisions. (Reply (Dkt. # 98) at 4.) Whether

ORDER- 6

the statements were material or likely to influence a consumer's purchasing decision is a question for the jury. Based on the evidence before the court, it finds that a reasonable jury could conclude that consumers would rely on the "airbag detective's" (*i.e.*, Mr. Long's) analysis that, for example, if the consumer chose the wrong mounting system, their laptop could become a projectile in the vehicle. Accordingly, the court denies summary judgment as to these statements.

    2. <u>Statement Regarding Effect of No Front Restraints</u>

In Mr. Long's narrative he discusses how NPI's RAM mounting system has no front restraints and therefore has "serious shortcomings" that could cause your laptop to "submarine right out of the side restraints . . . ." (Tr. at 5.) This discussion is preceded by Mr. Long's statement that the Gamber-Johnson mounting system has front restraints and that the viewer should "[n]ow pay attention, this is where it gets scary. There are no front restraints on RAM's . . . laptop mounts and that's a serious shortcoming." (*Id.*) Gamber-Johnson contends that these statements are non-actionable because they are subjective and qualified and "therefore cannot be '<u>quantified</u>'." (*Id.* (citing *Cook, Perkiss and Liehe*, 911 F.2d at 246 for the proposition that "advertising claims are considered 'puffery' when they are either vague or highly subjective").) The court concludes that a reasonable jury could find the statements made by Mr. Long regarding the RAM's lack of front restraints to be "scary" and could cause the laptop to "submarine" out of the RAM's mounting system and "fly around in your vehicle," to be sufficiently concrete to support a claim for false advertising.

ORDER- 7

Viewing the evidence in the light most favorable to NPI, the court is satisfied that a jury could find the statements made by Mr. Long are literally false or false by implication. NPI also offers expert testimony that the RAM mounting system is not inferior to Gamber-Johnson's mounting system when an airbag is deployed. The court therefore denies the motion for summary judgment as to the statements regarding the RAM's lack of front restraints.

### 3. Statement Regarding Use of Plastic and Inadequate Fasteners

Mr. Long states in the video that Gamber-Johnson's mounting system is made from a better material and that the RAM's system is made from plastic which is not appropriate for mounting systems. (Tr. at 5 (alluding to the fact that a plastic mounting system could cause the laptop to fly around "like an out-of-control missile").) Mr. Long also states that the bolts used by NPI are just "not good enough" and "only half as strong" as Gamber-Johnson's bolts. (*Id.* at 8.) NPI offered expert opinion that these statement are literally false and that the materials used are sufficient for their intended use, Declaration of Dr. David J. Eby ¶¶ 12-13; Gamber-Johnson argues that whether the material used is appropriate is a question of non-actionable opinion, Reply at 6 (citing *Cook, Perkiss and Liehe*, 911 F.2d at 246). Although a closer call than the other statements made by Mr. Long, the court finds that whether these statements regarding the use of plastic and inferior bolts are literally false when viewed in context of Mr. Long's statements regarding an "out-of-control missiles" and his purported expertise as the "airbag detective", is best left to the jury. The court denies summary judgment as to these statements.

### 4. Statements Regarding Lower Tube Design

The statement at issue here involves the lower tube design of the two mounting systems. Mr. Long states:

> Here is Gamber-Johnson's lower tube and it's one-eighth of an inch thick and it's rock solid. Here is RAM's lower tube – hmmm looks like the same product from this angle – but it's not. RAM's wall thickness is one-sixteenth of an inch. Gamber-Johnson's is a robust one-eighth of an inch – double the thickness. Sometimes 'the mounting evidence' comes down to an eighth of an inch.

(Tr. at 4.)

The parties do not dispute that Gamber-Johnson's lower tube is one-eighth of an inch or that NPI's is one-sixteenth of an inch. Nor does NPI dispute that the difference in thickness amounts to Gamber-Johnson's tube being double the size of NPI's. (Resp. at 85; Reply at 7.) NPI seems to contend that because its expert claims that one-eighth of an inch provides equivalent stiffness to the Gamber-Johnson lower tube, the statement is literally false. The court disagrees. Unlike the prior statements where Mr. Long opined that the materials used were somehow a safety hazard, here, Mr. Long does not go the next step of declaring the lower tube to be inadequate. Because the statement is literally true and because Mr. Long does not imply that it is inferior, the court grants summary judgment to Gamber-Johnson on this claim.

