1  The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS, INC.,

    Plaintiff,

v.

GAMBER-JOHNSON LLC,

    Defendant.

Case No. C08-0049-JLR

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)**

NOTE ON MOTION CALENDAR:
April 30, 2010

DEF.'S SUPPLEMENTAL 50(A) BRIEF
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT................................................................................................................1

    A. NPI's Evidence Was Insufficient As a Matter of Law to Support an Award of Damages on any Basis .................................................................................1

        1. NPI Made No Attempt to Prove Its Actual Market Losses Due to False Statements in the Mounting Evidence Video. ....................................2

        2. NPI Offered No Evidence to Support an Award of Corrective Advertising Expenses.................................................................................3

        3. NPI Offered No Evidence to Support an Award of Gamber's Profits. ........................................................................................................4

    B. The Court Should Deny NPI's Request for a Permanent Injunction .......................10

III. CONCLUSION...........................................................................................................10

DEF.'S SUPPLEMENTAL 50(A) BRIEF      i  
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP  
701 5th Avenue, Suite 5600  
Seattle, Washington  98104-7097  
tel+1-206-839-4300

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
  410 F.3d 701 (Fed. Cir. 2005) ................................................................................................ 2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................ 9

*Balance Dynamics Corp. v. Schmitt Indus.*,
  204 F.3d 683 (6th Cir. 2000) ......................................................................................... passim

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*,
  750 F.2d 903 (Fed. Cir. 1984) ................................................................................................ 7

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ............................................................................................ 7, 10

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) .............................................................................................................. 10

*Burndy Corp. v. Teledyne Indus., Inc.*,
  584 F. Supp. 656 (D. Conn.),
  *aff'd*, 748 F.2d 767, 772 (2d Cir. 1984) .............................................................................. 6, 7

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
  No. C08-1372, 2010 WL 455195 (W.D. Wash. Feb. 1, 2010) .............................................. 8

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*,
  882 F. Supp. 915 (C.D. Cal. 1994) ........................................................................................ 2

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) .............................................................................................. 10

*EFCO Corp. v. Symons Corp.*,
  219 F.3d 734 (8th Cir. 2000) .................................................................................................. 5

*Eng'red Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*,
  591 F. Supp. 962 (M.D. La. 1984) ......................................................................................... 9

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197 (9th Cir. 1989) ............................................................................................. 1, 9

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  424 F.3d 363 (3d Cir. 2005) ................................................................................................... 7

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ......................................................................................passim

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
  263 F.3d 447 (5th Cir. 2001) ............................................................................................ 8, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*McGlinchy v. Shell Chem. Co.*,
 845 F.2d 802 (9th Cir. 1988) .................................................................................................10

*Murphy Tugboat Co. v. Crowley*,
 658 F.2d 1256 (9th Cir. 1981) ..................................................................................................7

*Oil Heat Inst. of Or. v. Nw. Natural Gas*,
 708 F. Supp. 1118 (D. Or. 1988) ............................................................................................10

*PBM Prods., LLC v. Mead Johnson & Co.*,
 No. 3:09-CV0269, 2010 WL 723750 (E.D. Va. Mar. 2, 2010) .................................................2

*Porous Media Corp. v. Pall Corp.*,
 110 F.3d 1329 (8th Cir. 1997) ..................................................................................................8

*Seven-Up Co. v. Coca-Cola Co.*,
 86 F.3d 1379 (5th Cir. 1996) .............................................................................................2, 10

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997) ..............................................................................................1, 8

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
 793 F.2d 1034 (9th Cir. 1986) ..............................................................................................5, 7

*Vuitton et Fils, S.A. v. Crown Handbags*,
 492 F. Supp. 1071 (S.D.N.Y. 1979) .........................................................................................9

**FEDERAL STATUTES AND RULES**

Fed. R. Civ. P. 26(a) .......................................................................................................................3

Fed. R. Civ. P. 30(b)(6)...................................................................................................................3

Fed. R. Civ. P. 37............................................................................................................................3

Fed. R. Civ. P. 50............................................................................................................................9