### 5. Statements Regarding Key Locks

Mr. Long states in the video that the RAM system does not offer a key lock for its laptop tray. (Tr. at 6.) This was literally true when the video was produced. He also states that Gamber-Johnson's locking system is "tamper resistant" and "offers the best

ORDER- 9

chance at deterring theft." (Eby Decl. ¶ 15.) NPI first contends that six months after the video was produced it added a key lock, and next, that Dr. Eby testified that Mr. Long's statement regarding Gamber-Johnson's locking system is literally false. There is no case law to suggest that Gamber-Johnson should have known that NPI would install a locking system six months after the video was produced. While an argument can be made requiring Gamber-Johnson to correct the statement once it learned of NPI's improved system, the facts here show that NPI produced the video with the disclaimer that "comparisons in this program were accurate at the time of production." (Tr. at 15.) The court finds this disclaimer sufficient to cover the situation where its competitors alter their systems based on criticisms raised in the video or for other reasons.

The issue relating to Dr. Eby's testimony that Gamber-Johnson's mounting system is not tamper-resistant is better left to the jury. The statement that its system "offers the best chance at deterring theft," however, falls under the rubric of puffery. This statement is vague, subjective and not measurable. *See Cook, Perkiss and Liehe*, 911 F.2d at 246. Accordingly, the court grants summary judgment to Gamber-Johnson on NPI's claim that it is literally false, as of six months after the video was released, that its system does not have a locking system and that Gamber-Johnson's locking system offers the best chance at deterring theft. The court denies summary judgment on Gamber-Johnson's assertion that its mounting system is "tamper resistant."

6. <u>Damages</u>

Gamber-Johnson also moves to dismiss all of NPI's claims because it contends NPI cannot prove that any sales were diverted from it as a result of the allegedly false

ORDER- 10

statements. (Mot. at 22 (asserting that to recover damages NPI must first show "actual diversion of customers").) NPI responds that it "enjoys an evidentiary presumption of actual deception and reliance" because Gamber-Johnson published a deliberately false advertisement. (Resp. at 23.) The court agrees with NPI's position that, at this stage in the litigation, NPI enjoys a presumption of actual deception and reliance from Gamber-Johnson's allegedly false statements in The Mounting Evidence. In *U-Haul*, the Ninth Circuit explained:

> It is not easy to establish actual consumer deception through direct evidence. The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded.

793 F.2d at 1041 (awarding damages based on corrective advertising expenditures). Moreover, in *Southland Sod*, the Ninth Circuit held that an inability to show deception and actual damages does not alone preclude a recovery for false advertisement. 108 F.3d at 1146 (citations omitted).

Gamber-Johnson raised the issue of a presumption of damages at oral argument on its motion for summary judgment. Citing this district's recent decision in *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372RSM, 2010 WL 455195 (W.D. Wash. Feb. 1, 2010), Gamber-Johnson argues that even assuming NPI enjoys a presumption of consumer deception and reliance, NPI is not entitled to a presumption of damages and must come forth with evidence of damages to withstand summary judgment. Having

ORDER- 11

reviewed the *Campagnolo* decision, the court concludes that Gamber-Johnson's interpretation of this decision is only half correct.

In *Campagnolo*, the Honorable Ricardo S. Martinez restated the Ninth Circuit precedent that to make out a false advertisement claim, a plaintiff must show among other things, that the advertisement "actually deceived or has a tendency to deceive a substantial segment of the audience," and that "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." 2010 WL 455195, at *1 (citing *Southland Sod*, 108 F.3d at 1139). Judge Martinez explained that the consumer deception element and the injury element are separate: "In a suit for damages [for false advertisement] actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). Gamber-Johnson's argument ends here. Judge Martinez continues in his *Campagnolo* order to explain that although *Harper House* makes clear that a showing of consumer deception does not entitle a plaintiff to damages, in *Southland Sod*, the Ninth Circuit held that "an inability to show damages does not alone preclude recovery." 2010 WL 455195, at *1 (quoting *Southland Sod*, 108 F.3d at 1146 (citations omitted)).