Fed. R. Civ. P. 50(a) ...............................................................................................................1, 2, 8

Fed. R. Civ. P. 50(b) .......................................................................................................................1

Fed. R. Civ. P. 56............................................................................................................................9

Fed. R. Civ. P. 59............................................................................................................................1

Lanham Act Section 35(a) ..............................................................................................................7

Lanham Act Section 43(a) ..............................................................................................................1

DEF.'S SUPPLEMENTAL 50(A) BRIEF
C08-0049-JLR

iii

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

## I. INTRODUCTION

The Court has requested further briefing with respect to the damages aspect of defendant Gamber-Johnson's Rule 50 (a) motion. The jury returned an eye-popping $10 million verdict as compensation for supposedly lost profits to a company with *total sales* of vehicle base mounting systems in 2008 of little more than half that amount, and which was unable to show evidence of even one lost sale. However, the amount and fact of the verdict is not relevant to Gamber's pending Rule 50(a) motion, which seeks relief on the basis that NPI's evidence of damages was legally insufficient and that the Court should grant judgment to Gamber as a matter of law.

NPI's damage evidence, offered through its expert, Scott Hampton, was not evidence from which a reasonable jury could have awarded damages on any basis other than pure speculation or to punish Gamber (see footnote 11, *infra*)—neither of which is a permissible basis for a damage verdict. The Court also should deny any request by NPI for a permanent injunction as moot because Gamber has long since stopped the challenged advertising.[1]

## II. ARGUMENT

### A. NPI's Evidence Was Insufficient As a Matter of Law to Support an Award of Damages on any Basis.

Damages under Section 43(a) of the Lanham Act "constitute 'compensation' for the plaintiff's losses or the defendant's unjust enrichment." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997). This "compensation" can take several forms: (1) damages for actual lost profits or harm to goodwill; (2) damages for corrective advertising expenses; or (3) an award of defendant's profits derived from the false advertising. Regardless of the type of monetary recovery sought, "actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) (emphasis in original). The plaintiff is not entitled to any damages unless they are "attributable to" the false advertising. *Lindy Pen Co. v. Bic Pen Corp.*,

---

[1] Gamber reserves its rights to raise these same (and all other appropriate) issues in motions pursuant to Rules 50(b) and 59. Gamber also reserves its right to respond to any motion for injunctive relief by NPI.

DEF.'S SUPPLEMENTAL 50(A) BRIEF          1
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7079
tel +1-206-839-4300

982 F.2d 1400, 1408 (9th Cir. 1993).[2] Furthermore, "guided by tort law principles," damages cannot be speculative and "must be established with reasonable certainty." *Id.* at 1407.

Assuming solely for purposes of this part of Gamber's Rule 50(a) motion that there were material misstatements in the Mounting Evidence video (the "video"), NPI offered no competent evidence to support a recovery of damages or Gamber's profits "attributable to" the alleged false statements or any other measure of damages.

### 1. NPI Made No Attempt to Prove Actual Market Losses Due to False Statements in the Mounting Evidence Video.

NPI's damages proof was offered through its expert witness, Scott Hampton. Although NPI's three principal owners offered conclusory testimony that NPI supposedly had been harmed as the result of the video, those witnesses made no effort to identify or quantify any losses or to tie any losses to any alleged false statement in the video. No customer or potential customer of either Gamber or NPI testified that they rejected NPI's product, or purchased Gamber's product, on account of the accused video, much less any alleged false statement in it. Just one email, purportedly emanating from an unidentified individual in California, was admitted, but that communication did not actually state that a sale was consummated. Moreover, the Court admitted this email solely for the purpose of showing motive, not for proof of a sale by Gamber or a lost sale by NPI.