The question, then, is under what circumstances is NPI entitled to a presumption of damages from the alleged false statements? In *Campagnolo*, Judge Martinez distinguishes *Harper House* and *Southland Sod* based on whether the false advertisement directly compared the two products at issue. In *Harper House*, the Ninth Circuit held that

ORDER- 12

the plaintiff was entitled to a presumption that consumers were directly deceived but not a presumption that the plaintiff was damaged as a result of the deception because the defendant's advertising did not directly compare plaintiff's and defendant's products. 889 F.2d at 210. Unlike the advertisement in *Harper House*, the defendant's advertisement in *Southland Sod* directly compared its product with the plaintiff's. *Id.* at 1137. Thus, the Ninth Circuit concluded that in cases of direct comparative advertising, the presumption that plaintiff's goodwill has suffered significant damage is justified and the plaintiff can recover even without showing actual damages. *Id.* at 1146. Consistent with Ninth Circuit precedent and Judge Martinez's decision, the court answers the question posited above as follows: deliberate falsity yields a presumption of consumer deception in cases of non-comparative advertising and a presumption of consumer deception and injury in cases of direct comparative advertising. Here, there is no dispute that Gamber-Johnson compared directly its product to NPI's product. Accordingly, the court is satisfied that if a jury finds Gamber-Johnson used false statements and comparisons in its advertising video then there is, at a minimum, an evidentiary presumption of deception, reliance and damage to NPI's goodwill.

The court also notes that NPI has come forth with some evidence that the video diverted some customers away from it and may have caused damage. (*See e.g.,* Walters Decl., Ex. L (Doug Mayer Deposition) at 15-16 (testifying that The Mounting Evidence played a significant role in his lost sales of RAM mounting system); Ex. M (Mike Schiller Deposition) at 42-44 (testifying that he recommended Gamber-Johnson over the RAM system in emails that had a link to the website where one could watch The

1  Mounting Evidence).  Based on both a presumption of diversion of profits and the
2  evidence provided by NPI regarding lost sales, the court denies summary judgment on
3  Gamber-Johnson's contention that NPI cannot prove damages.

4  **C.    Consumer Protection Act**

5        The Washington Consumer Protection Act ("CPA") makes unlawful "[u]nfair
6  methods of competition and unfair or deceptive acts or practices in the conduct of any
7  trade or commerce . . . ."  RCW 19.86.020 (2009).  Under the CPA, a plaintiff must
8  demonstrate (1) an unfair or deceptive act or practice (2) occurring in trade or commerce
9  (3) that impacts the public interest (4) causing an injury to the plaintiff's business or
10 property with (5) a causal link between the unfair or deceptive act and the injury suffered.
11 *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1132 (9th Cir. 2002).
12 Four factors, none of which is dispositive, and not all of which must be present, are
13 evaluated when determining whether an allegedly unfair or deceptive practice has
14 impacted the public interest, as required for a private claim under the CPA: (1) whether
15 the alleged acts were committed in the course of defendant's business; (2) whether
16 defendant advertised to the public in general; (3) whether defendant actively solicited the
17 particular plaintiff, indicating potential solicitation of others; (4) whether plaintiff and
18 defendant had unequal bargaining positions.  *Michael v. Mosquera-Lacy*, 200 P.3d 695,
19 700 (Wash. 2009).
20       Here, Gamber-Johnson argues that "the effect on public interest" element requires
21 NPI to show a "real and substantial potential for repetition, as opposed to a hypothetical
22 possibility of an isolated unfair or deceptive act's being repeated."  (Reply at 12 (citing

1  *Mosquera-Lacy*, 200 P.3d at 700).)  NPI responds that The Mounting Evidence was
2  widely distributed and that the public has an interest in companies being truthful in their
3  advertising.  The fact that the video was widely distributed, or that there may still be
4  multiple copies out in the marketplace that continue to be shown, as argued by NPI's
5  counsel, is not supported by any facts in the record before the court.  Washington law
6  requires some nexus between the competitive damage and a potential public harm.  NPI
7  has shown no such nexus here and thus fails to come forth with sufficient argument to
8  withstand summary judgment.

9                    **III.   CONCLUSION:**

10        For the foregoing reasons the court GRANTS Gamber-Johnson's motion for
11 summary judgment as to Mr. Long's statements regarding the thickness of the steel in the
12 lower tube design, his statement regarding the absence of the key locks on NPI's system,
13 and his statement that Gamber-Johnson's system offers "the best chance of deterring
14 theft."  (Dkt. # 76.)  The court also GRANTS the motion as to the state law CPA and
15 unjust enrichment claims.  The court DENIES the motion as to the remaining statements
16 giving rise to NPI's Lanham Act false advertisement claim, which include: (1) Mr.
17 Long's purported "analysis" and "investigation" of the mounting systems; (2) his
18 statements regarding the use of front laptop restraints; (3) his statements regarding the
19 types of materials used to manufacture the mounting systems (*i.e.*, plastic versus steel and
20 Grade 5 versus Grade A bolts); and (4) his statements regarding Gamber-Johnson's key
21 system being "tamper-resistant."
22

1

2   Dated this 15th day of March, 2010.

3

4

5   _____
    JAMES L. ROBART
6   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 16