In light of the obvious deficiency of this evidence, and the fact that there was no decrease in NPI's revenues that could be linked to Gamber's alleged violation, Hampton freely admitted that he was "unable" to identify or quantify NPI's purported lost sales. *See* 4/8/10 Tr. at 69 ("I looked at NPI's sales to see if I could identify lost sales and quantify a number. I was unable to

---

[2] *See also Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 709-10 (Fed. Cir. 2005) (affirming summary judgment for defendant because plaintiff's evidence was insufficient to show causal injury); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1389 (5th Cir. 1996) (affirming judgment for defendant because jury could not make reasonable inference of causation). Here, NPI needed to show not just a causal connection between the Mounting Evidence video and its damages, but a connection to the *actionable* statements within the video. *See, e.g.*, *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994) (damages must be connected to the false statements themselves, not to advertising "as a whole"); *PBM Prods., LLC v. Mead Johnson & Co.*, No. 3:09-CV0269, 2010 WL 723750, at *5 (E.D. Va. Mar. 2, 2010) (same).

do that."); *see also id.* at 66-67.[3]  Hampton also offered no opinion that attempted to quantify any supposed damages associated with harm to NPI's goodwill, and there was no other quantifiable evidence in the record to support a goodwill award.

### 2. NPI Offered No Evidence to Support an Award of Corrective Advertising Expenses.

After NPI improperly failed to disclose the computation of its corrective advertising damages in its Rule 26 disclosures and interrogatory answers, the Court ruled that NPI's proof on this issue was limited "to the expert witness who you said was going to testify to it." 4/7/10 Tr. at 104.[4]  Yet Hampton thereafter offered no opinion on the subject. He merely testified that *Gamber* spent $2,236,765 as "markets [sic] expenses . . . during the period . . . when the video was actually being distributed." 4/8/10 Tr. at 60-61. This figure, taken "directly from [Gamber's] financial statements" included "payroll," "advertising and promotion" as well as "travel . . . and other ancillary expenses" for Gamber *as a whole* during the time in question. *Id.*

What this number was meant to establish is nowhere explained in Hampton's testimony. A sidebar was held on Gamber's objection before the number was offered into evidence, during which NPI's counsel expressly disclaimed that this represented any expert opinion regarding corrective advertising but was "just what [Gamber] spent. That's all he's going to say." *Id.* at 60. In fact, Hampton admitted that he did not form "an opinion to what it would take to actually correct advertising, because [he felt that would be] outside [his] area of expertise." *Id.* at 81.

However, contrary to NPI's sidebar representation to the Court, in closing argument counsel for NPI urged the jury to award damages for corrective advertising on the grounds that "you heard from . . . Mr. Hampton that Gamber spent $2.3 million on marketing and advertising. And that could be a proxy or an estimate of how much NPI would need to spend going forward to try to undo the damage . . . . [T]hat could be an amount of corrective advertising." 4/9/10 Tr.

---

[3] Cited trial transcript excerpts and relevant exhibits are attached to the Declaration of Paul Rugani.

[4] In violation of Rules 26(a), 30(b)(6), and 37, NPI tried to introduce through Chad Remmers corrective advertising figures that it did not disclose to Gamber at any time prior to trial. *See* 4/7/10 Tr. at 90-104. Criticizing NPI's "hide the ball" approach, the Court barred the proposed testimony. *Id.* at 104. As NPI's counsel candidly acknowledged, that testimony would have been merely Mr. Remmers "speculat[ing] on what is going to go into the future." *Id.* at 103.

| | |
|---|---|
| DEF.'S SUPPLEMENTAL 50(A) BRIEF<br>C08-0049-JLR | 3      Orrick Herrington & Sutcliffe LLP<br>701 Fifth Avenue, Suite 5600<br>Seattle, Washington 98104-7079<br>tel +1-206-839-4300 |

at 145. Not only is Hampton's testimony and any "proxy" based on Gamber's total marketing insufficient to support an award of corrective advertising, "there is no need to use such proxies with regard to damage control expenses, for the proof of such expenses is in the possession of the plaintiff and is therefore easily produced." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 691 (6th Cir. 2000).[5]

In sum, NPI's lack of Rule 26 disclosure, the Court's ruling limiting NPI's proof to Hampton's testimony, and Hampton's admission that he was offering no opinion on the issue, precludes NPI from any recovery for corrective advertising damages as a matter of law.

### 3. NPI Offered No Evidence to Support an Award of Gamber's Profits.

Leaving aside corrective advertising, NPI's entire remaining damages case was put in through its expert Hampton. Instead of applying the legally required methodology of opining on Gamber's profits allegedly "attributable to" any accused statement, he did nothing more than calculate Gamber's *total* sales and profits "during the time" Gamber used the video. After having explained to the jury that the "harm" from false advertising is that "NPI did lose sales" (without identifying a single lost sale), and that NPI was entitled to be compensated for its losses, Hampton opined that the best "approximation" of the harm to NPI was Gamber's total profits during the time the false video was being used. 4/8/10 Tr. at 58. Such an approximation was required, he stated, *because he was unable to identify any amount of actual lost sales*. Hampton turned to Gamber's sales and profits on the ground that that "represents an alternative calculation of NPI's lost sales" *Id.* at 83. Specifically, Hampton calculated the total amount of Gamber's sales of computer mounts during a 19 month period—May 2007 through the end of 2008 (approximately $54 million)—and reduced that by Gamber's cost of goods sold ($31.6 million). He, then, asserted that the difference—$22.6 million—represented recoverable damages to NPI as an "approximation" or "alternative calculation." *Id.* at 69, 83. But Hampton finally admitted

---

[5] Hampton's testimony also offered no basis for the jury to award damages for *prospective* corrective advertising, as he disclaimed any opinion on the subject. *See* 4/8/10 Tr. at 81. Nor could an award for prospective corrective advertising be squared with the testimony of NPI's president, Mr. Carnevali, who readily conceded that NPI had not done, and does not plan to do, any corrective advertising. *See* 4/6/10 Tr. at 106-07.

this amount was no such thing; rather, it was quite simply "the amount of money that [Gamber] earned as a profit during the time that the video was . . . used as marketing tool." *Id.* at 58.

The standard for a Rule 50 (a) motion respecting damages is whether there is evidence from which a reasonable jury could base its award. Thus, the issue is whether the damage figure produced by Hampton's methodology could be said to constitute a reasonable proxy for what would have happened in the "but for" world (*i.e.*, what NPI's and Gamber's profits would have been but for alleged false statements in the video). In Hampton's "but for" world, during the posited 19-month "damages period," NPI would have had sales of $61.3 million, as opposed to its actual sales of $7.1 million, since, by his methodology, $54.2 million "represents an alternative calculation of NPI's *lost* sales" (*id.* at 83 (emphasis added)).[6] Meanwhile, of course, in Hampton's "but for" world, Gamber's sales of computer mounts during this same period would have been "$0." In other words, "but for" the video, Gamber would have lost 100% of its business starting the very first day the video was shown. And it would have lost that business solely to NPI and not to the four other competitors mentioned in the video.

Faced with this untenable hypothesis—an assumption of lost sales in excess of ten years worth of actual NPI sales in both 2008 and 2009 (annualized from figures in evidence through August)—a reasonable person would ask if that makes any sense or, perhaps, might look at what actually happened to see if there is anything in the financial results for the two companies suggesting that Hampton's assumptions might be even remotely reasonable.[7] In fact, the actual figures during this period show that NPI's results grew "steadily" from year to year through the end of 2008, whereas Gamber's sales were "flat." *See* 4/8/10 Tr. at 66-68, 80; Ex. A-8; Demonstrative Ex. 5; 4/9/10 Tr. at 76. There was a brief reduction during the latter part of 2007 (a type of variation that was not unusual either for NPI or Gamber), but on a year to year basis,

---

[6] $54.2 million, added to NPI's *actual* sales of about $7 million, yields a "but for" amount of $61.3 million.

[7] *See, e.g.*, *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1036 (9th Cir. 1986) (during the period in which defendant ran a deceptive national advertising campaign, its revenues increased by more than 1000%, and plaintiff suffered a substantial sales decline for the first time in its history); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 740 (8th Cir. 2000) (defendant's market share increased, and plaintiff's decreased, by a "nearly identical rate" during the deceptive advertising period).

DEF.'S SUPPLEMENTAL 50(A) BRIEF       5
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7079
tel +1-206-839-4300

Hampton admitted there is no apparent financial "cause and effect" at all.[8]

Those are not the only things that would give a reasonable juror pause about Hampton's damage opinion. Gamber and NPI were not the only sellers in the computer mount market nor the only ones mentioned in the video. In fact, NPI was, in relative terms, the new kid on the block. Yet the assumption made by Hampton was not only that every dollar of Gamber's sales would have been lost were it not for its misstatements, but would have gone to NPI, as opposed to any other competitor. That is not only a factually implausible assumption, but allowing such an approach to damages has enormous legal implications. Nothing in this case prevents subsequent suits—using exactly the same theory of loss "approximation" model—by every competitor whose products were mentioned in Gamber's promotional video. The result would be a world in which Gamber could be ordered not only to forfeit every single dollar of its gross profits, but could be directed to pay such amounts several times over.

Moreover, the way in which Hampton's model approaches damages makes NPI's operations totally irrelevant. It would lead to the same calculation of ostensibly recoverable damages whether NPI's sales were $50 million, $5 million or $500,000. *See Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656, 665, 668 (D. Conn.), *aff'd*, 748 F.2d 767, 772 (2d Cir. 1984) (rejecting "Hampton" approach for this reason, among others).[9]

The foregoing observations not only rest on common sense, but on the relevant case law. Hampton was certainly clear that he did not base his "model" on any sales lost by NPI or profits gained by Gamber as a result of false statements in the video, but rather testified that Gamber should forfeit its entire profits regardless of the facts or the law:

> Q:  The proper way to calculate an accounting of profits, Mr. Hampton, in a case such as this, is to determine *the amount of profit attributable to* the Mounting Evidence Campaign, isn't that right?
>
> A:  *I don't believe so. . . . The established methodology is to calculate sales that were generated through the use—during the time that the false advertising was used.*

---

[8] That conclusion is confirmed by Hampton's own "trend analysis" of NPI's "lost revenues" of only $331,000 (after Degen corrected Hampton's clerical math error (*see* 4/9/10 Tr. at 89-90)). Since Hampton's own calculation destroys his "but for" world analysis, he quite understandably elected not even to mention that calculation during his direct testimony. *See* 4/8/10 Tr. at 85.

[9] *Burndy* was cited with approval by the Ninth Circuit in *Lindy Pen*. *See* 982 F.2d at 1408.

4/8/10 Tr. at 81-82 (emphasis added).[10]  However, there is no legal support for an approach that would award damages untethered from the underlying wrongful conduct or any market reality.

Rather, an accounting of the defendant's profits on an unjust enrichment theory "is intended to award profits *only on sales that are attributable to the infringing conduct*." *Lindy Pen*, 982 F.2d at 1408 (emphasis added); *U-Haul*, 793 F.2d at 1042 ("The amount to be awarded is the financial benefit [defendant] received because of the advertising."); *Burndy*, 748 F.2d at 772 (accounting of defendant's profits should represent "unjust enrichment derived from diversion of business that clearly otherwise would have gone to the plaintiff").  A court should not award a portion of the defendant's profits where, as here, "careful examination of the record fails to reveal any specific evidence to the effect that [plaintiff] has lost substantial business and profits as a result of [defendant's] unfair competition." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984) (applying Ninth Circuit law; citation omitted).

In *Balance Dynamics*, for example, the plaintiff argued that it was entitled to disgorgement of the defendant's profits because the defendant knowingly and willfully made false statements in its advertising.  The district court, however, found that plaintiff was "only entitled to disgorgement if it could show that defendant gained additional sales due to the advertisement, or that plaintiff lost sales, or was forced to [sell] its product at a lower price," because an award of damages for a violation of Section 35(a) of the Lanham Act must "constitute compensation and not a penalty." 204 F.3d at 695.  The Sixth Circuit agreed that,

---

[10] Hampton's methodology is not only contrary to the law on damages under the Lanham Act, it ignores the law regarding calculation of damages with respect to any tort. Tort damages must be based upon a comparison between the actual and a "but for" world. *See Lindy Pen*, 982 F.2d at 1407 ("Trademark remedies are guided by tort law principles."). In a price-fixing case, for example, damages are based on a comparison of actual prices charged by the conspirators and what such prices would have been absent the conspiracy. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 374 (3d Cir. 2005) ("the standard method of measuring damages in price enhancement cases is overcharge," which is "measured by the difference between the price actually paid and the price that would have been paid absent collusion") (citation omitted); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 594-95 (7th Cir. 1998) (affirming summary judgment of no damages where plaintiff's expert did not apply this methodology properly). The same is true where a plaintiff seeks damages from market exclusion—the measure of damages is the difference between actual and "but for" sales. *See Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1260, 1262-63 (9th Cir. 1981) (affirming grant of JNOV because plaintiff did not offer a nonspeculative basis for calculating lost profits where its expert assumed that defendant would not have used legal means of competing in the but-for world).

DEF.'S SUPPLEMENTAL 50(A) BRIEF    7
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7079
tel +1-206-839-4300

"unless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits." *Id. Accord Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464-65 (5th Cir. 2001) (agreeing with *Balance Dynamics*). An award of defendant's profits cannot be "simply a 'penalty.'" *Southland Sod*, 108 F.3d at 1146.[11]

This Court already has ruled that "a finding of deliberate falsity in comparative advertising yields a [rebuttable] presumption of consumer deception and injury," provided, however, that presumption of injury applies *only* to harm to goodwill. *See* 3/26/10 Tr. at 20-21; *see also* Jury Inst. No. 14. But even if Hampton's testimony had been framed as a means of estimating harm to goodwill—which it was not—and a presumption of injury applied,[12] that "presumption" would not entitle NPI to recover any damages because Hampton's testimony failed to provide evidence on which to base a reasonable award. *See Balance Dynamics*, 204 F.3d at 694-95 (even where advertisements were literally false and defendant's conduct was willful and in bad faith, court may not award damages for harm to goodwill if not supported by evidence). Put otherwise, *where a plaintiff has introduced sufficient evidence to justify a presumption of "causation and injury in fact," it "still [bears] the burden of proving an evidentiary basis to justify any monetary recovery." Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997) (emphasis added). This principle is necessary because of the "statutory requirement that any monetary recovery under the Lanham Act must represent compensatory damages shown to have been caused by the defendant." *Id.*[13]

Thus, a court may not award a defendant's profits as a proxy for estimated harm to

---

[11] While what the jury actually did is not relevant to a Rule 50(a) motion, the jury appears to have done exactly what NPI asked them to do. Both during his opening and, again, in closing, counsel for NPI encouraged the jury to punish Gamber to "deter" possible future misconduct. In closing, for instance, counsel stated: "When will this stop? Only when the punishment outweighs the profit; only if they are told not to do this again." 4/9/10 Tr. at 173; *see also* 4/6 /10 Tr. at 39.

[12] Of course, Gamber disputes that the record established that it acted in bad faith, that any presumption of injury applies, or that it failed sufficiently to rebut any presumption that NPI was harmed by the video. But, for the reasons explained in text, the Court need not resolve those issues to decide that NPI failed as a matter of law to sustain its burden of proving damages.

[13] *Balance Dynamics* and *Porous Media* are "consistent with the Ninth Circuit." *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372, 2010 WL 455195, at *3 (W.D. Wash. Feb. 1, 2010).

DEF.'S SUPPLEMENTAL 50(A) BRIEF    8    Orrick Herrington & Sutcliffe LLP
C08-0049-JLR                              701 Fifth Avenue, Suite 5600
                                          Seattle, Washington 98104-7079
                                          tel +1-206-839-4300

goodwill (or any other category of damages) without a sufficient evidentiary predicate supporting such an estimate. In *Lindy Pen*, the Ninth Circuit denied an award of defendant's profits where, *as here*, plaintiff failed to present any evidence regarding the portion of defendant's sales attributable to the wrongful conduct. 982 F.2d at 1408; *see also Eng'red Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*, 591 F. Supp. 962, 966 (M.D. La. 1984) (denying award of estimated corrective advertising or damage to goodwill because there was "no evidence of any numerical values on which such an estimate could be based"). Similarly, an award based on the defendant's profits is inappropriate where, *again as here*, "numerous competitors participate in a market" and "injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses." *Harper House*, 889 F.2d at 209 n.8. In general, "large, presumptive damage awards are improper in a situation where injury is likely to be slight." *Id.*

Hampton's opinion could not be relied upon by a reasonable jury for yet a further reason. It consisted of nothing more than an elementary arithmetic exercise resulting in an amount of damages that was "absurd" on its face. *See Vuitton et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071, 1078 (S.D.N.Y. 1979) (award of all of retailer defendant's income to plaintiff denied because it "is absurd to assume that this gross income was derived in any substantial degree from the sale of counterfeit Vuitton merchandise"). Hampton neither performed, nor relied upon, any form of analysis typical of damage experts, either generally or in Lanham Act cases. Thus, he did not premise his testimony upon any survey evidence of causation or any actual "market analysis" (other than his "trend line" calculation that he and NPI eschewed). Nor did he attempt to estimate harm through such basic economic techniques as a standard regression analysis—as is common in virtually every tort damages case in which a "but for" world needs to be created. Numerous damage awards have been rejected as a matter of law, whether under Rule 50 or Rule 56,[14] for failings far less extreme than those reflected in NPI's expert testimony.[15]

---

[14] The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), stated that the standard under the two rules is essentially identical.

[15] *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057-58 (8th Cir. 2000) (district court should have granted judgment for defendant where expert's conclusions were mere speculation because of flaws in his methodology and his testimony was the basis for plaintiffs' damage case); *Marshfield Clinic*, 152 F.3d at 594-95

DEF.'S SUPPLEMENTAL 50(A) BRIEF       9
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7079
tel +1-206-839-4300

**B.     The Court Should Deny NPI's Request for a Permanent Injunction.**

There is no basis here for a permanent injunction as Gamber has stopped showing or distributing the video, and NPI has not offered any evidence that it would suffer irreparable harm if it did not obtain injunctive relief. Courts routinely deny requests for permanent injunctions as moot where the false advertising is no longer being used or disseminated. *See, e.g.*, *Logan*, 263 F.3d at 465 (denying injunction where defendant stopped using presentation containing false information); *Seven-Up*, 86 F.3d at 1390 (denying injunction where plaintiff could not show irreparable harm); *Oil Heat Inst. of Or. v. Nw. Natural Gas*, 708 F. Supp. 1118, 1122 (D. Or. 1988) (injunctive relief moot where challenged documents were no longer being distributed).

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Gamber's motion for judgment as a matter of law on the grounds that NPI (1) has offered no substantial evidence to support an award of damages; and (2) is not entitled to the entry of a permanent injunction.

Respectfully submitted,

| | |
|---|---|
| LEFFERT JAY & POLGLAZE, P.A. | ORRICK HERRINGTON & SUTCLIFFE LLP |
| Jonathan D. Jay<br>*Admitted pro hac vice*<br>Nicholas S. Kuhlman<br>*Admitted pro hac vice*<br>150 South Fifth Street, Suite 1900<br>Minneapolis, Minnesota 55402<br>Tel.:  (612) 312-2200<br>Fax:  (612) 312-2250 | s/Mark S. Parris<br>Mark S. Parris (WSBA #13870)<br>mparris@orrick.com<br>Paul F. Rugani (WSBA #38664)<br>prugani@orrick.com<br>701 Fifth Avenue, Suite 5600<br>Seattle, Washington 98104<br>Tel.:  (206) 839-4300<br>Fax:  (206) 839-4301 |

*Attorneys for Defendant Gamber-Johnson LLC*

---

(affirming summary judgment where expert's methodology was flawed); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (affirming summary judgment for defendant where plaintiff's damage study was excluded); *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (An expert opinion cannot sustain a verdict when it "is not supported by sufficient facts . . . or when indisputable record facts contradict or otherwise render the opinion unreasonable.").

DEF.'S SUPPLEMENTAL 50(A) BRIEF         10
C08-0049-JLR

Orrick Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7079
tel +1-206-839-4300